IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 14-1242 (RCL) |
| ) | |
| DEPARTMENT OF STATE, ) | |
| ) | |
|     *Defendant*. ) | |

**PLAINTIFF'S MOTION FOR A STATUS CONFERENCE
AND TO SHORTEN DEFENDANT'S TIME TO FILE ANY
RESPONSE OR OPPOSITION WITHIN FOUR BUSINESS DAYS**

    Plaintiff Judicial Watch, Inc., by counsel, respectfully requests a status conference in this matter as soon as possible to avoid further undue delays, prejudice and potential spoliation. This case was filed under the Freedom of Information Act ("FOIA") in which agency emails of Secretary of State Hillary Clinton and that of her staff were requested. Judicial Watch only recently learned, through startling public reports, that the Department of State's response was compromised. Because a supplemental document production is due in short order and time is of the essence with respect to any potential spoliation, Judicial Watch requests that its motion be reviewed on an expedited basis and for any opposition to a status conference be filed within four business days of this motion. All counsel are available for a status conference the week of March 23, 2015. As further grounds thereof, Plaintiff submits the following.

**MEMORANDUM OF LAW**

    1.    This lawsuit arises out of a FOIA request for records, including emails, from the State Department's Office of the Secretary concerning the talking points provided to U.S.

Ambassador Susan Rice about the September 11, 2012 attack on the U.S. consulate in Benghazi. Compl. at ¶ 5.   Judicial Watch requested email communications from the Office of the Secretary with White House officials and officials of any other federal agencies about the talking points given to Ambassador Rice.[1]   The request seeks records during Secretary Clinton's tenure as the U.S. Secretary of State.

2. Because Secretary Clinton was at the center of the State Department's official statement blaming the online video for the attack in Benghazi, her emails and those of her staff within the Office of the Secretary about the talking points given to Ambassador Rice are clearly responsive to Judicial Watch's request.[2]

3. On March 2, 2015, Judicial Watch learned through an alarming public report by the *New York Times* that Secretary Clinton used at least one non-"state.gov" email account exclusively to conduct official government business during her entire tenure as the Secretary of State.[3]   It also was reported that Secretary Clinton stored these records on a non-U.S. government server at her home in Chappaqua, New York.   She unilaterally determined some time in 2014 which of these emails were official government records, and only returned approximately 55,000 printed pages of these records to the State Department on or about

---

[1]  Ambassador Rice and Secretary Clinton issued statements after the attack falsely blaming an inflammatory video posted on the Internet for the attack.   The administration knew this account was false.   Within moments of the attack, Secretary Clinton's senior staff knew a terrorist attack was underway and that an al-Qaeda-affiliated terrorist group had claimed credit for it.   *See* http://www.nationalreview.com/corner/414500/hillary-clintons-top-aides-knew-first-minutes-benghazi-was-terrorist-attack-e-mails; http://usnews.nbcnews.com/_news/2012/09/16/13896494-ambassador-rice-benghazi-attack-began-spontaneously?lite.
[2]  In fact, documents obtained in a prior lawsuit filed by Judicial Watch against the State Department disclosed communications between State Department and White House officials promoting the false narrative about the video.   This revelation led to the appointment of the congressional Select Committee on Benghazi.   (*Judicial Watch v. Dept. of State*, Case No. 1:13-cv-951-EGS); *See h*ttp://www.judicialwatch.org/press-room/press-releases/54881/.
[3]  *See* Michael S. Schmidt, *Hillary Clinton Used Personal Email Account at State Dept., Possibly Breaking Rules*, the N.Y. Times (Mar. 2, 2015), available at http://www.nytimes.com/2015/03/03/us/politics/hillary-clintons-use-of-private-email-at-state-department-raises-flags.html.

December 5, 2014.[4]  Other senior State Department officials to Secretary Clinton, including Phillipe Reines, Deputy Assistant Secretary of State for Strategic Communications and senior advisor, Cheryl Mills, chief of staff, and Huma Abedin, deputy chief of staff, also reportedly used non-"state.gov" email addresses with the "@clintonemail.com" domain to conduct official government business.[5]  These emails are also sent and received through the non-U.S. government server at Secretary Clinton's home.[6]  Such emails are quintessential agency records subject to FOIA.   The State Department's failure to retain and record-manage these quintessential agency records and make them available for retrieval has compromised the Department's response to Judicial Watch's request.   Instead of informing the Court and Judicial Watch about this material information, the State Department engaged in settlement discussions to induce dismissal of this FOIA lawsuit without telling Judicial Watch that it did not search Secretary Clinton's emails.

4.     Judicial Watch initiated this lawsuit on July 21, 2014 because the State Department failed to provide a final determination with respect to the FOIA request.   Compl., ¶¶ 5-9.   Pursuant to the Court's Scheduling Order, the State Department's document production was due November 12, 2014 and the draft *Vaughn* index was due December 5, 2014.   Sep. 15, 2014 Order (ECF No. 9).   The Department stated that it would produce a draft *Vaughn* index so that "the parties will be in a position to confer in an attempt to resolve this matter without further litigation."   Def. Unopposed Mot. to Vacate, ¶¶ 3-4 (ECF No. 8); Status Rpt., ¶¶ 2-3, Dec. 31,

---

[4] Hillary Clinton, *Statement from the Office of Former Secretary Clinton* (Mar. 10, 2015), available at http://insider.foxnews.com/2015/03/10/read-hillary-clintons-office-releases-qa-email-controversy.
[5] *See e.g.,* http://www.nytimes.com/2015/03/05/us/politics/Membership-in-clintons-email-domain-is-remembered-as-a-mark-of-status.html; http://www.washingtonexaminer.com/benghazi-committee-moves-to-obtain-private-emails-from-hillary-clintons-aides/article/2561357.
[6] *See* http://www.wsj.com/articles/clinton-private-email-plan-drew-concerns-early-on-1426117692.

2014 (ECF No. 10).

5. On November 12, 2014, the State Department released its production of responsive, non-exempt, records that Judicial Watch understood to be complete. In its letter, the Department stated that it located four (4) documents as a result of its search of the Office of the Secretary. Sept. 15, 2014 Order (ECF No. 9); *See* Ex. 1 (Letter from John F. Hackett, Acting Director of the Office of Information Programs and Services for the State Department, Nov. 12, 2014; Email from Robert Prince, Esq., Nov. 12, 2014). On December 5, 2014, the State Department produced its draft *Vaughn* index pursuant to the Court's September 15, 2014 Order. (ECF No. 9) In both instances, the State Department omitted that its search did not include Secretary Clinton's emails in the Office of the Secretary. More egregiously, the State Department omitted that Secretary Clinton had apparently just turned over 55,000 pages of her agency emails that had not been searched or included in the Department's draft *Vaughn* index. *See* Ex. 2 (Email from Robert Prince, Esq., Dec. 5, 2014). These omissions are material and were apparently made in the process of settlement discussions to induce dismissal.

6. A supplemental search and document production is due April 2, 2015 solely because Judicial Watch requested search affidavits, surprised that that the State Department located only four responsive records – none of which are Secretary Clinton's emails and all of which were previously produced in another litigation. Status Report at ¶3, Feb. 2, 2015 (ECF No. 11); *supra*, n. 2. Judicial Watch has no reason to believe that the State Department would have ever disclosed that its search was compromised had Judicial Watch not asked for search affidavits when it reviewed the draft *Vaughn* index and limited production.

7. On March 11, 2015, the State Department finally agreed to search the 55,000

pages of emails turned over by Secretary Clinton.   Ex. 3 (Email exchange among counsel, March 4 and 11, 2015).   The State Department has repeatedly refused, however, to confirm whether its supplemental search includes non-"state.gov" email addresses of other State Department officials within the Office of the Secretary.   *Id.*   (Counsel conferred by telephone on March 12, 2015, but the State Department refused to disclose any relevant information about the current search other than the fact that the 55,000 pages are being searched.).   Neither the Court nor Judicial Watch should have to rely on public reports to understand what efforts are being undertaken to produce all responsive, non-exempt, records in response to the FOIA request and remedy any potential spoliation.   An immediate status conference is prudent in light of these extraordinary circumstances and necessary to avoid further spoliation.   It will also save the Court and the parties time and resources to address these issues while a supplemental search is being conducted.

8. The State Department had an obligation under the Federal Records Act to "properly store[], preserve[], [and make] available for retrieval" records of its official functions.[7] 5 FAM 443.1(a); 44 U.S.C. 3101 et seq.   "Agencies must implement a records maintenance program so that complete records are filed or otherwise identified and preserved," and "records can be readily found when needed."   74 FR 51020, National Archives and Records Administration (NARA) § 1222.34 (2009).   In fact, it is the obligation of the head of every federal agency to do so.   *See*, *e.g.*, *American Friends Service Committee v. Webster*, 720 F.2d 29, 38 (D.C. Cir. 1983).   "Each head of an agency is to develop a program for records management, including provisions for cooperation with the Archivist, 'in applying standards, procedures, and techniques.'"   *Id.* (*quoting* 44 U.S.C. § 3102(2)).   Moreover, heads of federal

---

[7] Since 1995, this obligation has applied to emails.

agencies must "prevent the unlawful or accidental removal, defacing, alteration or destruction of records," and "implement and disseminate policies and procedures to ensure that the records are protected against unlawful or accidental removal, defacing, alteration and destruction." 44 U.S.C. 3105-06; 74 FR 51029, NARA §§ 1220-1235, 1230.10, 1230.12 (2009). "Records, regardless of format, are [to be] protected in a safe and secure environment and removal or destruction is carried out only as authorized in records schedules." 74 FR 51017, NARA, § 1220.32(e). "Removal means…transferring…or otherwise allowing a record to leave the custody of a Federal agency without the permission of the Archivist of the United States." 74 FR 51029, NARA, § 1230.3(b).

9. Secretary Clinton plainly violated her own legal obligations as the head of the State Department. *Id.*, 18 U.S.C. 2071 ("Whoever willfully and unlawfully…removes…with intent to do so takes and carries away any record…paper, document…in any public office…shall be fined under this title or imprisoned…or both."); 44 U.S.C. 3105-06. Government emails backed-up to a non-U.S. government server located on her property were clearly outside the custody of the State Department. Doing this was misconduct. *Id.*, *see also* 18 U.S.C. § 1362 (2011 ed.). Malfeasance such as this should not be permitted to circumvent the letter and spirit of the law, including FOIA.[8]

10. The State Department cannot claim it was unaware of the Secretary's failure to properly store and records-manage. Not only should knowledge of this failure be imputed to

---

[8] *See e.g.* Geoff Earle, *Ex-FOIA Official Calls Hillary's Email Justification 'Laughable,"* N.Y. Post (Mar. 12, 2015), quoting Daniel Metcalfe, "What she did was contrary to both the letter and the spirit of the law." "There is no doubt that the scene she established was blatant circumvention of the Freedom of Information Act, atop the Federal Records Act." Daniel Metcalfe (retired) served as Founding Director of the Justice Department's Office of Information and Privacy (OIP), one of the Department's forty components, responsible for the development and dissemination of FOIA policy throughout the executive branch from Nov. 2, 1981 to Jan. 3, 2007.

the State Department through Secretary Clinton, but any State Department employee who sent or received an email to or from Secretary Clinton – which presumably would have included high level officials – must have known that they were communicating with the Secretary through a non-"state.gov" email address.   It is incomprehensible that the State Department has not known since Secretary Clinton began using the non-"state.gov" email address that her government emails were not being searched or made readily available in response to this FOIA request, as well as other requests.

11.   Moreover, to the extent that Secretary Clinton used her non-"state.gov" email address to communicate with State Department employees who used "state.gov" email addresses, it is of no consequence that these other, unknown employees' emails may have been properly stored and records-managed.   These emails would not necessarily be captured by a search of the Office of the Secretary.   The State Department would have to conduct at a minimum agency wide searches to respond properly to any records request.   Obviously, such searches also would not capture the emails sent outside the Department, including to the White House, which are squarely within the purview of Judicial Watch's request.

12.   A similar assertion was criticized recently by this Court in FOIA litigation regarding the email of former Environmental Protection Agency Administrator Lisa Jackson: "When [the requestor] confronted Jackson with evidence that she did, on at least one occasion, use her personal email account – and Blackberry – to conduct government business without forwarding the message to her secondary EPA account . . . Jackson responded that there was no need to do so because the email included 'other [EPA] government accounts' as recipients, and thus would be preserved.   Of course, carving exceptions into a standard practice is a slippery

7

slope." *Landmark Legal Foundation v. Environmental Protection Agency*, Case No. 12-1726, 2015 U.S. Dist. LEXIS 24620, **33-34 (D.D.C. Mar. 2, 2015).   This case is more egregious than *Landmark Legal Foundation* because Secretary Clinton exclusively used her non-"state.gov" account for government business.

13.   With regard to any possible spoliation, because time is of the essence Judicial Watch respectfully requests a status conference for the parties to confer with the Court as soon as possible.   Secretary Clinton has indicated that she has chosen not to preserve all of the emails sent or received by her through the email address that she used exclusively to conduct official State Department business. [9]   Time is of the essence and Judicial Watch continues to be prejudiced by undue delays and material omissions throughout this litigation.

14.   Pursuant to LCvR 7(f), counsel conferred with defense counsel. Agency counsel stated that the "Department of State opposes plaintiff's motion seeking a status conference and will be filing a response. Should the Court decide to schedule a status conference, counsel for the Department respectfully state that they are available any time during the week of March 23 through March 27, 2015."

15.   Counsel for Judicial Watch is also available during the week of March 23, 2014. Counsel may provide alternate additional, mutually available dates if the Court so requires.

WHEREFORE, Plaintiff respectfully moves this Court to schedule a status conference in this matter as soon as possible, shorten the time for the State Department to file any response or opposition to four business days from today's filing, and for any such other relief that the Court deems just and proper.

---

[9] *Supra*, n. 9.

Dated: March 16, 2015						Respectfully submitted,

							JUDICIAL WATCH, INC.

							/s/ Ramona R. Cotca
							Ramona R. Cotca, D.C. Bar No. 501159
							Judicial Watch, Inc.
							425 Third Street, SW, Suite 800
							Washington, DC   20024
							(202) 646-5172
							*Attorneys for Plaintiff*