IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.

*Plaintiff*,

v.

U.S. DEPARTMENT OF STATE,

*Defendant*.

Civil Action No. 14-cv-1242 (RCL)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Robert J. Prince*
ROBERT J. PRINCE (D.C. Bar No. 975545)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 305-3654
robert.prince@usdoj.gov

Dated: July 7, 2015

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 5

    I.   STANDARD OF REVIEW ........................................................................................ 5

    II.  THE DEPARTMENT'S SEARCHES SATISFY FOIA.................................................. 5

    III.THE DEPARTMENT PROPERLY WITHHELD INFORMATION UNDER
         EXEMPTIONS FIVE AND SIX..................................................................................... 12

        A.  The Department Properly Withheld Exempt Information Under Exemption Five..... 12

        B.  The Department Properly Withheld Exempt Information Under Exemption Six ...... 15

CONCLUSION ....................................................................................................................... 17

## INTRODUCTION

Plaintiff in this Freedom of Information Act ("FOIA") case, Judicial Watch, Inc.,

requested that the Office of the Secretary, a component of Defendant United States Department

of State (the "Department"), disclose to it copies of updates and talking points about the attacks

of September 11, 2012, in Benghazi, Libya, that were given to former United States Ambassador

to the United Nations Susan Rice and any communications about such updates or talking points.

The Department conducted searches reasonably calculated to uncover responsive documents and

produced to Judicial Watch four documents, one in full and three with redactions.  A fifth

document was withheld in full.  Because the Department's searches satisfy FOIA, because

Judicial Watch does not challenge any of the redactions to the documents produced by the

Department, and because the Department properly withheld a document in full pursuant to FOIA

Exemptions 5 and 6, the Department is entitled to summary judgment.

## BACKGROUND

On March 13, 2014, Judicial Watch submitted a two-part FOIA request (the "FOIA

Request") to the Department's Office of the Secretary requesting the following:

> 1) Copies of any updates and/or talking points given to
>    Ambassador Rice by the White House or any federal agency
>    concerning, regarding, or related to the September 11, 2012
>    attack on the U.S. consulate in Benghazi, Libya.
>
> 2) Any and all records or communications concerning, regarding,
>    or relating to talking points or updates on the Benghazi attack
>    given to Ambassador Rice by the White House or any federal
>    agency.

Complaint ¶ 5 (ECF No. 1); Declaration of John F. Hackett ¶ 4 & Ex. A ("Hackett Declaration"

or "Hackett Decl'n").  In correspondence with counsel for the Department, counsel for Judicial

Watch clarified that its request does not seek all records relating to the attacks of September 11,

2012 in Benghazi, but rather only "talking points and updates to those talking points, not general

intelligence updates about the Benghazi attacks (unless those updates were sent in furtherance of developing or updating talking points)."  Hackett Decl'n ¶ 5 & Ex. B.

The FOIA Request used the same wording as an earlier FOIA request dated October 18, 2012, that Judicial Watch had submitted to the Department's United States Mission to the United Nations ("US/UN")—the component of the Department at which former Ambassador Rice worked (the "US/UN FOIA Request") .[1]  Hackett Decl'n at n. 1 & Ex. C.  During the course of previous litigation involving the US/UN FOIA Request, the Department released to Judicial Watch 98 documents, in whole or in part, totaling 1,439 pages.  Hackett Decl'n at n.1.  The parties executed a settlement agreement and filed a stipulation of dismissal of that prior case with prejudice on September 12, 2014.  *Judicial Watch v. State*, (D.D.C. 13-951), Stipulation of Dismissal with Prejudice (ECF No. 18).

Judicial Watch, Inc. initiated this lawsuit against the Department on July 21, 2014.  (ECF No. 1).  The Department answered the complaint on August 27, 2014.  (ECF No. 6).  On September 12, 2014, in response to the Department's unopposed motion for a scheduling order, the Court set the following deadlines: (1) November 12, 2014 for the Department to produce to Judicial Watch all non-exempt, responsive documents subject to the FOIA; (2) December 5, 2014 for the Department to produce to Judicial Watch a draft *Vaughn* index; (3) December 19, 2014 for Judicial Watch to provide to the Department any objections to the withholdings described in the draft *Vaughn* index and the parties to confer thereafter to attempt to resolve this matter without litigation; (4) January 2, 2015 for the parties to file a joint status report.  *See* Def.'s Mot. for Scheduling Order (ECF No. 8); Order of Sep. 15, 2014 (ECF No. 9).

The Department conducted searches reasonably calculated to uncover all responsive documents in its custody and control, including key-word searches of four electronic records systems within the Office of the Secretary and key-word searches of the state.gov email accounts

---

[1] The US/UN FOIA Request was date-limited to September 11, 2012, through September 30, 2012.

of three individuals who had dealt with the subject matter of the FOIA Request and whose records were therefore reasonably likely to contain responsive records.  Hackett Decl'n ¶¶ 10-14.  These searches produced a number of records which were then reviewed for responsiveness.  *Id.* ¶ 14.  Further, as a safeguard against overlooking responsive records, the Department also reviewed each of the documents produced in response to Judicial Watch's US/UN FOIA Request to determine whether any of those documents had been sent from or to anyone in the Office of the Secretary.  *Id.* ¶ 15.

These searches of electronic records systems, emails, and the US/UN FOIA release discovered four responsive documents, which the Department produced to Judicial Watch by letter dated November 11, 2014.  Hackett Decl'n ¶ 16.  On December 5, 2014, in accordance with the Court's order, the Department produced to Plaintiff a draft *Vaughn* index describing the redactions taken and explaining why the information withheld was exempt from disclosure under the FOIA.  Judicial Watch raised no objections to the withholdings described in the *Vaughn* index, but asked for a description of the search.  The parties conferred and, in an effort to resolve the litigation, the Department agreed to provide a draft declaration describing the searches it had conducted.  Judicial Watch agreed to allow the Department until February 2, 2015, to provide the draft search declaration.  *See* Joint Status Report (ECF No. 11).

After the searches in this case had been completed and the four responsive documents had been delivered to Judicial Watch, the Department received approximately 55,000 pages of hard copy emails and attachments to emails from former Secretary Clinton.[2]  Hackett Decl'n ¶ 17.  Because it was reasonably likely that these emails contained documents responsive to the FOIA Request, counsel for the Department informed counsel for Judicial Watch by phone that the Department needed to conduct searches of emails that were not addressed during the initial

---

[2] Former Secretary Clinton provided these emails in response to an earlier request from the Department of State that, if former Secretaries or their representatives were "aware or [were to] become aware in the future of a federal record, such as an email sent or received on a personal email account while serving as Secretary of State, that a copy of this record be made available to the Department."  Hackett Decl'n ¶ 17.

search.  Judicial Watch agreed to give the Department until April 2, 2015 to conduct the additional searches, produce any responsive documents and, if necessary, a revised *Vaughn* index, and to provide a draft search declaration.  *See* Joint Status Report of February 2, 2015 (ECF No. 11).  The parties further agreed that Judicial Watch would complete its review of any materials provided and notify the Department whether it would raise any objections to the search or to any of the withholdings from the responsive documents.  *Id.*

The Department searched those emails that were sent or received by Former Secretary Clinton on or after September 11, 2012 (the date of the attacks in Benghazi), through the end of former Secretary Clinton's tenure on January 31, 2013.  Hackett Decl'n ¶ 17.  No responsive records were found.  Hackett Decl'n ¶ 17.  On April 2, 2015, the Department notified Judicial Watch that no additional responsive records had been found and provided it with a draft search declaration as agreed.  On April 30, 2015, in response to questions raised during a phone call between counsel for the Department and counsel for Judicial Watch, the Department provided a second draft search declaration providing additional information.  The parties were still unable to reach agreement.  On May 1, 2015, the parties filed a Joint Status Report (ECF No. 16) in which Judicial Watch noted its objections to the search and suggested that the Court hold a status conference between May 20 and May 29, 2015; the Department suggested that the Court set a briefing schedule for summary judgment.[3]

---

[3] In that status report, the parties asked that the Court, should it choose to not set a status conference, instead set a briefing schedule under which Defendant would file its summary judgment motion by June 30, 2015, with briefing to be completed by September 16, 2015. Joint Status Report of May 1, 2015 at 6.  On June 30, 2015, Defendant filed a notice with a slightly adjusted proposed briefing schedule, to which Plaintiff agreed: (a) Defendant's summary judgment motion due by July 7, 2015; (b) Plaintiff's opposition to motion for summary judgment, and any cross-motion for summary judgment due by August 14, 2015; (c) Defendant's combined reply and opposition to any cross-motion for summary judgment due by September 11, 2015; (d) Plaintiff's reply in support of any cross-motion for summary judgment due by September 25, 2015.  *See* Defendant's Notice Regarding Briefing Schedule ¶ 4 (ECF No. 17).  The Court adopted this schedule in its minute order of July 1, 2015.

## ARGUMENT

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  FOIA actions are typically resolved on summary judgment.  *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007).

A court reviews an agency's response to a FOIA request de novo.  *See* 5 U.S.C. § 552(a)(4)(B).  When a requester challenges the adequacy of an agency's search, "[i]n order to obtain summary judgment, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotations and citations omitted).

The agency must also justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions.  "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Ctr. For Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003).  Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  These exemptions are specified in 5 U.S.C. § 552(b).

### II.    THE DEPARTMENT'S SEARCHES SATISFY FOIA

The Court may grant summary judgment concerning the adequacy of an agency's search for responsive records based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely

to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68) (alteration in original); *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986); *Riccardi v. Dep't of Justice*, 32 F.Supp.3d 59, 63 (D.D.C. Mar. 27, 2014). "Such agency affidavits attesting to a reasonable search 'are afforded a presumption of good faith,' and 'can be rebutted only with evidence that the agency's search was not made in good faith.'" *Id.* (citations omitted).

Reasonableness, not perfection, is therefore the Court's guiding principle in determining the adequacy of a FOIA search. *Id.*; *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). "There is no requirement that an agency search every record system." *Oglesby*, 920 F.2d at 68. Moreover, the mere fact that a search uncovers few documents—or even none at all— does not render that search inadequate: "the issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485 (internal citation omitted); *see also Meeropol*, 790 F.2d at 952-53 (search is not presumed unreasonable simply because it fails to produce all relevant material); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist). Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

In evaluating the adequacy of a search, courts accord agency affidavits a presumption of good faith that cannot be rebutted by a plaintiff's speculation "about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted); *see also Ground Saucer Watch, Inc. v. CIA,*

692 F.2d 770, 771 (D.C. Cir. 1981) (same).  Rather, to establish the sufficiency of its search, the

agency's affidavits need only explain the "scope and method of the search" in "reasonable

detail."  *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005) (quoting *Perry*, 684

F.2d at 127).  The agency need only search those systems in which it believes responsive records

are likely to be located. *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000);

*Roberts v. Dep't of Justice*, No. 92-1707, 1995 WL 356320, at * 1 (D.D.C. Jan. 29, 1993).  The

Department of State has done that here.

      The Declaration of John F. Hackett, Director of the Department's Office of Information

Programs and Services, establishes that the Department "made a good faith effort to conduct a

search for the requested records, using methods which can be reasonably expected to produce the

information requested," *Oglesby*, 920 F.2d at 68.  "[T]he Department conducted a thorough

search of all Department records systems within the Office of the Secretary that were reasonably

likely to maintain records responsive to Plaintiff's FOIA request."  Hackett Decl'n ¶ 35.

Because the FOIA Request specified that it sought records only from the Office of the Secretary,

the Department's Office of the Executive Secretariat Staff ("S/ES-S"), which is responsible for

coordinating search responses for the Office of the Secretary of State, conducted the searches for

responsive records.  Hackett Decl'n ¶ 8.

      S/ES-S identified four electronic records systems or databases reasonably likely to

contain responsive records within the Office of the Secretary:

- Secretariat Tracking and Retrieval System ("STARS"), "an automated system used to track, control, and record documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretary of State, and other Department principal officers.  Original documents are indexed, scanned, and stored as images in STARS.  Information in STARS covers the period 1988 to the present." *Id.* ¶ 10, n. 3.  Each document in STARS contains a searchable abstract created by a Technical Information Specialist when the document was added to the database; each abstract is designed to capture the subject matter of the document. *Id.* ¶ 13.  For documents from the time period relevant to the FOIA Request, the abstracts are the only portions of STARS whose text may be searched. *Id.*

- Secretariat Telegram Processing System ("STePS"), an electronic system "designed to distribute cables among the Department's principals." *Id.* ¶ 10, n. 4. The full text of the documents in STePS is searchable. *Id.* ¶ 13.

- Cable Archiving Retrieval System ("CARS"), an electronic system "designed to provide access to a contemporary portion of the Department's telegram archive deemed to be of general interest." *Id.* ¶ 10, n. 5. The full text of the documents in CARS is searchable. *Id.* ¶ 13.

- Top Secret files ("TS"). *Id.* ¶ 10. During searches of the TS files, search terms are applied to an index of TS files. *Id.* ¶ 13. Each TS index entry, along with key words and a topic description, was added by a Management Analyst. *Id.* This index, rather than the full text of the TS files themselves, can be searched. *Id.*

In addition, members of the Office of the Secretary, based on their knowledge of which staff members within that office during former Secretary Clinton's tenure worked on issues relevant to this FOIA request, identified three individuals whose state.gov email accounts were reasonably likely to contain responsive records: Jacob Sullivan, the Deputy Chief of Staff to former Secretary Clinton; Cheryl Mills, Counselor and Chief of Staff to former Secretary Clinton; and Huma Abedin, Deputy Chief of Staff to former Secretary Clinton. Hackett Decl'n ¶ 11.

The Hackett Declaration explains how a Management Analyst searched these four electronic records systems and the state.gov accounts of these three individuals using broad, overlapping search terms to ensure that the search would be over-inclusive, minimizing the chance that a responsive record would be overlooked. The Management Analyst used the following search terms:

- Ambassador

- Rice

- USUN/W

- September 11, 2012

- attack

- Benghazi

- Libya

- talking points

- TPs

- updates

Hackett Decl'n ¶ 12.  These search terms were used to conduct a disjunctive search (also known as an "or search" because they are created using a Boolean "or" operator), which means any document (or abstract, in the case of STARS, or index entry, in the case of the TS files) that contained any one of these words would be returned.  *Id.* ¶ 14.  Thus, the searches returned each record that contained (or whose abstract or index entry contained) the word "Ambassador", as well as each one that contained the word "attack" or "Benghazi" or "Libya," whether or not that document actually referred to the attacks or had been given to Ambassador Rice.  *Id.*  The records returned by the text searches were then reviewed for responsiveness.  *Id.*

In addition to these primary searches, the Management Analyst also reviewed each of the 98 documents, totaling 1,439 pages, that were produced in response to the US/UN FOIA Request, which had identical wording to the FOIA Request at issue here.  Hackett Decl'n ¶¶ 4, 15.  During this review, the Management Analyst examined each sender and recipient in those documents; any document with a recipient or sender who was in the Office of the Secretary at the time the document was sent was treated as responsive.  *Id.* ¶ 15.  This check was undertaken to guard against the possibility that a record had been overlooked in the primary searches.  *Id.*

As a result of the primary searches and the additional review of the documents produced in response to the US/UN FOIA Request, the Management Analyst found four responsive documents, all of which had been produced in response to the US/UN FOIA Request.  Hackett Decl'n ¶ 16 & Ex. D.  These records were produced again to Plaintiff in this litigation, and Plaintiff has not challenged any redactions contained on those documents, either in this suit or in the related litigation stemming from the US/UN FOIA Request.  *Id.* at n. 7 & Ex. F.

The Deputy Director of S/ES-S searched the approximately 55,000 pages of emails and attachments to emails provided to the Department by former Secretary Clinton by applying the same search terms used for the other searches, *see* Hackett Decl'n ¶ 12, to two PDFs containing scanned images of those documents that were sent or received on or after September 11, 2012 (the date of the attacks in Benghazi), through the end of former Secretary Clinton's tenure on January 31, 2013.  *Id.* ¶ 17.  For each PDF, the Deputy Director entered a search term individually into the "Find" command in Adobe Reader and navigated to each occurrence of the search term in the PDF.  *Id.*  The Deputy Director reviewed for responsiveness each individual document that contained an occurrence of the search term.  This process was repeated for each search term listed above in Paragraph 12.  *Id.*  No responsive records were found.  *Id.*

Finally, on June 26, 2015, the Department received additional documents from Ms. Mills and Mr. Sullivan that, the Department determined, might contain responsive documents.  Hackett Decl'n ¶ 20.  These documents were provided to the Department in response to letters, sent earlier this year, to Ms. Mills, Mr. Sullivan, and Ms. Abedin, in which the Department asked those individuals to make available to the Department any federal records that they may have in their possession, such as emails concerning official government business sent or received on a personal email account while serving in their official capacities with the Department, if there is any reason to believe that those records may not otherwise be preserved in the Department's recordkeeping system.[4]  *Id.* ¶ 18.  An attorney in the Department's Office of the Legal Adviser reviewed the documents provided by Ms. Mills and Mr. Sullivan and found one responsive document, a two-message email chain that mentioned the talking points in the course of a larger

---

[4] Respective counsel for these three individuals informed the Department that they may provide a further response to the letter in the future.  Hackett Decl'n ¶ 19.  If the Department receives any additional documents that relate to the subject matter of the FOIA Request, the Department will advise Judicial Watch so that the parties can discuss how to address any such documents.

discussion, which the Department determined should be withheld in full pursuant to FOIA

Exemption 5. *Id.* ¶¶ 20, 30.[5]

The broad keyword search across four electronic records systems and the state.gov email

accounts of those Office of the Secretary employees who worked on the issues underlying the

FOIA Request, the extra confirmation check against the records of the office where the person at

the center of the FOIA Request worked, the keyword search of the emails of former Secretary

Clinton that were sent or received at any time on or after the day of the attacks, and the manual

review of documents received from Ms. Mills and Mr. Sullivan, taken together, covered all files

likely to produce responsive records and is more than adequate to satisfy the Department's

obligations under FOIA.  Despite these broad searches, Judicial Watch wants the Department to

conduct a "wider agency search"—outside the bounds of its original request (that is, the Office

of the Secretary)—of the emails "of potential recipients to Secretary Clinton and the other three

individuals who dealt with the subject matter of the request within the Office of the Secretary."

Joint Status Report at 5, May 1, 2015 (ECF No. 16).[6]

Additional searches such as those requested by Judicial Watch would be unlikely to

uncover more responsive documents.  The FOIA Request, which was limited by its own terms to

the Office of the Secretary, seeks talking points and updates related to talking points sent to

former Ambassador Rice, who worked in US/UN.  Common sense indicates that it is within

---

[5] The Department had reviewed the earlier email in this chain during the Department's search of the 55,000 pages received from former Secretary Clinton.  Hackett Decl'n ¶ 21.  It was deemed unresponsive because the references to "talking points" contained therein appeared to be about a separate set of talking points being developed within the Office of the Secretary for future use.  *Id.*  However, the later message in the email chain, which was not sent to former Secretary Clinton, made it clear that one portion of the earlier message had, indeed, been discussing the talking points given to Ambassador Rice.  *Id.*

[6] Judicial Watch noted two additional objections to the search in the Joint Status Report: (1) Judicial Watch wants the Department to disclose the identity of the three individuals whose state.gov emails were searched; and (2) Judicial Watch wants to know what responses the Department has received, if any, to the letters sent to those three individuals asking them to make available to the Department any federal records that they may have in their possession, if there is any reason to believe that those records may not otherwise be preserved in the Department's recordkeeping system.  Joint Status Report at 5, May 1, 2015 (ECF No. 16).  The Hackett Declaration discloses the names and titles of those individuals, Hackett Decl'n ¶ 11, and provides the latest available information concerning the letters sent to them, *id.* ¶¶ 18-21.

US/UN, not within the Office of the Secretary, that most responsive records would be found, and that search has already been done, litigated, and settled in a prior litigation with this Plaintiff. And, indeed, Plaintiff's identically worded US/UN FOIA Request directed at the Mission resulted in the release of 98 responsive documents totaling almost 1,500 pages. Of those documents, only 4, totaling 12 pages—or 0.8% of the pages produced previously—bore any indication that they involved the Office of the Secretary. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard*, 926 F.2d at 1201 (citing *Weisberg*, 745 F.2d at 1486–87; *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)).

## III. THE DEPARTMENT PROPERLY WITHHELD INFORMATION UNDER EXEMPTIONS FIVE AND SIX

### A. The Department Properly Withheld Exempt Information Under Exemption Five

The Department properly withheld in full, pursuant to FOIA Exemption 5 and the deliberative process privilege, the document obtained from Mr. Sullivan.[7] FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Among the privileges protected by Exemption 5 is the deliberative process privilege, a privilege uniquely available to the government. *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).

The deliberative process privilege applies to "decisionmaking of executive officials generally," and protects documents containing deliberations that are part of the process by which

---

[7] Counsel for Judicial Watch has confirmed via email that Judicial Watch is not challenging any of the redactions in the documents produced to it. Hackett Decl'n ¶ 24 & Ex. F. For this reason, only the responsive document that the Department received on June 26, 2015, and withheld in full is addressed in this section and the Hackett Declaration.

government decisions are formulated. *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). The purpose of the deliberative process privilege is to encourage full and frank discussion of legal and policy issues within the government, and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action. *See, e.g.*, *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). The privilege is animated by the common-sense proposition that "those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process." *Sears, Roebuck & Co.*, 421 U.S. at 150-51 (citation omitted).

To come within the scope of the deliberative process privilege, a document must be both predecisional and deliberative. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." *Id.* "To establish that [a] document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). The privilege therefore applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866.

"[D]raft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *In re Apollo Group, Inc. Securities Litigation*, 251 F.R.D. 12, 31 (D.D.C. 2008) (non-FOIA case) (quotations omitted). Accordingly, "drafts are commonly found exempt under the deliberative process

exemption." *People for the American Way Foundation v. National Park Service*, 503 F. Supp.
2d 284, 303 (D.D.C. 2007); *see also*, *Judicial Watch v. Clinton*, 880 F. Supp. 1, 13 (D.D.C.
1995) (upholding nondisclosure of draft responses to a congressional inquiry).

 The Department properly withheld such information under the deliberative process
privilege.  As a threshold matter, the document qualifies as "inter-agency or intra-agency
memorandums or letters," 5 U.S.C. § 552(b)(5), because it contains internal communications
between and among Department of State employees.  *See* Hackett Decl'n ¶¶ 30.  Specifically, the
document is a three-page email exchange among then-current State Department employees
consisting of two messages.  *Id.*  The earlier message is from Jacob Sullivan to former Secretary
Clinton and Cheryl Mills (who is listed on the "cc" address line) and has the subject "Key
Points."  It was sent on September 29, 2012 at 11:09 AM.  The later message is from Cheryl
Mills to Jake Sullivan and Philippe Reines (Deputy Assistant Secretary of State for Strategic
Communications and Senior Communications Advisor to Secretary Clinton) and has the subject
"Fwd: REVISED Key Points."  It was sent on September 29, 2012 at 1:18 PM.

 The bodies of the messages consist of drafts, composed by advisors to former Secretary
Clinton, of a proposed future communication from the former Secretary to a member of the U.S.
Senate concerning various issues related to the attacks of September 11, 2012 in Benghazi.
Hackett Decl'n ¶ 30.  Thus, as non-final drafts, the bodies of the messages in this document are
predecisional and deliberative in nature.  *Id.* ¶ 31.  Release of this material could reasonably be
expected to chill the frank deliberations that occur when senior staff are preparing points or other
draft remarks for use by senior Department officials in addressing a matter of public controversy
and the material is thus exempt under FOIA exemption 5.  *Id.*  The Department conducted a line-
by-line review of the documents and determined there was no reasonably segregable, non-
exempt material that could be released.  *Id.* ¶ 34.

The deliberative process privilege applies to precisely the sort of information that makes up the entirety of this document, that is, the sort of frank deliberations that occur when senior staff are preparing points or other draft remarks regarding how high level officials of the Department should address a matter of public controversy. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (in concluding that discussions of how to respond to inquiries from the press and Congress were protected by the deliberative process privilege, explaining that, "[b]ecause the handling of [the] case was controversial, it is understandable that . . . numerous discussions involving the controversy took place and required multiple decisions"). Thus, the document is exempt from production under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

### B.  The Department Properly Withheld Exempt Information Under Exemption Six

In addition, the Department properly withheld the domain names of the private email addresses of three Department employees, pursuant to FOIA Exemption 6, in the document obtained from Mr. Sullivan.[8]  FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6). The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6.  In *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989), the Court rejected a "cramped notion of personal privacy" under the FOIA's exemptions and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person."  More specifically, the Court noted that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others." *Id.* at 764 n.16 (citation omitted).  Privacy is of particular importance in the FOIA context because a disclosure required by the FOIA is a disclosure to the public at large.  *See Painting &*

---

[8] The domain name of an email address is the part that comes after the "@" symbol.  For example, in the email address "george.washington@hotmail.com", the domain name is "hotmail.com".

*Drywall Work Preservation Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure.  *See Rose*, 425 U.S. at 372.  The agency must determine whether disclosure of the information threatens a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  The "only relevant public interest to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding *of the operations or activities of the government*."  *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (emphasis as in Fed. Labor Relations Auth.; internal citation and quotation marks omitted). Plaintiff bears the burden of demonstrating that the release of the withheld documents would serve this interest.  *See Carter v. Dep't of Commerce*, 830 F.2d 388, 391-92 nn. 8 & 13 (D.C. Cir. 1987).

The Department properly withheld the domain names of the private email addresses of three Department employees—Ms. Mills, Mr. Sullivan, and Mr. Reines—that were in the later email in the email chain provided by Mr. Sullivan.[9]  Director Hackett weighed the public interest in disclosure against the privacy interests of the individuals whose private email addresses appear in the email chain.  Hackett Decl'n ¶ 32-33.  Director Hackett found that disclosure of the email addresses could subject the individuals to harassment and would result in a clearly unwarranted invasion of privacy.  *Id.*¶¶ 29, 33.  He also determined that the release would shed no light on government operations and thus would not serve the "core purpose" for which Congress enacted FOIA.  *Id.* ¶¶ 29, 33.  For these reasons, he concluded that the privacy interest

_____

[9] The Department does not seek to protect the personal email address of former Secretary Clinton ("hdr22@clintonemail.com"), which is in the earlier email in the email chain.  Hackett Decl'n ¶ 30, n. 8.

clearly outweighs any public interest in disclosure.  *Id.* ¶ 29.  The domain names of the private email addresses are therefore exempt from release under FOIA Exemption 6.  *Id.*¶ 33.

Agency employees "obviously have a powerful privacy interest" in their personal email addresses, even when used for work-related correspondence.  *Competitive Enter. Inst. v. United States Envtl. Prot. Agency*, 12 F. Supp. 3d 100, 122 (D.D.C. 2014); *see also Shurtleff v. United States Envtl. Prot. Agency*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (noting that "preventing the burden of unsolicited emails and harassment" is a "substantial privacy interest").  And any public interest associated with the use of a private email account for work-related correspondence is "satisfied by the *Vaughn* entries . . ., which both name the employee and explain that his or her 'personal email address[es] . . . [have been] withheld on the basis of Exemption 6.'"  *Id.* (quoting *Vaughn* index in that case).  "Beyond that, there is no public interest in knowing, for example, whether [agency] employees used Hotmail or Yahoo for their personal email correspondence."  *Id.*  Likewise, the *Vaughn* entry in this case has both named the employees whose personal email accounts appear in the document and stated that they have been withheld under Exemption 6, satisfying any public interest that may exist here.  *See* Hackett Decl'n ¶ 30.

## CONCLUSION

For the foregoing reasons, the Court should grant the Department of State's Motion for Summary Judgment and enter judgment for defendant.

July 7, 2015                                      Respectfully submitted,

                                                 BENJAMIN C. MIZER
                                                 Principal Deputy Assistant Attorney General

                                                 ELIZABETH J. SHAPIRO
                                                 Deputy Branch Director

                                                 */s/ Robert J. Prince*
                                                 ROBERT J. PRINCE (D.C. Bar No. 975545)
                                                 United States Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 20 Massachusetts Ave., N.W.
                                                 Washington, DC 20530
                                                 Tel: (202) 305-3654
                                                 robert.prince@usdoj.gov