# EXHIBIT 1

(DECLARATION OF DAVID SUN)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF STATE<br><br>*Defendant.* | Civil Action No. 14-cv-1242 (RCL) |

### DECLARATION OF DAVID SUN

The undersigned, David Sun, an expert witness for Plaintiff Judicial Watch, Inc., hereby sets forth his declaration as follows:

**A. Qualifications and personal background.**

1. I, David Sun, state that I am over the age of 18 and am competent to testify to the matters herein.

2. I am the founder and president of SunBlock Systems, a consulting firm which specializes in digital forensics, electronic discovery, and technology consulting. As president, I have led and personally conducted numerous computer examinations and have been involved in electronic discovery matters.

3. I am also the president of S34A, Inc., a company that performs advanced research in computer forensics for the Department of Homeland Security and other government agencies. As the president, I am responsible for the company's overall research efforts and ensuring that they meet the technical and operational requirements of forensic practitioners in law enforcement as well as the private sector.

1

4. I am a Certified Information Systems Security Professional (CISSP), a Certified Computer Examiner (CCE) and an EnCase Certified Examiner (EnCE). I am also an Adjunct Professor at George Mason University and an instructor for Virginia and Massachusetts State Bar approved Continuing Legal Education courses, having taught multiple courses on computer forensics and electronic evidence. I am often invited to speak at technical conferences on advancements in the field of computer forensics. I have been awarded multiple patents for inventions in the field of computer forensics and also authored numerous technical publications in the fields of computer forensics, electromagnetics, and telecommunications. I have Bachelor's and Master's degrees in Electrical Engineering from Virginia Polytechnic Institute and State University (Virginia Tech).

5. I have been accepted as a testifying expert in Computer Forensics in multiple jurisdictions. Examples of my roles in the fields of computer forensics and electronic discovery include the following:

   a. Managed numerous computer investigations and e-Discovery matters involving various legal issues such as United States Security and Exchange Commission (SEC) compliance, United States Environmental Protection Agency (EPA) criminal investigations, homicide, black-market drug manufacturing, intellectual property theft, identify theft, corporate malfeasance, system hacking, and wrongful termination.

   b. Served as computer forensics and e-Discovery expert for various multi-national corporations involved in class action and anti-trust litigation.

    c. Performed information security assessments for various high profile events and systems such as the Games of the 2004 Olympiad in Athens, Greece; the United Nations 2002 Summit on Economic Development in Johannesburg, South Africa; and the United States Federal Reserve Bank in Dallas, TX.

    d. Served as interim Chief Technology Officer (CTO) for a distressed phone company ordered into receivership by a federal judge.

6. One particular past matter which may be relevant to this matter is my investigation into the loss of public records by then sitting mayor for the City of New Orleans, C. Ray Nagin. In that matter, the City was responding to a FOIA request for emails from the Mayor. The City's IT department was unable to produce a reasonable set of records, as the emails no longer existed in the Mayor's email account. The City, therefore, retained SunBlock Systems to assist its IT department in identifying alternative locations for Mayor Nagin's emails. Our efforts entailed gaining an understanding of the City's IT systems, how they were managed and how they were used by employees. With that understanding, we were able to identify alternative search methods and locations that resulted in the recovery of thousands of additional emails.

### B. Purpose and Scope of Judicial Watch's Retention.

7. I have been retained by Judicial Watch to review the Defendant's Motion for Summary Judgement and its supporting documents as well as various filings and declarations made in other lawsuits by or on behalf of the State Department. Specific filings are referenced in footnotes as appropriate. In reviewing this information, I have been asked to form an opinion on the thoroughness and effectiveness of the Defendant's searches and efforts to

3

locate records responsive to the Plaintiff's FOIA request. I form this opinion based on my professional training and experience and information available to me at this time.

### C. Lack of Information to Confirm Effectiveness of Search.

8. In any controversial fact finding endeavor, a natural tension exists between assurances that a responding party conducted a thorough search effort, and uncertainty on the side of the requesting party. Given that the responding party is neither compensated nor motivated to be as comprehensive as possible in their search for responsive documents, the requesting party or some external entity generally needs to be provided enough detail on the search in order to form a fully informed opinion about its adequacy.

9. For example, in the realm of civil litigation and electronically stored information (e.g. emails, computer files, text messages), Rule 26(f) of the Federal Rules of Civil Procedure requires all parties in litigation to conduct a "meet and confer" in the early stages of litigation. Generally, this meet and confer is accepted to include the sharing of information regarding data custodians and locations for readily accessible electronically stored information. While such meet and confers are not always successful, by mandating that they occur a process has been created in which the requesting and responding parties must engage in a discussion. The result of this required discussion ensures requesting parties have a better understanding of the respondent's systems and the data available for searching. This affords the requesting party the opportunity to assess if the respondent conducted a reasonable search. Although the Federal Rules of Civil Procedure may not be directly applicable in the FOIA context, they demonstrate the need for collaboration between opposing parties when exchanging electronically stored information. Another court has even stated that "much of the logic behind the

4

increasingly well-developed case law on e-discovery searches is instructive in the FOIA search context because it educates litigants and courts about the types of searches that are or are not likely to uncover all responsive documents."[1]

**D. Inadequate Search Methodology Based on Information Available.**

10. In his declaration, John F. Hackett, Director of the Office of Information Programs and Services for the U.S. Department of State, provides some details on the search methodology used. The Declaration specifies that various formal records systems within the Office of the Executive Secretariat Staff ("S/ES-S") were searched. Specifically, documents from the "STARS", "STePS", "CARS" and "TS" systems were searched as well as the state.gov email accounts of Cheryl Mills, Jacob Sullivan, and Huma Abedin.[2] However, the state.gov email account for Secretary Clinton was omitted from the search.

11. In normal circumstances, the locations specified in Director Hackett's declaration may be considered suitable as an individual's work email account typically contains a significant portion of the messages available. However, in this matter, based on information and belief that Secretary Clinton and other members of S/ES-S (including Ms. Abedin, Ms. Mills and Mr. Sullivan)[3,4] used external email systems and/or external email addresses to conduct official State Department business, a search of the formal records systems and the state.gov email accounts for only those three individuals cannot be considered a reasonable scope to locate the information specified in the FOIA request. This is because neither the inbox or sent-item folders for their state.gov email accounts can be expected

---

[1] *National Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87, 109 (S.D.N.Y. 2012).
[2] Defendant's Motion for Summary Judgement filed on July 7, 2015, Declaration of John F. Hackett, pages 3-5.
[3] *Judicial Watch v. U.S. Department of State*, Case Number 13-CV-1363-EGS, Supplement to Defendant's August 7, 2015 Status Report, Declaration of Hillary Rodham Clinton.
[4] *Judicial Watch v. U.S. Department of State*, Case Number 13-CV-1363-EGS, Defendant's Status Report filed on August 7, 2015, Exhibit A and Exhibit E.

5

to contain records of all emails sent or received by those individuals in which they conducted official State Department business. The use of a separate, external system means that an unknown number of messages for these key individuals did not originate or terminate in their state.gov email account.

12. In my opinion, based on the limited information provided by the Defendant as well as the acknowledged usage by key individuals whose email accounts were searched, the Defendant failed to apply an adequate search methodology to locate documents responsive to this FOIA request. Specifically, the omission of Secretary Clinton's state.gov account from the search, the inability of the Defendant to confidently include all contents from outside email systems used for work purposes by key individuals, and the omission of other relevant custodians from the search means that the data Director Hackett was able to search was incomplete from the onset. Therefore, additional searches to include alternative locations are both necessary and reasonable. Supplementary information is necessary to determine which additional searches would be reasonable.

E. **Additional Searches Available.**

13. The implementation of additional searches should start with some common search practices. The most fundamental practice is to establish a reasonable records custodian list- a list of individuals who may have encountered responsive records as part of their job responsibilities and duties. In general, key individuals as well as others who would have communicated with them (such as their administrative assistants, their direct reports and the administrative assistants for those direct reports) should be included in the records custodian list. While Director Hackett's declaration indicates that some members

of Secretary Clinton's staff were included, it was a small number and failed to include their assistants or direct reports who may have been included in email correspondence. In addition, Secretary Clinton was not included in the list of individuals whose accounts or systems were searched. As such, the records custodian list used by the Defendant lacked numerous relevant individuals likely to have received responsive emails.

14. Once this list of records custodians is established, all potential locations where responsive documents could have been stored should be identified. Through the normal course of operation, computer systems utilize numerous potential locations to find responsive records. Examples of such typical locations include, but are not limited to:

    a. All electronic devices and equipment used by data custodians such as computers workstations, laptops, cell phones (BlackBerrys, iPhones, etc.), iPads, USB storage devices, CD/DVD media;

    b. Servers such as email servers, file servers, email archive servers, application servers, document management systems, backup servers;

    c. Externally or cloud hosted systems and accounts;

    d. Social media accounts;

    e. All backup media for any of the above sources;

    f. Paper documents/archives/journals;

    g. Ad hoc backup storage devices. These are locations where users may store business information without the knowledge or assistance of the IT department. Numerous filings in related cases have demonstrated that the key individuals in this matter likely used such ad hoc locations as they acknowledge still having

7

possession of federal records despite no longer being employed at the Department of State.[5]

15. The recommendation to search each of these possible locations is made based on the following:

   a. The relative ease of searching the location;
   b. The probability of finding responsive information in the location;
   c. The ability to perform the equivalent searches using easier methods at other locations.

While Director Hackett's FOIA search methodology that led him to only search the formal records systems and state.gov email accounts for three individuals may have been adequate in other FOIA requests, in this matter, since the Department's email server was apparently bypassed, alternative search methodologies and locations must be considered for the search to be reasonable and adequate.

16. Starting with the fundamental records custodian list, based on the limited information available, I am of the opinion that Director Hackett's list was incomplete. In addition to omitting any administrative assistants for the key individuals, the account of Philippe Reines (Deputy Assistant Secretary of State for Strategic Communications and Senior Communications Advisor to Secretary Clinton) was also omitted. Mr. Reines was included among the recipients of withheld document **C05831334**[6] indicating that he may have encountered responsive records as part of his job responsibilities and duties. It is important to note that Mr. Reines also used an external email account for business

---

[5] Judicial Watch v. U.S. Department of State, Case Number 13-CV-1363-EGS, Defendant's Status Report filed on August 7, 2015, Exhibit A and Exhibit E.
[6] Defendant's Motion for Summary Judgement filed on July 7, 2015, Declaration of John F. Hackett, paragraph 30.

8

communications. To my knowledge, Mr. Reines has not been directed to confirm that he has produced any responsive documents in his possession. This omission further reduces the probability that Director Hackett's search covered the complete universe of documents.

17. Beyond the external email accounts used by key individuals, the Defendant can access numerous locations at which it can conduct the document search. Searching the computers, cell phones, and USB storage devices used by any of the records custodians is fairly straightforward. Searching departmental file servers, archive servers and backup media for emails moved off the email server (a common practice) is also a routine process. Lastly, most modern email systems have the ability to conduct an enterprise-wide keyword search of inboxes within the email server(s), thereby eliminating the need to search each user account individually.

18. While an enterprise-wide search of all inboxes on the email server(s) may seem daunting at first, numerous advances in email server management have made this a fairly expedient and common practice. For example, Microsoft Exchange, a very common enterprise email system used by numerous government agencies, supports numerous tools designed to perform an enterprise-wide search.[7] Some of these tools cost as low as $300, depending on the number of mailboxes to search and can be installed on the email server(s) to conduct centralized searches. Other email systems, such as IBM (formerly Lotus) Notes/Domino, also have tools available which support enterprise-wide keyword searching from the email server.

---

[7] Example tools for enterprise-wide keyword searching include Discovery Attender by Sherpa Software, PowerControls by Kroll Ontrack, and MAPILab Search for Exchange by MAPILab.

9

19. Microsoft included the enterprise-wide keyword search functionality since the 2010 version of the Microsoft Exchange email system allowing for its prevalent use. The free "multi-mailbox search" function allows for searching up to 2,500 mailboxes in a single search.[8] Searches involving more than 2,500 mailboxes can be done by performing the searches in batches of accounts. Attached in Exhibit A is a screen capture from a typical Exchange email system. It demonstrates the ability to easily perform an enterprise-wide keyword search of email messages from any user account on the server that contain a specified keyword(s).

20. In this matter, I believe that an enterprise-wide keyword search of all user accounts on the email server is an effective and logical next step. The process would allow the reconstruction of each data custodian's email account to the extent possible by identifying any available emails that were sent to or from the account of interest. Information provided in a related matter by one of Secretary Clinton's aides has also suggested that, since Secretary Clinton had a practice of sending emails to other official's government email accounts, copies of her messages can be found within the government's email system presumably in the accounts of those recipients.[9]

21. In addition to an enterprise-wide keyword search on the email server, other searches are likely to provide an effective and efficient way to centrally find relevant emails. For example, departmental file servers are often a good location to find older emails because they allow employees to store files in a single location. Since email servers do not have

---

[8]https://technet.microsoft.com/en-us/library/Dd335072%28v=EXCHG.141%29.aspx
[9] Judicial Watch v. U.S. Department of State, Case Number 13-CV-1363-EGS, Joint Status Report filed on June 19, 2015, Exhibit D.

10

infinite space, mailbox quotas are typically implemented which require users to periodically remove emails from the server. Users often do not want to simply delete older messages so it is common for them to create an alternative storage location to archive these emails. Very often, this alternative location is the departmental file server as it allows the data to be backed up and secured.

22. Though it is undetermined if the Defendant utilizes an email archive server, many enterprises that frequently encounter litigation or FOIA requests use such servers. An email archive server essentially archives every email to/from the enterprise and stores it in a large centralized database. This allows all emails to be readily searched and produced based on attributes such as Sender, Recipient, Sent Date, Subject, and keywords in the messages. If the Defendant has such a system, the level of effort to conduct not only an enterprise-wide keyword search of emails currently in the system but all historical emails would be minimal.

23. Lastly, another centralized location where emails can be searched is the backup system. Historically, searching backup media can be a time consuming task. However, focusing the search for email server data can reduce the time necessary. Depending on the technology used, tools may be available that allow searching and extracting of emails responsive to keywords without the need to fully restore the entire system.[10] Such tools would make searching through backups an easier process.

**Conclusions**

24. Based on the unusual practice where key individuals bypassed their Department of State email accounts and used external email accounts to conduct business, the Defendant's

---

[10] http://www.krollontrack.com/information-management/email-management-for-exchange/archive-restoration/

email server cannot adequately serve as a singular definitive location to search for responsive email documents. Because these circumstances are not typical, the typical search process used by the Defendant is not adequate in ensuring a reasonable search has been conducted.

25. In my experience and practice, when a custodian's email is unavailable or inadequately complete for review, I have found that there are numerous alternative locations which can facilitate the location of emails. In my opinion, the Defendant should implement the following additional searches at a minimum:

   a. an enterprise-wide search at the email server for all email to/from Department and external accounts for the key individuals;

   b. a search of the computers, cell phones, and USB storage devices used by any of the data custodians for messages from the key individual's Department and external accounts;

   c. a search of any departmental file servers, archive servers, and backup media for emails to/from the Department or external accounts for the key individuals.

26. While my knowledge of the Defendant's IT system has been limited due to the lack of information provided by the Defendant, I expect that, like any other large enterprise, the Defendant can perform the searches described above with relatively inexpensive tools and a reasonable amount of effort. The cost and effort involved in conducting these searches are very likely to be less than the cost and effort of continued litigation. I could be more precise in identifying specific search techniques that would reasonably locate responsive documents if I had more information such as:

   a. A comprehensive data custodian list;

    b. A list of all electronic devices used by key individuals, either issued by the Defendant or otherwise known to have accessed Department of State records;

    c. A description of the email system used and how emails are managed by the Defendant;

    d. A description of the file servers used and how files are managed by the Defendant;

    e. If the Defendant used an email archive server;

    f. A description of the Defendant implemented system backups;

    g. A copy of the Defendant's IT document retention policy along with a description on whether any information is automatically archived or purged and how backup media is handled; and/or

    h. If any of the data custodians used USB devices or made ad-hoc backups of data.

27. I reserve the right to supplement or amend these opinions and my analysis based on additional information that is obtained.

Executed this 21st day of August 2015

X _____

# Exhibit A

---

**New Mailbox Search**

*Required fields

**Keywords** ⌃

Type words to search for. Separate words with uppercase AND, OR, or NOT. Use double quotation marks to search for multi-word phrases. For wildcard searches, place an asterisk (*) after the word.

```
clintonemail.com
```

☑ Include items that can't be searched

Message types to search: All message types
  Select message types...

**Messages To or From Specific E-Mail Addresses** ⌄

**Date Range** ⌄

**Mailboxes to Search** ⌃

* Select mailboxes to search:
  ⦿ Search all mailboxes
  ○ Search specific mailboxes or the mailboxes of members of distribution groups:

    Add...    Remove

**Search Name, Type, and Storage Location** ⌃

The search name is applied to the folder in the destination mailbox where search results are stored.
* Search name:

```
JudicialWatchFOIA
```

* Results:
  ○ Estimate the search results
  ⦿ Copy the search results to the destination mailbox
     ☑ Enable deduplication
     ☐ Enable full logging

  Select a mailbox in which to store the search results:
    Discovery Search Mailbox                              ✕  Browse...

☑ Send me an e-mail when the search is done

✓ Save    ✕ Cancel

🔍 100% ▼

---

14