**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Civil Action No. 14-1242 (RCL) |
| | ) |
| U.S. DEPARTMENT OF STATE, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## PLAINTIFF'S NOTICE OF REVISED DISCOVERY PROPOSAL

Plaintiff Judicial Watch, Inc., by counsel and pursuant to the Court's December 21, 2016 Order, respectfully submits that discovery should proceed consistent with this revised discovery proposal. Pursuant to the Court's Order and LCvR7(m), the parties conferred on several occasions, but were unable to reach agreement on a discovery proposal. Indeed, Defendant is unwilling to agree to any discovery at all in this action. Therefore, Plaintiff submits its discovery proposal separately from Defendant. A proposed order is also attached.

Plaintiff's discovery proposal focuses on two main areas that were addressed by the Court's March 29, 2016 Order granting Plaintiff's motion for discovery, but were not covered by discovery subsequently undertaken in *Judicial Watch, Inc. v. U.S. Dep't of State*, Case No. 13-1363 (EGS) (D. District of Columbia) ("Case No. 13-1363"). These areas are: (i) evidence of wrongdoing or bad faith with respect to State Department's response to Plaintiff's FOIA request for records related to the talking points provided to U.S. Ambassador Susan Rice following the September 11, 2012 Benghazi attack and (ii) potential remedies that may ensure a sufficient search for responsive records is undertaken. Potential remedies include an order requiring the

State Department to identify and recover federal records (*e.g.*, emails sent or received by Secretary Clinton during her tenure at the State Department regarding official State Department business) from other custodians or sources, including other agencies and third parties, and requiring the State Department to post these records online.[1]  Plaintiff proposes the following written and oral discovery specifically tailored around these two issues:

## Document Requests

1.  All documents that concern or relate to the processing of any and all searches of the Office of the Secretary for emails relating to the September 11, 2012 Benghazi attack and its aftermath, including but not limited to:

    a.  searches for records for the Accountability Review Board;

    b.  searches in response to congressional inquiries (including requests from the House Committee on Oversight and Government Reform dated September 20, 2012, October 2, 2012, October 29, 2012, and November 1, 2012);

    c.  searches in preparation of Secretary Clinton's testimony before Congress on January 23, 2013; and

    d.  searches in response to FOIA requests, including but not limited to the FOIA request submitted by Plaintiff in this case.

    Such documents would include the tasking, tracking and reporting records for such searches.  Forms DS-1748 and any "search slips," "search tasker," "search details," shall also be considered responsive.

Plaintiff's FOIA request seeks records related to the September 11, 2012 attack on the U.S. Consulate and annex in Benghazi, Libya.  The Office of the Secretary responded to multiple Congressional investigations and at least one, internal State Department investigation into the

---

[1]     Under Secretary of State for Management Patrick F. Kennedy suggested this possible remedy during his September 8, 2016 testimony to the U.S. House of Representatives Oversight and Government Reform Committee, albeit only in reference to records returned by Secretary Clinton:  "If anyone thinks that one of their [FOIA] inquiries did not get a full response, we have posted all of that material, all of the fifty-two thousand [pages], to our public FOIA website in a searchable form so that we can in effect be retroactively responsive to any earlier inquiries." (available at https://www.c-span.org/video/?414934-1/state-department-officials-testify-foia-requests.) Plaintiff's proposed, potential remedy would expand this same practice to records recovered from other custodians and sources.

attack.  Document Request No. 1 seeks records about the State Department's document

collection efforts in response to these investigations.  The purpose of the document request is to

determine whether, during the course of these efforts, the State Department discovered that

Secretary Clinton and other high level officials within the agency had used unofficial email

accounts to conduct official, State Department business, and, if so, when it made this discovery.

The State Department was ordered to produce all non-exempt records responsive to Plaintiff's

FOIA request by November 12, 2014, but did not acknowledge Secretary Clinton's exclusive use

of an unofficial email account until forced to do so after the *New York Times* disclosed the

existence of the account in early March, 2015.  Therefore, the request is relevant to the State

Department's knowledge and awareness when responding to Plaintiff's FOIA request that

Secretary Clinton's emails were not being searched in response to the request.  It also is relevant

to the department's knowledge and awareness that emails in other high level officials' unofficial

email accounts also were not being searched in response to Plaintiff's FOIA request.  It will

assist the Court in determining whether the State Department acted wrongfully or in bad faith.

Moreover, these earlier document collection efforts were not the subject of discovery taken in

Case No. 13-1363.  The request was included in Plaintiff's initial discovery proposal submitted

on May 16, 2016.  (ECF No. 42-1).

> 2.  All communications that concern or relate to the processing of all searches referenced
> in Document Request No. 1 above, including directions or guidance about how and
> where to conduct the searches, whether and how to search Secretary Clinton's email,
> Cheryl Mills' email, Huma Abedin's email and Jacob Sullivan's email, and issues,
> problems, or questions concerning the searches and/or search results.

The State Department has identified Secretary Clinton, Cheryl Mills, Huma Abedin and

Jacob Sullivan as former officials likely to have emailed about the subject matter of Plaintiff's

FOIA request.  Document Request No. 2 is relevant for the same reasons Document Request No.

1, above, is relevant.  Like Document Request No. 1, this request was included in Plaintiff's

initial discovery proposal submitted on May 16, 2016.  (ECF No. 42-1).

> 3. All records that concern or relate to the State Department's policies, practices,
> procedures and/or actions (or lack thereof) to secure, inventory, and/or account for all
> records, including emails of Secretary Clinton, Cheryl Mills, Huma Abedin, Jacob
> Sullivan and staff within the Office of the Secretary prior to their termination of
> employment with the State Department and afterwards.

On or about December 4, 2014, Secretary Clinton returned over 50,000 pages of federal

records she took with her when she left the State Department in early 2013.  The State

Department plainly was aware of Secretary Clinton's email practices at least as early as the

summer of 2014 and, in October 2014, sent the secretary a letter requesting she return any

federal records.  On September 15, 2014, however, the Court ordered Defendant, consistent with

Defendant's own recommendation, to produce all non-exempt, responsive records by November

12, 2014 and provide a *Vaughn* Index of allegedly exempt records by December 5, 2014.

Defendant did not inform the Court at the time that it was in the process of collecting Secretary

Clinton's work-related emails, which were potentially responsive to Plaintiff's request.

During the summer of 2015, Cheryl Mills, Huma Abedin and Jacob Sullivan also

returned thousands of emails that related to their work for the State Department and which were

potentially responsive to Plaintiff's request.  To date, Defendant has not searched all records

returned by Cheryl Mills, Huma Abedin or Jacob Sullivan.

Like Document Requests Nos. 1 and 2, above, the State Department's awareness of these

document collections during the pendency of Plaintiff's FOIA request is relevant to determine

wrongdoing or bad faith.  As with Document Requests Nos. 1 and 2, above, Document Request

No. 3 was included in Plaintiff's May 16, 2016 discovery proposal.  (ECF No. 42-1).

4.    Plaintiff requests copies of the attached records with the Exemption 5 redactions removed, attached hereto as Exhibit 1.  The attached records were obtained by Plaintiff in an unrelated FOIA lawsuit against the State Department for records concerning the processing of a FOIA request submitted by CREW (Citizens for Responsibility and Ethics in Washington) on December 6, 2012 seeking records concerning Secretary Clinton's email account.  *Judicial Watch, Inc. v. U.S. Dep't of State* (RDM) (D. D.C.) (Case No. 16-574).

The CREW request, made on December 6, 2012, specifically sought records "sufficient to show the number of email accounts of, or associated with, Secretary Hillary Rodham Clinton, and the extent to which those email accounts are identifiable as those of or associated with Secretary Clinton."  The State Department subsequently advised CREW that it had no records responsive to its request, but that assertion is plainly incorrect.  *See* Ex. 1, Doc. Nos. C06104785 and C06104322.  Plaintiff later served a FOIA request on the State Department for records regarding the agency's processing of and response to the CREW request.  The State Department produced the attached, heavily-redacted records to Plaintiff on August 29, 2016 and October 28, 2016.  The emails appear to show inquiries and discussions in 2013 regarding Secretary Clinton's email usage and accounts.  Plaintiff seeks unredacted copies of these records because, like Document Request Nos. 1-3, they may shed light on when the State Department discovered that Secretary Clinton used an unofficial email account to conduct official State Department business, and, accordingly, whether there was wrongdoing or bad faith.

The records are emails exchanged by State Department officials about the agency's processing and response to the CREW request:

•      In a January 10, 2013 email from Sheryl L. Water (Director of the Office of Information Programs Services) to Heather Samuelson (in the White House Liaison Office for the State Department) Walter asked Samuelson, regarding the CREW request, "did you ever get any intel re … Do you have any concerns about that approach?"  The remainder of the text has

been redacted under Exemption 5.  Ex 1, Doc. Nos. C06104795, C06104864 and C06071648.

According to a report published by the State Department's Office of Inspector General in

January 2016, Cheryl Mills also was informed of the CREW request at the time and asked for

follow-up.  *See* Department of State Office of Inspector General Rpt. Jan 2016, pg. 15, posted on

January 7, 2016 and available at https://oig.state.gov/system/files/esp-16-01.pdf (accessed

January 10, 2017).  The name of the individual with whom Samuelson followed up also has been

redacted from the email under Exemption 5.  Ex. 1, Doc. No. C06104864.  It appears that

Samuelson tracked the CREW request for the remainder of her employment at the State

Department.  *Id.*

- •       On April 24, 2013, Gene Smilanksy, in the Office of the Legal Advisor, wrote to

Brett Gittleson to "follow up about the [CREW] request for documents pertaining to any email

accounts associated with then Secretary Clinton."  Doc. No. C06105118.  Again, the relevant

text has been redacted under Exemption 5.  *Id.*

- •       In an August 7, 2013 email from Geoffrey Hermesman, a branch chief in the State

Department's Office of Information Programs and Services, to Walter, Karen Finnegan, John

Hackett, and other State Department officials, Hermensman informed these officials that a

database search identified "17 FOIA cases that contain Clinton in the subject line and can be

further construed as requests for correspondence between the Secretary and other individuals

and/or organizations.  Of these, four specifically mention Emails or Email accounts."  Ex. 1,

Doc. No. C006105353.  This discussion appears to have continued through August 2014 between

Smilanksy, James Bair (Office of the Legal Advisor), and Clarence Finney (Deputy Director for

Executive Secretariat Staff).  Again, however, the relevant text has been redacted under

Exemption 5.  Ex. 1, Doc. No. C06104375.

The deliberative process privilege "rests on a policy of affording reasonable security to the decision making process within a government agency," however, the "privilege is a 'qualified one,'…and 'is not absolute.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (First Cir. 1995), citing *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n. 5 (D.C. Cir. 1994).  Thus, "'where documents sought may shed light on alleged government malfeasance,' the privilege is routinely denied."  *Id.*, citing *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y 1979).  The redacted portions of the records produced in response to Plaintiff's request about the proceeding of the CREW request may shed light on government malfeasance.  Accordingly, the Court should order the State Department to produce unredacted copies of these same emails in discovery in this case.  Because these emails were not produced to Plaintiff until August 29, 2016 and October 28, 2016, they were not available to Plaintiff when it submitted its initial discovery proposal on May 16, 2016.  *Id.* at ECF No. 12; Ex. 1.  Therefore, Document Request No. 4 was not included in Plaintiff's initial discovery proposal.  As such, they were also not available to Plaintiff while it was conducting discovery in Case No. 13-1363 and Plaintiff did not have an opportunity to ask questions about these records.

### Depositions

1.  30(b)(6) witness(es) to testify about:

    a.  the searches referenced in Document Request Nos. 1 and 2 above;

    b.  the policies, practices, procedures and/or actions referenced in Document Request No. 3 above; and

    c.  the processing of the FOIA requests referenced in the emails attached hereto as Exhibit 1and discussed in Plaintiff's Document Request No. 4 above, including but not limited to the processing of the CREW FOIA request, the other requests discussed therein from 2012 through 2014 and Plaintiff's FOIA request at issue in this case.

2.  Cheryl Mills to testify about:

    a.  the searches referenced in Document Request Nos. 1 and 2 above;

    b.  the policies, practices, procedures and/or actions referenced in Document Request No. 3 above;

    c.  the processing of the FOIA requests referenced in Document Request No. 4 above;

    d.  Mills' subsequent search of her non-state.gov email account(s) for federal records and the return of those records to the State Department in or about 2015.  (Defendant has not yet searched the records returned by Mills to determine whether any of those records are responsive to Plaintiff's FOIA request.);

    e.  identification of individuals (whether State Department officials, other government officials, or third-parties) with whom Secretary Clinton and/or Mills may have communicated by email.  (As a possible remedy, Plaintiff may seek an order requiring the State Department to identify and recover federal records, *e.g.*, emails sent or received by Secretary Clinton during her tenure at the State Department regarding official State Department business, from other sources or custodians.  This line of inquiry seeks information relevant to effectuating that possible remedy.); and

    f.  Mills' discussion with Bryan Pagliano in 2009 and 2010 about concerns raised internally at the State Department regarding Secretary Clinton's email practices and "federal records retention issues" regarding those practices.

Regarding subparagraph 2(f), above, when Mills was deposed on May 27, 2016 in Case No. 13-1363, she was asked about internal, State Department concerns regarding the secretary's email practices, but testified that she could not recall any such discussions or concerns being raised.  On or about September 23, 2016, the FBI released its notes of interviews conducted during the course of its investigation.  According to the FBI's interview notes of State Department technology specialist Bryan Pagliano, who maintained Secretary Clinton's unofficial email server, Pagliano raised the issue with Mills, who responded by telling Pagliano that former Secretary of State Colin Powell had used private email as well.  Ex. 2 (FBI Notes of December 22, 2015 Interview of Bryan Pagliano at p. 4).  Because the FBI 302 interview notes of Pagliano

were not available to Plaintiff when it deposed Mills, Plaintiff did not have the opportunity to ask her about these notes.  Plaintiff also deposed Pagliano in Case No. 13-1363, but Pagliano asserted his 5th Amendment right against self-incrimination in response to every question.  Re-deposing Mills in this case would not be duplicative and would only seek to complete the record and discover facts relevant to this case.  Plaintiff requested Mills' deposition in its May 16, 2016 discovery proposal, but has expanded the subject matter of the deposition inquiry as explained in subsection (f) above and in Document Request No. 4.

> 3.  Jacob Sullivan to testify about:
>
> > a.  the searches referenced in Document Request Nos. 1 and 2 above;
> >
> > b.  the policies, practices, procedures and/or actions referenced in Document Request No. 3 above;
> >
> > c.  Sullivan's use of non-state.gov email account(s) to conduct official, State Department, business and the subsequent "private" search of his non-state.gov email account(s) for federal records and the return of those records to the State Department in or about 2015 (Defendant has not yet searched the records returned by Sullivan to determine whether those records are responsive to Plaintiff's FOIA request.); and
> >
> > d.  identification of individuals (whether State Department officials, other government officials, or third-parties) with whom Secretary Clinton and/or Sullivan may have communicated by email.  (As a possible remedy, Plaintiff may seek an order requiring the State Department to identify and recover federal records, *e.g.*, emails sent or received by Secretary Clinton during her tenure at the State Department regarding official State Department business, from other sources or custodians.  This line of inquiry seeks information relevant to effectuating that possible remedy.)

Jacob Sullivan was Secretary Clinton's Deputy Chief of Staff and Director of Policy Planning during her tenure.  As with Mills' deposition, Plaintiff requested Sullivan's deposition in its May 16, 2016 proposal.

> 4.  Secretary Hillary Rodham Clinton to testify about:
>
> > a.  the searches referenced in Document Request Nos. 1 and 2 above; and

    b.   identification of individuals (whether State Department officials, other government officials, or third-parties, including but not limited to Sidney Blumenthal) with whom Secretary Clinton may have communicated by email. (As a possible remedy, Plaintiff may seek an order requiring the State Department to identify and recover federal records, *e.g.*, emails sent or received by Secretary Clinton during her tenure at the State Department regarding official State Department business, from other sources or custodians.  This line of inquiry seeks information relevant to effectuating that possible remedy.)

Secretary Clinton was served with written interrogatories in Case No. 13-1363, and she served responses on October 13, 2016.  A motion to compel further responses to certain interrogatories is pending.  The topics on which Plaintiff seeks to depose Secretary Clinton in this case are specifically crafted to avoid overlap with the questions posed to Secretary Clinton in Case No. 13-1363 and are narrowly tailored to address the issues of wrongdoing and possible remedies in this case.  *See Landmark Legal Found. v. Envtl. Prot. Agency*, 959 F. Supp. 2d 175 (D.D.C 2013) (permitting the deposition of a former agency head to determine use of private email account for official government business).  Secretary Clinton was included among the original deponents identified in Plaintiff's May 16, 2016 discovery proposal, but Plaintiff has removed the secretary's use of the "clintonemail.com" email account for government business as a topic for questioning, as that subject was covered in the discovery taken in Case No. 13-1363.

    5.   Heather Samuelson to testify about:

        a.   the searches referenced in Document Request Nos. 1 and 2 above;

        b.   the policies, practices, procedures and/or actions referenced in Document Request No. 3 above; and

        c.   the processing of the FOIA requests referenced in Document Request No. 4 above and subject matters discussed in the documents attached hereto as part of Exhibit 1.

During Secretary Clinton's tenure, Heather Samuelson initially worked as an assistant in State Department's White House Liaison Office and was later promoted to serve as the head of that office.  Until her tenure at the State Department ended in March 2013, Samuelson was tasked with tracking the FOIA request served by CREW for records regarding Secretary Clinton's email accounts.  Samuelson currently serves as one of Secretary Clinton's personal attorneys and, in 2014, reviewed Secretary Clinton's "clintonemail.com" email account to identify federal records.  The records returned by Secretary Clinton in December 2014 were records identified by Samuelson.  Samuelson's involvement in the processing of the CREW FOIA request and/or other requests pertaining to Secretary Clinton's email account was not known to Plaintiff when it submitted its discovery proposal on May 16, 2016.  Samuelson was therefore not identified among the proposed deponents.

6.  Lauren Jiloty to testify about:

a.  the searches referenced in Document Request Nos. 1 and 2 above;

b.  the policies, practices, procedures and/or actions referenced in Document Request No. 3 above;

c.  the processing of the FOIA requests referenced in Document Request No. 4 above and subject matters discussed in the documents attached hereto as part of Exhibit 1; and

d.  identification of individuals (whether State Department officials, other government officials, or third-parties) with whom Secretary Clinton may have communicated by email.  (As a possible remedy, Plaintiff may seek an order requiring the State Department to identify and recover federal records, *e.g.*, emails sent or received by Secretary Clinton during her tenure at the State Department regarding official State Department business, from other sources or custodians.  This line of inquiry seeks information relevant to effectuating that possible remedy.)

Lauren Jiloty was Special Assistant to Secretary Clinton during her tenure and Plaintiff requested her deposition in its original, May 16, 2016 discovery proposal.  In this capacity, Jiloty

entered Secretary Clinton's contacts into the secretary's Blackberries, and accordingly, is very likely to possess information about the identities of individuals with whom Secretary Clinton communicated by email. *See* Plaintiff's Reply in support of Notice of Proposed Order for Discovery, ECF No. 49 at ¶¶ 4-5.

7. Monica Hanley to testify about:

   a. the searches referenced in Document Request Nos. 1 and 2 above;

   b. the policies, practices, procedures and/or actions referenced in Document Request No. 3 above;

   c. the processing of the FOIA requests referenced in Document Request No. 4 above and subject matters discussed in the documents attached hereto as part of Exhibit 1; and

   d. identification of individuals (whether State Department officials, other government officials, or third-parties) with whom Secretary Clinton may have communicated by email. (As a possible remedy, Plaintiff may seek an order requiring the State Department to identify and recover federal records, e.g., emails sent or received by Secretary Clinton during her tenure at the State Department regarding official State Department business, from other sources or custodians. This line of inquiry seeks information relevant to effectuating that possible remedy.)

Monica Hanley worked as a "Confidential Assistant" for Secretary Clinton in the Office of the Secretary. As a key assistant to Secretary Clinton, Hanley is likely to possess information about the identities of individuals with whom Secretary Clinton communicated by email. *See* Plaintiff's Reply in support of Notice of Proposed Order for Discovery, ECF No. 49 at ¶¶ 4-5. Plaintiff requested her deposition in its original discovery proposal.

8. Clarence Finney to testify about:

   a. the searches referenced in Document Request Nos. 1 and 2 above;

   b. the policies, practices, procedures and/or actions referenced in Document Request No. 3 above; and

      c.   the processing of the FOIA requests referenced in Document Request No. 4 above and subject matters discussed in the documents attached hereto as part of Exhibit 1.

Clarence Finney currently is the Deputy Director of the State Department's Executive Secretariat Staff.   During Secretary Clinton's tenure he served as principal advisor and records management expert to the Executive Secretary on matters relating to the overall management and control of all correspondence and records for Secretary Clinton and the various Deputy Secretaries of State and Under Secretaries of State.   Finney was included among the original deponents identified in Plaintiff's May 16, 2016 discovery proposal.   Finney also is among the State Department officials in the emails discussing the processing of the CREW FOIA request and other requests concerning the former Secretary's email account.   *See* Doc. Request 4 above. The subject of the August 2014 emails with Finney was "Former Secretary E-mail Account." Ex. 1, Doc. No. C06104375.

9.   Sheryl L. Walter to testify about the processing of the FOIA requests referenced in Document Request No. 4 above and the subject matters discussed in the documents attached hereto as part of Exhibit 1.   *See* Document Request 4 above.   Walter was the Director of the Office of Information Program and Services for the State Department, and she appears in the documents attached hereto and referenced in Document Request No. 4, above.   Plaintiff did not have knowledge of Walter's involvement in the collections of the FOIA requests pertaining to Secretary Clinton's email account in 2014 or the CREW FOIA request, and, therefore, Walter was not listed among the original deponents in Plaintiff's discovery proposal.

10.   Gene Smilansky to testify about the processing of the FOIA requests referenced in Document Request No. 4 above and the subject matters discussed in the documents attached hereto as part of Exhibit 1.   *See* Document Request 4 above.   Plaintiff did not have knowledge of

Smilansky's involvement in the processing of the FOIA requests pertaining to Secretary Clinton's email from 2012 through 2014, and, therefore, Plaintiff did not identify him as a deponent in its May 16, 2016 discovery proposal.

Plaintiff proposed that its discovery be conducted pursuant to the relevant Federal Rules of Civil Procedure.  Plaintiff also proposes that its discovery shall conclude within 12 weeks of the Court's order authorizing Plaintiff's proposed discovery and that Defendant serve its complete responses to Document Request Nos. 1 through 4 above within 21 days of the Court's Order.  In the event conflicts exist for scheduling third-party depositions, Plaintiff will seek leave from the Court to conduct those depositions on specific proposed dates outside the approved discovery period that are mutually available to all parties and third-parties.

Dated: January 10, 2017

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/ Ramona R. Cotca
Ramona R. Cotca
D.C. Bar No. 501159
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC  20024
Tel. (202) 646-5172
rcotca@judicialwatch.org

*Attorneys for Plaintiff*