IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. *Plaintiff*, v. U.S. DEPARTMENT OF STATE, *Defendant*. | Civil Action No. 14-cv-1242 (RCL) |

**DEFENDANT'S NOTICE OF PROPOSED ORDER
REGARDING FURTHER PROCEEDINGS**

The discovery Plaintiff seeks was duplicative and overbroad when it was first proposed seven months ago.  *See* Def.'s Response to Pl.'s Proposed Order (ECF No. 43).  Since Plaintiff filed its proposed order seeking broad discovery into a number of topics unrelated to this FOIA case, a significant amount of new information has become available.  In a FOIA case before Judge Emmet G. Sullivan, Plaintiff has conducted discovery, including deposing eight witnesses and receiving answers to 32 interrogatories—including 22 directed to former Secretary of State Hillary Rodham Clinton—into subjects it seeks to address here.  Defendant Department of State's ("State") Office of Inspector General has released a report regarding email practices within the Office of the Secretary during Secretary Clinton's tenure.  The House Select Committee on Benghazi released transcripts of interviews and testimony of former Secretary Clinton and other State officials concerning what they knew about her use of a personal email.  And the Federal Bureau of Investigation ("FBI") completed its investigation of Secretary Clinton's use of a personal email server during her time as Secretary of State and declined to bring charges.  Much of the information developed during the FBI's investigation is now publicly available in the form of testimony before Congress by FBI Director James B. Comey, the FBI investigative report, and summaries of interviews with witnesses, including Secretary Clinton.

Per the Court's order of December 21, 2016, counsel for the parties conferred by telephone regarding further proceedings. Notwithstanding the copious quantities of newly available information, counsel for Plaintiff indicated that Plaintiff would renew some or all of the requests made in its previous proposed order, including its broad documents requests about searches unrelated to the FOIA request at issue, or, indeed, to FOIA searches at all. In addition, counsel for Plaintiff indicated that it might seek additional discovery beyond what it requested in its previous proposed order. State hereby renews its objections to Plaintiff's previously proposed discovery, which are described in detail in State's Response to Plaintiff's Proposed Order (ECF No. 43).[1]

---

[1] Shortly before undersigned counsel intended to file this notice, Plaintiff filed its Notice of Revised Discovery Proposal ("Pl.'s Notice") (ECF No. 50), which disclosed for the first time that Plaintiff would seek at least ten depositions, instead of the seven it originally sought. Pl.'s Prop. Order at 2-5 (ECF No. 50-3). Plaintiff also seeks to expand the scope of the document requests and 30(b)(6) deposition it originally proposed to cover processing of a number of FOIA requests over a 2-year period. *Id.* at 2. One of the people Plaintiff seeks to depose is an Attorney-Adviser for State. There is not enough time to address these new requests fully in the little time remaining before the Court's deadline, but State's arguments raised in its response to Plaintiff's first proposed order apply equally to these expanded requests. Plaintiff seeks discovery that is neither limited nor tailored to this case, seeking instead information about searches conducted for other FOIA requests, some of which it is not a party to and none of which is at issue in this case. Nothing Plaintiff seeks is necessary to determining whether State conducted an adequate search.

Plaintiff also seeks to circumvent ongoing FOIA litigation before Judge Randolph D. Moss to which it is a party. Plaintiff seeks unredacted copies of documents produced in Civil Action No. 16-574. Pl.'s Notice at 5-7. The redactions Plaintiff seeks to lift will be the subject of State's motion for summary judgment in that case, to be filed by January 27, 2016, and the propriety of those redactions will be decided by Judge Moss after he reviews the parties' briefs and State's declarations and *Vaughn* index. *See* Minute Order, *Judicial Watch v. U.S. Dep't of State*, Civ. No. 16-574-RDM (D.D.C. Dec. 2, 2016).

Plaintiff, in arguing that State did not conduct itself in good faith, ignores the fact that, after it received the emails from former Secretary Clinton in December 2014, State reached out to Plaintiff to seek more time to allow State to search the newly received emails. *See* Joint Status Report (ECF No. 11). State completed its search of the emails provided by former Secretary Clinton as agreed, months before State filed its motion for summary judgment. Joint Status Report at 8-9 (ECF No. 16). Before that, "State could not have reviewed them because State did not have them," which is not evidence of bad faith. *Freedom Watch, Inc. v. Nat'l Sec. Agency*, No. 1:12-CV-01088 (CRC), 2016 WL 7191558, at *4 (D.D.C. Dec. 12, 2016) (rejecting plaintiff's argument that receiving documents and then searching them is evidence that State's declaration was "not submitted in good faith"). "In fact, [an] agency's cooperative behavior of notifying the Court and plaintiff that it . . . discovered a mistake, if anything, shows good faith." *Fischer v. U.S. Dep't of Justice*, 723 F.Supp.2d 104, 108–109 (D.D.C. 2010). Plaintiff also argues that the fact that State has not searched all the documents provided to State in 2015 by Cheryl Mills, Huma Abedin, and Jacob Sullivan is evidence of bad faith. Pl.'s Notice at 4. Yet State searched all such documents in its possession prior to its filing of its motion for summary judgment. Def.'s Mot. for Summ. J. at 10-11. State did receive additional documents after it filed its motion for summary judgment and proposed to Plaintiff's counsel that the parties should seek to stay the remaining briefing schedule so that a search of the newly received materials could be conducted. Plaintiff rejected that offer.

2

Fundamentally, circumstances have changed significantly since the Court ordered discovery more than nine months ago, and the parties have more than sufficient information to file, and to allow the Court to resolve, their motions for summary judgment. The information already available provides no evidence to suggest that Secretary Clinton used a private email account to thwart FOIA. Accordingly, because the "exceedingly rare" circumstances that justify discovery in a FOIA case no longer exist here, Mem. and Order at 1 (ECF No. 39), the Court should find that discovery is no longer needed or appropriate in this case and to direct the parties to confer to attempt to narrow the issues to be litigated and propose a plan for further proceedings.

## I.   PROCEDURAL HISTORY

Plaintiff's FOIA request sought two narrow categories of records from State's Office of the Secretary: (1) copies of updates and talking points about the attacks of September 11, 2012, in Benghazi, Libya, that were given to former United States Ambassador to the United Nations Susan Rice, and (2) any communications about such updates or talking points. The request duplicated an earlier, identical request that Judicial Watch sent to the United States Mission to the United Nations, where Ambassador Rice worked. State conducted a search for responsive documents that were in its custody and control at the time the FOIA request was received. After obtaining additional documents from former Secretary Clinton and several of her aides, State conducted additional searches of those records as well. After all searches were conducted, State located four (4) responsive records among the records in the Office of the Secretary, all of which duplicated documents produced in response to the earlier request made to the U.S. Mission to the United Nations; no responsive records among the approximately 55,000 pages provided to State from the former Secretary; and one (1) responsive record among the documents provided to State by former Secretary Clinton's former aides after their departure. *See* Govt. Mem. in Support of Mot. for Summary Judgment at 9-11 (ECF No. 19-1).

After State moved for summary judgment, Judicial Watch filed a motion for "limited discovery of facts." Pl.'s Mot. to Allow Time for Limited Disc. Pursuant to Rule 56(d) at 1, ECF No. 22 ("Pl. Motion"). Plaintiff did not take issue with the searches that State had already conducted, and made no effort to discredit the sworn declaration describing those searches that accompanied the Department's motion for Summary Judgment. Rather, Judicial Watch alleged a need to "understand[] . . . the facts and circumstances surrounding Mrs. Clinton's . . . [and] other officials' use of 'clintonemail.com' accounts," Pl.'s Reply in Supp. of Mot. to Allow Time for Limited Disc. Pursuant to Rule 56(d) at 10 ("Pl. Reply"). In other words, Plaintiff sought discovery not about the searches that State conducted, but about searches that it claims State *should have* conducted of records that it did not have. *See* Pl. Motion at 8.

In granting Plaintiff's request for discovery, this Court agreed with Judicial Watch that "limited discovery is appropriate." Order at 1. The Court noted that Plaintiff was entitled to discovery on the "facts and circumstances surrounding Secretary Clinton's extraordinary and exclusive use of her 'clintonemail.com' account to conduct official government business, as well as other officials' use of this account and their own personal email accounts to conduct official government business." Order at 1. In granting Plaintiff's request for discovery, however, this Court also noted that Judge Sullivan "authorize[d] limited discovery" in Civil Action 13-1363 and acknowledged that "the sheer volume of pending cases involving these issues is a burden."[2] The Court instructed Judicial Watch to "file [a] specific proposed order detailing what additional proposed discovery, *tailored to this case*, it seeks to have." *Id.* at 2–3 (emphasis added).

In response, Judicial Watch filed a proposed order that sought discovery that was anything but "limited" or "tailored to this case." Plaintiff sought documents and depositions related to the State Department's searches for all Benghazi-related documents—not only to

---

[2] At that time, there were approximately 60 cases pending in this district that involved searches of the emails of former Secretary Clinton or her aides. Currently, there are approximately 30 such pending cases.

searches performed in response to Plaintiff's many FOIA requests, but also to searches conducted in response to FOIA requests submitted by other parties and even searches entirely unrelated to FOIA. *See* Pl.'s Proposed Order at 1-2 (ECF No. 42-1). Plaintiff also made other requests, related to the use of non-state.gov email addresses, as well as the "clintonemail.com" server, which substantially overlapped discovery that was then underway in the case before Judge Sullivan, *Judicial Watch v. State*, Civ. No. 13-1363 (D.D.C.), which has now been completed save for two motions still under consideration by the court. *See* Pl.'s Proposed Order at 2 (ECF No. 42-1).

In response to Plaintiff's proposed order, State argued that, because Judicial Watch did not address the need for discovery relating to other searches for information related to the Benghazi attacks in either its motion for discovery or the affidavit which it attached to that motion, it was not entitled to discovery on those topics under Rule 56(d). Def.'s Response to Pl.'s Proposed Order at 5-8 (ECF No. 43). State further argued that the scope of Plaintiff's requested discovery was impermissibly broad and that, in any event, the Court should wait until discovery in Civil Action No. 13-1363 was complete to avoid duplicative and unnecessary discovery. *Id.* at 8-13. State then proposed truly limited discovery in the form of two depositions. *Id.* at 14.

II. **A LARGE VOLUME OF RELEVANT INFORMATION HAS BECOME AVAILABLE SINCE THE COURT ORDERED DISCOVERY, OBVIATING THE NEED FOR DISCOVERY IN THIS CASE**

A. **Plaintiff Has Already Conducted Extensive Discovery in Civil Action No. 13-1363**

Plaintiff conducted extensive discovery in Civil Action No. 13-1363, consisting of eight depositions, including a 30(b)(6) deposition of State, and numerous interrogatories answered by both State and former Secretary Clinton. Plaintiff deposed the following people:

- Karin Lang, Director of the Executive Secretariat Staff ("S/ES") at the State Department, who testified on behalf of the State Department as a 30(b)(6)

<2><3><4><5><6><7><8><9><10><11><12><13><14><15><16><17><18><19><20><21><22><23><24><25><26><27><28>

deponent "regarding the processing of FOIA requests, including Plaintiff's FOIA request, for emails of Secretary Clinton and Ms. Abedin both during Secretary Clinton's tenure as Secretary of State and after";[3]

- Stephen D. Mull, Executive Secretary of the State Department from June 2010 to October 2012;[4]

- Lewis A. Lukens, Executive Director of the Executive Secretariat from 2008 to 2011;

- Patrick F. Kennedy, Under Secretary for Management since 2007 and the Secretary of State's principal advisor on management issues, including technology and information services;

- Cheryl D. Mills, Secretary Clinton's Chief of Staff throughout her four years as Secretary of State;

- Huma Abedin, Secretary Clinton's Deputy Chief of Staff and a senior advisor to Secretary Clinton throughout her four years as Secretary of State, who also had an email account on clintonemail.com;

- Bryan Pagliano, State Department Schedule C employee who reportedly set up and maintained the server that hosted the "clintonemail.com" system during Secretary Clinton's tenure as Secretary of State; and

- John Bentel, who served as Director of S/ES-Information Resources Management during Secretary Clinton's tenure.[5]

Memorandum Opinion at 4-5, 23 *Judicial Watch*, Civ. No. 13-1363 (ECF No. 124).

---

[3] Judge Sullivan denied Plaintiff's motion to depose Clarence Finney, who served as the Director of Office of Correspondence and Records of the Executive Secretariat during Secretary Clinton's tenure, because, among other things, Plaintiff had conceded that Mr. Finney did not know about the clintonemail.com system until after Secretary Clinton left State and because Mr. Finney's deposition would be cumulative with the scope of the 30(b)(6) deposition of Ms. Lang. Memorandum Opinion at 21-23, *Judicial Watch*, Civ. No. 13-1363 (ECF No. 124). Plaintiff previously sought to depose Mr. Finney in this case. Pl.'s Proposed Order ¶ 7 (ECF No. 42-1).

[4] Several filings in Civil Action No. 13-1363 refer to June 2009 as Mr. Mull's start date as Executive Secretary. He did not actually become Executive Secretary until June 2010; before that, he was senior advisor to the Under Secretary of State for Political Affairs. *See* Mull Dep. Tr. at 13:12, available at http://www.judicialwatch.org/wp-content/uploads/2016/06/JW-v-State-Mull-deposition-01363-1.pdf.

[5] Both Mr. Pagliano and Mr. Bentel asserted their Fifth Amendment rights in response to substantive questions posed during their depositions. Plaintiff's motion to compel Mr. Bentel to respond to questions is pending. *Judicial Watch*, Civ. No. 13-1363 (ECF No. 140).

In addition to these eight depositions, State answered four interrogatories, former Secretary Clinton answered 22 interrogatories,[6] and Cheryl Mills (former Chief of Staff to Secretary Clinton) answered six interrogatories to supplement the testimony given in her deposition.[7] *See Judicial Watch*, Civ. No. 13-1363 (ECF Nos. 131, 132, and 137). State also agreed to produce five documents related to the report issued on May 26, 2016 by State's Office of Inspector General. *See* Unopposed Mot. for Def. to Produce Certain Documents, *Judicial Watch*, Civ. No. 13-1363 (ECF No. 94).

Civ. No. 13-1363 is the only other case concerning Secretary Clinton's and other State officials' use of personal email accounts in which discovery has been ordered. In Civil Action No. 12-2034, Judge Reggie B. Walton, upon consideration of Judicial Watch's motion for discovery, stayed the case "[t]o avoid duplicative discovery and unnecessary expenditure of public funds." *See* Order at 2, *Judicial Watch v. U.S. Dep't of State*, 12-cv-2034-RBW (ECF No. 40). Other judges have denied outright similar motions for discovery against State. *See, e.g.*, *Freedom Watch v. NSA, et al.*, --- F.Supp.3d ----, Civ. No. 12- 088, 2016 WL 7191558 (D.D.C. Dec. 12, 2016) (denying plaintiff's motion for discovery against State as "ill-founded"); *Veterans for a Strong Am. v. Dep't of State*, --- F.Supp.3d ----, Civ. No. 15-464 (RMC), 2016 WL 5676068, at *10 (D.D.C. Sept. 30, 2016) (denying motion for discovery related to Secretary Clinton's use of personal mobile phone); Minute Order, *Gawker Media v. Dep't of State*, Civ.

---

[6] Judge Sullivan denied Plaintiff's request to depose former Secretary Clinton because Plaintiff had admitted it could obtain some of the discovery it sought via the less-intrusive means of interrogatories and because there was sufficient information available to Plaintiff to allow it anticipate many follow-up questions. Memorandum Opinion at 18, *Judicial Watch*, Civ. No. 13-1363 (ECF No. 124). The Court also noted that it would allow Plaintiff to move to serve additional interrogatories to address follow-up questions it could not anticipate, *id.* at 18-19, but to date Plaintiff has not done so.

[7] Two motions to compel concerning the deposition of Mr. Bentel and former Secretary Clinton's objections to three interrogatories are currently pending before Judge Sullivan. *See Judicial Watch*, Civ. No. 13-1363 (ECF Nos. 140 and 141).

No. 15-363 (D.D.C. Dec. 10, 2015) (denying Plaintiffs' motion to compel discovery related to State official's use of personal email account).

      **B.     State's Inspector General, the House Select Committee on Benghazi, and the FBI Have Released Large Amounts of Information On the Topic About Which the Court Has Authorized Discovery**

While the discovery in Civil Action No. 13-1363 was underway, three other inquiries into former Secretary Clinton's use of a personal email account to conduct government business concluded, resulting in a wealth of information being released to the public on the subject. First, on May 26, 2016, the State Department's Office of Inspector General released an 80-page report entitled "Office of the Secretary: Evaluation of Email Records Management and Cybersecurity Requirements," *available at* https://oig.state.gov/system/files/esp-16-03.pdf. That report was released to the public with no redactions. Although the OIG was highly critical of the former Secretary's email practices, it found no evidence, despite extensive inquiry, that anyone at the State Department approved former Secretary Clinton's practice of conducting official business via a personal email account on her private server. The numerous current and former officials interviewed by the OIG, including senior Department officials who served under Secretary Clinton, current and former Executive Secretaries, and attorneys within State's Office of the Legal Adviser, were also "unaware of the scope or extent of [former] Secretary Clinton's use of a personal email account, though many of them sent emails to the Secretary on this account." May 2016 OIG Report at 37.

Second, on June 28, 2016, the House Select Committee on Benghazi released its report, totaling just over 800 pages. *See* Report of the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi, https://benghazi.house.gov/NewInfo. Secretary Clinton testified before this Committee, *see* Hearing 4 Before the Select Committee on the Events Surrounding the 2012 Terrorist Attacks in Benghazi (Oct. 22, 2015) ("Clinton Cong. Tr."), *available at* https://www.gpo.gov/fdsys/pkg/CHRG-114hhrg98884/pdf/CHRG-

114hhrg98884.pdf, as did, among other individuals, Cheryl Mills, Huma Abedin, John Bentel, and Patrick Kennedy. Each of these witnesses testified to what he or she knew about former Secretary Clinton's use of a personal email account to conduct State business, and their interview transcripts are now publicly available. *See* Select Committee on Benghazi, Interview Transcripts, http://democrats-benghazi.house.gov/work/interview-transcripts.

Third, on November 6, 2016, the FBI completed its investigation, following a referral from the Intelligence Community Inspector General, of Secretary Clinton's use of a personal email server during her time as Secretary of State and whether classified information was transmitted on that system. *See* Federal Bureau of Investigation, Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal Email System, https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system. Director Comey acknowledged that the FBI "discovered several thousand work-related emails that were not in the group of 30,000 that were returned by Secretary Clinton to State in 2014," but added that "we found no evidence that any of the additional work-related emails were intentionally deleted in an effort to conceal them."

Plaintiff is already aware that State has determined that none of the emails to or from Secretary Clinton that were discovered by the FBI is responsive to this request. Civil Action No. 15-692, another case brought by Plaintiff against State, involves a FOIA request seeking all emails to or from Secretary Clinton about the Benghazi attacks. *See* Def.'s Mem. in Support of Summ. J. Mot. at 14-15, *Judicial Watch v. Dep't of State*, Civ. No. 15-692 (ECF No. 40-1) (D.D.C. Oct. 11, 2016). Any emails to or from Secretary Clinton responsive to the FOIA request in this case, which seeks documents relating to certain talking points about the Benghazi attacks, would also be responsive to the FOIA request in Civil Action No. 15-692. During its search of information provided by the FBI, State found a number of documents that were duplicates of

records former Secretary Clinton provided to State in December 2014 and three that were emails to or from Secretary Clinton about the Benghazi attacks that had not yet been provided to Plaintiff. *Id.* Of these three emails, two were near-duplicates of emails previously provided by former Secretary Clinton to State and produced in Civil Action No. 15-692, but for the addition of a new top message in each email stating "Pls print."[8] *Id.* The third was a personal note of congratulations to Secretary Clinton from a private individual. *Id.* at 8. None of those three emails is responsive to the FOIA request at issue in this case.

On July 7, Director Comey testified for over four hours before Congress. This testimony was broadcast live to the public. Of note, Director Comey testified that the FBI's best information was that Secretary Clinton had *not* used a personal email account to shield her correspondence from public disclosure. Director Comey was asked whether "the reason she set up her own private server, in your judgment, [was that] she wanted to shield communications from Congress and from the public." Oversight of the State Department: Hearing Before the Full House Comm. on Oversight and Government Reform, 114th Cong. at 1:00:58-1:01:22 (July 7, 2016), *available at* http://www.c-span.org/video/?412315-1/fbi-director-james-comey-testifies-hillary-clinton-email-probe ("Comey Testimony"). Director Comey indicated that it was not: "I can't say that. Our best information is she set it up as a matter of convenience. It was an already existing system that her husband had and she decided to have a domain on that system." *Id*. After Director Comey's testimony, the FBI publicly released a number of documents related to its investigation, including Form 302 summaries of interviews with former Secretary Clinton and others, as well as its July 2016 investigative report. *See* https://vault.fbi.gov/hillary-r.-clinton.

On October 28, 2016, Director Comey wrote a letter to Congress supplementing his previous testimony in which he reported that, in connection with an unrelated case, the FBI had

---

[8] During its records status determination of the information provided by the FBI, State found many that were not related to State business and many more that were duplicates or near-duplicates of records already in its possession.

"learned of the existence of emails that appear to be pertinent to the investigation." See October 28, 2016 Letter of Director Comey. On November 6, 2016, Director Comey sent another letter, reporting that the FBI had processed and reviewed a large volume of emails, including all of the communications that were to or from former Secretary Clinton during her tenure at State. See November 6, 2016 Letter of Director Comey.[9] Director Comey also reported that the review did not result in a change to the FBI's conclusions expressed in July with respect to former Secretary Clinton. *Id.* The FBI has indicated that it will provide to State emails discussed in these two letters, though it has provided no timetable. Finally, the warrant, along with its underlying affidavit, that the FBI obtained to authorize the seizure and copying for later review of the emails described in Director Comey's letter of October 28 has been unsealed and is publicly available. *See* Search and Seizure Warrant, *In Re Search Warrant Issued on October 30, 2016 For Access to Email Messages*, 1:16-mc-464 (ECF No. 13) (S.D.N.Y. Dec. 20, 2016).

### C. The New Material Eliminates the Need for Additional Discovery

When the Court ordered limited discovery to gain a greater understanding of the facts and circumstances related to Secretary Clinton's and other State officials' use of private email accounts, Mem. and Order at 1 (ECF No. 39), none of the extensive additional information described above was available. And despite all of the information Plaintiff acquired during discovery and from three independent investigations, there is still no evidence that Secretary Clinton's use of personal email was an attempt to thwart FOIA. Indeed, the "best information" available to the FBI after its extensive investigation indicates that Secretary Clinton used her private email server "as a matter of convenience," not to shield communications from the public. Comey Testimony at 1:00:58-1:01:22. There is nothing to indicate that yet more duplicative and

---

[9] These letters are available at https://www.washingtonpost.com/apps/g/page/politics/oct-28-fbi-letter-to-congressional-leaders-on-clinton-email-investigation/2113/ and https://www.washingtonpost.com/apps/g/page/politics/fbi-directors-letter-to-congress-after-review-of-newly-discovered-clinton-emails/2129/.

overbroad discovery will uncover any information relevant to adjudicating the adequacy of State's search for documents responsive to the narrow FOIA request at issue here. The parties have the information necessary to resolve this case, either by negotiated agreement or summary judgment.

* * *

Because there is reason to believe that, once the issue of discovery is resolved, it may be possible to reduce the number of issues which must be litigated before this Court, State respectfully proposes that the Court find that discovery is no longer needed or appropriate in this case and direct the parties confer and, within one month, submit a joint status report regarding further proceedings.

| | |
|---|---|
| January 10, 2017 | Respectfully submitted, |
| | BENJAMIN C. MIZER<br>Principal Deputy Assistant Attorney General |
| | ELIZABETH J. SHAPIRO<br>Deputy Branch Director |
| | */s/ Robert J. Prince*<br>ROBERT J. PRINCE (D.C. Bar No. 975545)<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Ave., N.W.<br>Washington, DC 20530<br>Tel: (202) 305 3654<br>robert.prince@usdoj.gov |