# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 14-1242 |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On his first full day in office, President Obama set a worthy standard for his administration's compliance with the Freedom of Information Act:

> A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, "sunlight is said to be the best of disinfectants." In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike.
>
> [FOIA] should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies . . . should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public.
>
> All agencies should adopt a presumption in favor of disclosure to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.

Freedom of Information Act Memorandum, 74 Fed. Reg. 4683 (Jan. 21, 2009).

But in this case, faced with one of the gravest modern offenses to government transparency, his State and Justice Departments fell far short. So far short that the Court questions, even now, whether they are acting in good faith. Did Hillary Clinton use her private email as Secretary of State to thwart this lofty goal? Was the State Department's attempt to settle this FOIA case in 2014 an effort to avoid searching—and disclosing the existence of—Clinton's missing emails? And has State ever adequately searched for records in this case?

In July 2014, six months after Clinton resigned as Secretary of State, Judicial Watch filed this FOIA suit seeking emails from Clinton and her aides concerning the talking points former U.N. Ambassador Susan Rice used to defend the Obama Administration's response to the attack on the U.S. Embassy in Benghazi, Libya. Compl. ¶ 5, ECF No. 1. And although it would take more than six months for the public to learn Clinton exclusively used a private email account as Secretary, *see* Michael S. Schmidt, *Hillary Clinton Used Personal Email Account at State Dept., Possibly Breaking Rules*, N.Y. Times (Mar. 2, 2015), https://www.nytimes.com/2015/03/03/us/politics/hillary-clintons-use-of-private-email-at-state-department-raises-flags.html, department officials already knew Clinton's emails were missing from its records. *See* Rachel Bade, *State Made Earlier Request for Clinton to Hand Over Emails*, Politico (Feb. 16, 2016, 5:32 PM), https://www.politico.com/story/2016/02/hillary-clinton-emails-state-219341.

State played this card close to its chest. In November 2014, State told Judicial Watch it performed a legally adequate search and concluded settlement was appropriate, despite knowing Clinton's emails were missing and unsearched. 10/12/18 Tr. 14:2-7, ECF No. 53. In December 2014—the same day Clinton quietly turned over 55,000 pages of her missing emails—State gave Judicial Watch a draft *Vaughn* index making no mention of the unsearched records. *See* 5/1/15

Status Report ¶ 3, ECF No. 16. Judicial Watch declined to take State's word for it, requesting a search declaration. *See* 5/1/15 Status Report ¶ 3. A few weeks later, State filed a status report with this Court that failed to acknowledge the unsearched emails but suggested it was "possible to . . . settle this case." 12/31/14 Status Report ¶ 3, ECF No. 10. After another month of radio silence—by then, at least three months after State realized it never searched Clinton's emails, and two months after Clinton gave the Department 30,490 of the 62,320 emails recovered from her private server (she deleted the rest)—State filed another status report admitting "additional searches for documents potentially responsive to the FOIA must be conducted" and asking for two months to conduct these searches. 2/2/15 Status Report ¶ 3, ECF No. 11. A month later, Judicial Watch read the *New York Times* and realized what State was talking about. *See* Pl.'s Mot. Status Conf. ¶ 3, ECF No. 13. That story, along with reporting that Clinton's former Chief of Staff Cheryl Mills and former Deputy Chiefs of Staff Huma Abedin and Jake Sullivan also used personal email to conduct government business, *see* Pl.'s Mot. Status Conf. ¶ 3; Michael S. Schmidt, *In Clinton Emails on Benghazi, Rare Glimpse at Her Concerns*, N.Y. Times (Mar. 23, 2015), https://www.nytimes.com/2015/03/23/us/politics/in-clinton-emails-on-benghazi-a-rare-glimpse-at-her-concerns.html, exposed State's deceit in this case.

At best, State's attempt to pass-off its deficient search as legally adequate during settlement negotiations was negligence born out of incompetence. At worst, career employees in the State and Justice Departments colluded to scuttle public scrutiny of Clinton, skirt FOIA, and hoodwink this Court.

The current Justice Department made things worse. When the government last appeared before the Court, counsel claimed "it's [not] true to say we misled either Judicial Watch or the Court." 10/12/18 Tr. 15:6-8. When accused of "doublespeak," counsel denied vehemently,

3

feigned offense, and averred complete candor. 10/12/18 Tr. 16-17. When asked why State masked the inadequacy of its initial search, counsel claimed that the officials who initially responded to Judicial Watch's request didn't realize Clinton's emails were missing, and that it took them two months to "figure[] out what was going on" after the former-Secretary-turned-presumptive-presidential-candidate delivered twelve bankers boxes of emails. 10/12/18 Tr. 14:7-11. When asked why it took so long for State to own-up to the missing emails and to its initial search's deficiency, counsel cited "normal FOIA practice." 10/12/18 Tr. 41:21-22; *see also* 5/1/15 Status Report at 6, ECF No. 16 (calling this "a run-of-the-mill FOIA dispute").

Counsel's responses strain credulity. And even before this recent chicanery, the Court found enough signs of government wrongdoing to justify discovery, including into whether Clinton used her private email to intentionally flout FOIA. *See* 3/29/16 Mem. & Order, ECF No. 39. But the Court put-off setting a specific discovery order, mindful of parallel proceedings before Judge Sullivan, *see Judicial Watch, Inc. v. Dep't of State*, No. 13-1363, and ongoing investigations by State's Inspector General, the Federal Bureau of Investigation, and the House Select Committee on Benghazi. Since those inquiries concluded, the Court now orders the parties to meet and confer to develop a discovery plan into whether Clinton used a private email to stymie FOIA, whether State's attempts to settle the case despite knowing its initial search was inadequate amounted to bad faith, and whether State's subsequent searches have been adequate.

## I. DISCUSSION

With the government investigations concluded and discovery before Judge Sullivan winding down, Judicial Watch sought to verify the adequacy and good-faith of State's search in this case with requests for production and depositions bearing on State's responses to other inquiries. *See* Pl.'s Notice, ECF No. 50. For its part, State argued discovery is unnecessary

because of the discovery before Judge Sullivan and the additional information made public since March 2016. *See* Def.'s Notice, ECF No. 51. Today the Court orders the parties to develop a discovery plan limited to three issues: whether Clinton used a private email to evade FOIA, whether State's attempts to settle the case despite knowing the inadequacy of its initial search constituted bad faith, and whether State's subsequent searches for responsive records have been adequate.

Although "[d]iscovery in FOIA is rare," *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006), "[t]he major exception . . . is when the plaintiff raises a sufficient question as to the agency's good faith in processing documents." *Landmark Legal Found. v. E.P.A.*, 959 F. Supp. 2d 175, 184 (D.D.C. 2013) (quoting U.S. Dep't of Justice, Guide to the Freedom of Information Act 812 (2009)). In these cases, discovery verifies the government adequately searched for responsive records. *See Weisberg v. Webster*, 749 F.2d 864, 868 (D.C. Cir. 1984).

But in an even rarer subset of these cases, the government's response to a FOIA request smacks of outrageous misconduct. And these cases merit additional discovery into the government's motives. *E.g., Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 41 (D.D.C. 1998); *see DiBacco v. U.S. Army*, 795 F.3d 178, 192-93 (D.C. Cir. 2015); *cf. Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 71 (D.D.C. 2004).

This is one of those cases. The Court takes no pleasure questioning the intentions of the nation's most august executive departments. But it still remains unknown whether Clinton used a private email to duck FOIA requests. Indeed, that is the focus of the remaining discovery before Judge Sullivan. *See* Mem & Order, *Judicial Watch v. U.S. Dep't of State*, No. 13-1363, at 12 (D.D.C. May 4, 2016), ECF No. 73. State makes much of former FBI Director James Comey's

5

response when Congressman Ron DeSantis asked if Clinton used her private email to flout FOIA: "I can't say that. Our best information is she set it up as a matter of convenience." *See* Def.'s Notice Prop. Order 10, ECF No. 51 (citing *Oversight of the State Department: Hearing Before the H. Comm. on Oversight & Gov't Reform*, 114th Cong. 20 (2016)). But that's not quite the full-throated refutation State makes it out to be. Rather, telling Congress—under penalty of perjury—what he couldn't say for sure was an understandably equivocal assessment of the evidence at the time. It was not a conclusive repudiation of what many people familiar with the Presidential Records Act have long wondered. Take the very first public story about Clinton using a private email for official business, long before the public knew its extent: When an easily overlooked March 2013 hack of Clinton-confidante Sidney Blumenthal's AOL account exposed an official email from Clinton's private account, a *Gawker* article speculated it was a one-off "attempt to shield her communications with Blumenthal from the prying eyes of FOIA requesters." John Cook, *Hacked Emails Show Hillary Clinton Was Receiving Advice at a Private Email Account from Banned, Obama-Hating Former Staffer*, Gawker (Mar. 20, 2013, 3:39 PM), http://gawker.com/5991563/hacked-emails-show-hillary-clinton-was-receiving-advice-at-a-private-email-account-from-banned-obama-hating-former-staffer. Or take Abedin's response when State's Executive Secretary suggested Clinton use a government Blackberry so her email "would be subject to FOIA requests": "doesn't make a whole lot of sense." E-mail from Huma Abedin to Stephen D. Mull & Cheryl D. Mills (Aug. 30, 2012, 5:17 PM), *appended to* Pl. Judicial Watch's Reply Supp. Mot. Disc., *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 13-1363 (D.D.C. Jan. 22, 2016), ECF No. 51-3. Even more telling is the State Department Inspector General's conclusion that although dozens of department officials emailed Clinton's personal account, the employees responsible for FOIA compliance didn't know the account existed.

Office of Inspector Gen., Evaluation of the Department of State's FOIA Processes for Requests Involving the Office of the Secretary 14-15 (2016), https://www.stateoig.gov/system/files/esp-16-01.pdf.

Nor can the Court blame Judicial Watch for questioning whether State's attempts to settle the case while knowing it had not searched Clinton's missing emails—and continuing after State recovered the emails—was an intentional effort to block their release. Especially since State's counsel came close to admitting as much at the Court's last hearing. Counsel averred there was nothing wrong with State's attempt to pass-off its initial search as legally adequate since, "at the time," the Department believed "items not in State's possession d[id] not need to be searched." 10/12/18 Tr. 16:11-16. That admission is significant for two reasons: Factually, it implies State thought settling this case would absolve the Department of any duty to search Clinton's missing emails in response to this request. And legally, it is wrong. Though agencies need not retrospectively search records they failed to retain, *e.g.*, *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991), agencies violate FOIA when they fail to search records an employee improperly secreted from the agency's control. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 42-44 (D.D.C. 1998); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 159 (1980) (Brennan, J., concurring in part and dissenting in part) (noting the majority's suggestion "that an agency would be improperly withholding documents if it failed to take steps to recover papers removed from its custody deliberately to evade an [sic] FOIA request").

Did State know Clinton deemed the Benghazi attack terrorism hours after it happened, contradicting the Obama Administration's subsequent claim of a protest-gone-awry? *See* E-mail from H, hrod17@clintonemail.com, to Diane Reynolds (Sept. 11, 2012, 11:12 PM),

7

https://benghazi.house.gov/sites/republicans.benghazi.house.gov/files/documents/Tab%2050.pdf; *see also* Nick Gass, *Chelsea Clinton's Secret Identity*, Politico (Mar. 5, 2015, 7:57 AM), https://www.politico.com/story/2015/03/chelsea-clinton-diane-reynolds-secret-email-115786 (establishing Diane Reynolds as an email pseudonym for Chelsea Clinton). Did State know Clinton sent or received top-secret information through her private email? *See* Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System (July 5, 2016), https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system (noting the FBI recovered eight email chains from Clinton's server containing top-secret information). Did the Department merely fear what might be found? Or was State's bungling just the unfortunate result of bureaucratic redtape and a failure to communicate? To preserve the Department's integrity, and to reassure the American people their government remains committed to transparency and the rule of law, this suspicion cannot be allowed to fester.

Nor is the government correct that Judicial Watch's proposal mimics information already made public. As the government acknowledged at the recent hearing, Judicial Watch's request extends to all Office of the Secretary employees. *See* 10/12/18 Tr. 19:3-6, 36:22-24. And according to State's Obama-era website, that includes not only the Secretary, her chief of staff, and her deputy chief of staff, but also her secretary, executive assistant, two special assistants, scheduler, staff assistant, and two personal assistants. *See Bureaus/Offices Reporting Directly to the Secretary*, U.S. Dep't St., https://2009-2017.state.gov/s/. To be sure, the government's investigations and scores of lawsuits examined the emails Clinton turned over to State, *e.g., Leopold v. Dep't of State*, No. 15-123 (Contreras, J.), the thousands more the FBI resurrected by

forensically searching Clinton's private server, *e.g.*, *Leopold v. Dep't of Justice*, No. 15-2117 (Moss, J.), and the thousands more the FBI recovered during an unrelated investigation into Anthony Weiner. *E.g.*, *Judicial Watch, Inc. v. Dep't of State*, No. 15-684 (Howell, J.).[1] But State does not identify any comparable examination of records from other Office of the Secretary members. In fact, State even concedes it has yet to search emails Mills, Abedin, and Sullivan turned over in August 2015. *See* Def.'s Notice Prop. Order 2 n.1. Moreover, the Court is unaware of any public information shedding light on State's attempts to settle this case in late 2014 and early 2015. And though the parties must avoid duplicating the discovery already taken before Judge Sullivan into Clinton's motives, prior discovery before another judge does not per se preclude additional evidence discoverable under this Court's independent judgment.

## II. CONCLUSION

To see if it can rule out egregious government misconduct and vindicate the public's faith in the State and Justice Departments, the Court orders the parties to meet and confer to plan discovery into whether Clinton used a private email to stymie FOIA, whether State's attempts to settle the case in late 2014 and early 2015 amounted to bad faith, and whether State's subsequent searches have been adequate. The parties are to submit a proposed plan and schedule for discovery within ten days. Once discovery ends, the Court will determine the adequacy of State's

---

[1] The FBI's efforts were imperfect, since the FBI could not recover all the emails Clinton deleted. When last appearing before the Court, State strained to transplant into this case another court's conclusion under the Federal Records Act "that the FBI has exhausted all imaginable investigative avenues" to recover still-missing emails. *Judicial Watch, Inc. et al. v. Tillerson*, 293 F. Supp. 3d 33, 31 (D.D.C. 2017) (Boasberg, J.). Taking no position on the merits of that conclusion, the Court notes first that the Federal Records Act employs a very different standard than FOIA, requiring agencies take only more-than-minimal action to remedy federal record removal or destruction, *see Judicial Watch, Inc. et al. v. Tillerson*, 156 F. Supp. 3d 69, 76 (D.D.C.) (Boasberg, J.) (citing *Armstrong v. Bush*, 924 F.2d 282, 296 (D.C. Cir. 1991)), *rev'd & remanded on other grounds*, 844 F.3d 952 (D.C. Cir. 2016), and second that Judicial Watch appealed the decision to the D.C. Circuit, which heard argument last month. *Judicial Watch, Inc. v. Pompeo*, No. 17-5275.

searches and set a further schedule for the submission of *Vaughn* affidavits and dispositive motions. An accompanying order follows.

Date: December 6, 2018

Royce C. Lamberth
United States District Judge