UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 14-1242 |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

When this case began, Judicial Watch sought to verify the State Department's search for records from former Secretary Hillary Clinton and her aides concerning the talking points former U.N. Ambassador Susan Rice used to respond to the attack on the U.S. Embassy in Benghazi, Libya. But the case has since expanded to question the motives behind Clinton's private email use while Secretary, and behind the government's conduct in this litigation.

Last month, this Court ordered the parties to meet and confer to plan discovery [55]. Judicial Watch submitted a proposed plan [62]; the government responded and countered with its proposal [63]; Judicial Watch replied [64]. This Memorandum & Order maps the path forward.

\*   \*   \*

**I. Scope & Schedule.** Discovery shall be limited to three issues: (1) whether Clinton intentionally attempted to evade FOIA by using a private email while Secretary of State; (2) whether State's efforts to settle this case in late 2014 and early 2015 amounted to bad faith; and (3) whether State adequately searched for records responsive to Judicial Watch's FOIA request.

Either side must obtain permission to conduct discovery beyond the depositions, interrogatories, and document requests described herein.

The Court recognizes Judicial Watch took related discovery in *Judicial Watch, Inc. v. Department of State*, No. 13-1363 (D.D.C.) (Sullivan, J.). Yet the Court declines to expressly curtail discovery in this case as a result, especially since Judicial Watch does not propose deposing witnesses also deposed in that case. Consistent with the parties' demonstrated respect for the discovery process there, *see* Transcript of Motion Hearing Proceedings at 21:3-19, *Judicial Watch, Inc. v. Dep't of State*, No. 13-1363 (D.D.C. July 18, 2016), ECF No. 159, the Court hopes the parties avoid unnecessarily duplicative discovery here.

The parties shall complete discovery within 120 days, unless they seek additional time. The Court will hold a post-discovery hearing to ascertain the adequacy of State's searches, to determine if Judicial Watch needs to depose additional witnesses (including Hillary Clinton or her former Chief of Staff Cheryl Mills), and to schedule dispositive motions.

**II. Procedure.** The parties shall conduct discovery pursuant to the Federal Rules of Civil Procedure and of Evidence, subject to these limitations:

*A. Time to Respond to Interrogatories & Document Requests.* Absent contrary order, Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A) give parties thirty days to respond to interrogatories and document requests. This default limit will apply to interrogatories and document requests propounded on private citizens. For interrogatories and document requests propounded on the government, Judicial Watch wants to shorten the limits to fourteen days; the government asks for the standard thirty-day periods. Recognizing Judicial Watch's need to obtain preliminary discovery before taking depositions, but mindful of overburdening the

government, the Court gives the government twenty days to respond to interrogatories and document requests.

*B.  Number of Depositions.* The government wants to limit Judicial Watch to Rule 30(a)(2)(A)(i)'s ten-deposition ceiling. But consistent with Rule 26(b)(2)(A), the Court allows Judicial Watch to depose all witnesses enumerated herein.

*C.  Privilege Claims & Objections.* Neither side waives any privileges or specific objections. As the government notes, the parties may agree pursuant to Federal Rule of Evidence 502(e) to disclose information without waiving attorney–client or work-product privileges. But absent agreement, the government proposes producing its privilege log after discovery ends. That is insufficient. To facilitate meaningful document production, the government must produce a rolling privilege log, concurrent with its timely responses to document requests. And to facilitate prompt resolution of disputes, the Court will require any opposition be filed within five business days of a motion for judicial intervention, with replies due three business days after the opposition's filing.

*D.  Government Review of Deposition Transcripts or Recordings.* The government may, in its sole discretion, embargo a deposition's contents for three business days after production of the transcript or recording—provided that it does so in good faith and that it declared its intent to do so on the record at the deposition—to review the transcript or recording for classified information, for information specifically exempted from disclosure by statute, or for information concerning a pending law enforcement investigation, and to seek an order precluding the information's public release.

### III. Discovery into Hillary Clinton's Private Email Use.

*A. Depositions.* On whether Clinton's private email use while Secretary of State was an intentional attempt to evade FOIA, Judicial Watch may depose:[1]

1. <u>Eric Boswell, the former Assistant Secretary for Diplomatic Security.</u> The government argues Boswell does not have information relevant to the purpose behind Clinton's private email use, claiming he merely responded to her staff's inquiries regarding Blackberry use in her private office suite. But existing evidence contradicts this claim: Boswell's March 2009 memo to Mills (available at ECF No. 64-1) discusses security risks Clinton's Blackberry use posed more generally. And Boswell personally discussed the memo with Clinton. So he plainly has relevant information about that conversation and about his general knowledge of Clinton's email use. Judicial Watch may depose Boswell.

2. <u>Justin Cooper, the Clinton Foundation employee who created the clintonemail.com server.</u> In its proposal, Judicial Watch noted Cooper's prior congressional testimony "appears to contradict portions of the testimony provided by Huma Abedin in the case before Judge Sullivan." Pl.'s Prop. Disc. Plan 2, ECF No. 62. The government opposed Judicial Watch's request because Judicial

---

[1] If these individuals also appear in subsections IV.A or V.A of this Order, Judicial Watch may only depose each witness once.

Watch "offer[ed] no [further] explanation" or citation. Def.'s Prop. Disc. Plan &
Sched. 18-19, ECF No. 63. But Judicial Watch provided one in its response:
Cooper repeatedly told Congress that Abedin helped set-up the Clintons' private
server, *e.g.*, *Examining Preservation of State Department Federal Records:
Hearing Before the H. Comm. on Oversight & Gov't Reform*, 114th Cong. 40
(2016); Abedin testified under oath she did not know about the server until six
years later. *See* Transcript of Huma Abedin Deposition at 19:16-20:14, *Judicial
Watch, Inc. v. Dep't of State*, No. 13-1363 (D.D.C. June 28, 2016), ECF No. 129.
Judicial Watch may depose Cooper.

3. Clarence Finney, the former deputy director of State's Executive Secretariat staff.
The government opposes Finney's deposition on two grounds. First, the
government argues Finney's testimony would be more efficiently covered through
State's Rule 30(b)(6) deposition. But this case's questions hinge on what specific
State employees knew and when they knew it. As the principal advisor and
records management expert responsible for controlling Clinton's official
correspondence and records, Finney's knowledge is particularly relevant. And
especially given the concerns about government misconduct that prompted this
discovery, Judicial Watch's ability to take his direct testimony and ask follow-up
questions is critical.

Second, the government opposes Finney's deposition because he testified
publicly before Congress on similar issues, and because Judicial Watch
unsuccessfully sought his deposition in *Judicial Watch v. Department of State*,
No. 13-1363 (D.D.C.). True enough, Judge Sullivan did not allow Finney's

deposition, thinking it would unnecessarily duplicate State's 30(b)(6) deposition in that case. *See* Mem. Op. 21-23, *Judicial Watch v. Dep't of State*, No. 13-1363 (D.D.C. Aug. 19, 2016), ECF No. 124. But here, Judicial Watch seeks to go beyond cursory, second-hand testimony and directly ask Finney what he knew about Clinton's email use. This includes asking about emails suggesting he knew about her private email use in 2014, and emails he received concerning a December 2012 FOIA request from Citizens for Responsible Ethics in Washington (CREW) regarding senior officials' personal email use—topics State's 30(b)(6) deposition in Judge Sullivan's case never addressed. Judicial Watch may depose Finney.

4. <u>Heather Samuelson, the former State Department senior advisor who helped facilitate State's receipt of Hillary Clinton's emails.</u> The government argues Samuelson's testimony would be more efficiently covered through State's Rule 30(b)(6) deposition. But as explained in subsection III.A.3, this case turns on what specific government employees knew and when they knew it. Judicial Watch must be able to take their direct testimony and ask them follow-up questions. Judicial Watch may depose Samuelson.

5. <u>Jacob Sullivan, Secretary Clinton's former senior advisor and deputy Chief of Staff.</u> The government does not oppose Sullivan's deposition.

*B. Interrogatories.* Judicial Watch may discover through interrogatory the identities of the individuals referenced in the first full paragraph on the fourth page of the Federal Bureau of Investigation's December 30, 2015 report (available at ECF No. 62-1) describing its December 22, 2015 interview of Bryan Pagliano. The government does not oppose this interrogatory.

## IV. Discovery into the State Department's Settlement Conduct.

*A. Depositions.* On whether State's settlement attempts in late 2014 and early 2015 amounted to bad faith, Judicial Watch may depose:[2]

1. <u>The State Department.</u> Judicial Watch may depose the State Department under Rule 30(b)(6) about

   - this FOIA request;

   - CREW's December 2012 FOIA request;

   - its initial discovery of, and reaction to, Hillary Clinton's private email use;

   - its November 12, 2014 letter to Judicial Watch regarding this litigation;

   - the December 31, 2014 Joint Status Report, ECF No. 10; and

   - the February 2, 2015 Joint Status Report, ECF No. 11.

   The government does not oppose this deposition.

2. <u>Finney.</u> *See supra* subsection III.A.3.

3. <u>John Hackett, the former deputy director of State's Office of Information Programs & Services.</u> The government argues Hackett's testimony would be more efficiently elicited through State's Rule 30(b)(6) deposition. But as explained in subsection III.A.3, this case depends on what specific government employees knew and when they knew it. Judicial Watch must be able to take their direct testimony and ask them follow-up questions. Judicial Watch may depose Hackett.

---

[2] If these individuals also appear in subsections III.A or V.A of this Order, Judicial Watch may only depose each witness once.

4. <u>Gene Smilansky, an attorney-advisor within State's Office of the Legal Advisor.</u>
The government opposes Smilansky's deposition, calling it an "extraordinary
request" because "Smilansky has provided [State with] legal advice regarding
requests for emails from Secretary Clinton, FOIA litigation concerning the
Benghazi attacks and the talking points at issue in this case, and because virtually
all of his knowledge (if any) about the relevant facts would have come to him in
his role as an attorney advising a client." Def.'s Prop. Disc. Plan & Sched. 20-21.
It also claims "Smilansky is unlikely to have any relevant, non-privileged
information that is unavailable from other sources," including the Department's
30(b)(6) deposition or the State Department Inspector General's public report.

To be sure, it is rare for a party to depose his opponent's attorney. But this
is rare case. Judicial Watch adequately justifies this exceptional step by
establishing Smilansky's involvement in processing FOIA requests for Secretary
Clinton's email from 2012 to 2014, including CREW's 2012 request. And in this
case about what government officials knew and when they knew it, Smilansky's
experience—documented through emails he sent and received in 2013 and 2014,
*see* ECF No. 50-1—is highly relevant and critical to Judicial Watch's case.
Moreover, his first-hand knowledge is what's critical, not information filtered
through a 30(b)(6) deposition or through the Inspector General's report. *See also*
*supra* subsection III.A.3. Judicial Watch may depose Smilansky.

5. <u>Samuelson.</u> *See supra* subsection III.A.4.

6. <u>Sheryl Walter, former director of State's Office of Information Programs &</u>
<u>Services.</u> The government argues Walter's testimony would be more efficiently

8

covered through State's Rule 30(b)(6) deposition. But as explained in subsection III.A.3, this case involves what specific government employees knew and when they knew it. Judicial Watch must be able to take their direct testimony and ask them follow-up questions. Judicial Watch may depose Walter.

7. Jonathon Wasser, a management analyst for the Executive Secretariat staff. The government argues that Wasser's testimony unnecessarily duplicates State's 30(b)(6) deposition in *Judicial Watch v. Department of State*, No. 13-1363 (D.D.C.) (Sullivan, J.), and—in any event—that his testimony would be more efficiently covered through State's Rule 30(b)(6) deposition. But both arguments miss Judicial Watch's need to take his direct testimony and ask him follow-up questions, particularly regarding emails suggesting he knew about Clinton's private email use in 2014. *See also supra* subsection III.A.3. Judicial Watch may depose Wasser.

8. The Office of Information Program & Services analysts assigned to this case. The government argues these individuals' testimony would be more efficiently elicited through State's Rule 30(b)(6) deposition. But as explained in subsection III.A.3, this case turns on what specific government employees knew and when they knew it. Judicial Watch must be able to take their direct testimony and ask them follow-up questions. Judicial Watch may depose these analysts.

9. The unidentified Officer of Information Program & Services official whose August 17, 2015 FBI interview is memorialized in the August 18, 2015 report available at ECF No. 62-2. The government argues this person's testimony would be more efficiently covered through State's Rule 30(b)(6) deposition. But as

explained in subsection III.A.3, this case concerns what specific government employees knew and when they knew it. Judicial Watch must be able to take their direct testimony and ask them follow-up questions. Judicial Watch may depose this unidentified official.

*B. Interrogatories.* Judicial Watch may also obtain via interrogatory the identity of the analysts who searched the Office of the Secretary records on September 23, 2014, and of any people who performed the search described in paragraph seventeen of John F. Hackett's July 7, 2015 declaration (available at ECF No. 19-2), as well as the dates they searched. The government does not oppose these interrogatories.

*C. Document Requests.* Finally, Judicial Watch may request the following documents:

1. an unredacted copy of an August 8, 2014 email exchange between Finney, Wasser, James Blair, Andrew Keller, and Smilansky (a redacted copy is available at ECF No. 50-1, p. 37);

2. an unredacted copy of a May 1, 2013 email exchange between Smilansky, Brett Gittleson, Walter, and others (a redacted copy is available at ECF No. 50-1, pp. 23-29);

3. a copy of the email exchanges available at ECF No. 62-3 with the Exemption 5 redactions removed; and

4. records concerning the Department's pre–February 2, 2015 awareness of the need to continue searching for records responsive to this FOIA request, as well as those records' locations.

The government does not oppose these document requests.

## V. Discovery into the Adequacy of the State Department's Search.

*A.   Depositions.* On whether State adequately searched for responsive records, Judicial Watch may depose:[3]

1.   <u>The State Department.</u> Judicial Watch may depose the Department under Rule 30(b)(6) about

   - this FOIA request;

   - preparing talking points for former U.N. Ambassador Susan Rice's September 16, 2012 media appearances;

   - the advance dissemination or discussion of those talking points;

   - the aftermath of Rice's appearances; and

   - the Department's evolving understanding of the Benghazi attack.

The government does not oppose deposing the Department on the first point. But the government does oppose deposing the Department on the latter four points, arguing they "ha[ve] nothing to do with the adequacy of State's response to the narrow FOIA request at issue in this litigation." Def.'s Prop. Disc. Plan & Sched. 2.

   Yet Rice's talking points and State's understanding of the attack play an unavoidably central role in this case: information about the points' development and content, as well as their discussion and dissemination before and after Rice's appearances could reveal extant unsearched, relevant records; State's role in the

---

[3] If these individuals also appear in subsections III.A or IV.A of this Order, Judicial Watch may only depose each witness once.

points' content and development could shed light on Clinton's motives for shielding her emails from FOIA requesters or on State's reluctance to search her emails. *See also* Mem. Op. 7-8, ECF No. 54 ("Did State know Clinton deemed the Benghazi attack terrorism hours after it happened, contradicting the Obama Administration's subsequent claim of a protest-gone-awry? . . . Did the Department merely fear what might be found? Or was State's bungling just the unfortunate result of bureaucratic redtape and a failure to communicate?"). The government correctly notes Judicial Watch cannot "appoint itself as a freelance Inspector General" into the Obama Administration's response to the Benghazi attack. Def.'s Prop. Disc. Plan & Sched. 11. But that's not what Judicial Watch does here. Though Judicial Watch cannot helm a fishing expedition trawling anything and everything concerning the Benghazi attack, Judicial Watch may depose State on these topics to the extent helpful to answer the questions underlying this discovery.

2. Cooper. As Clinton's email server's initial creator and manager, Cooper may have relevant insight on whether additional emails still exist and where they may be located. *See also supra* subsection III.A.2. Judicial Watch may depose Cooper.

3. Finney. *See supra* subsection III.A.3.

4. Samuelson. *See supra* subsection III.A.4.

5. Sullivan. The government does not oppose Sullivan's deposition.

6. Wasser. *See supra* subsection IV.A.7.

B. *Interrogatories.*

12

i. Judicial Watch may serve interrogatories on Rice and on Benjamin Rhodes, President Obama's former Deputy National Security Advisor who helped develop Rice's talking points. Judicial Watch actually wants to depose Rice and Rhodes. But the government opposes the depositions, casting them as "an attempt to get at the underlying issues about Benghazi, rather than issues relating to this FOIA case." Def.'s Prop. Disc. Plan & Sched. 12.

Of course, that is not entirely true. Just as the State Department's testimony on the Benghazi attack and Rice's talking points may help answer the questions underpinning this discovery, *see supra* subsection V.A.I, so too may Rice and Rhodes's testimony. But neither Rice nor Rhodes worked in the Office of the Secretary; neither has ties to Hillary Clinton's private email use or to the government's conduct in this case. And if Judicial Watch wants to discover who Rice communicated with on the day of the attack and the following weeks, it already has all her emails, thanks to its identically worded, long-resolved FOIA request to the U.S. Mission to the United Nations. *See Judicial Watch v. U.S. Dep't of State*, No. 13-951 (D.D.C. Sept. 12, 2014) (Sullivan, J.). So to the extent Judicial Watch will sail unchartered waterfront with Rice and Rhodes, it has not justified deposing them; interrogatories would seemingly suffice to verify State's search in this case. So for now, Judicial Watch may only serve interrogatories on Rice and Rhodes.

ii. Judicial Watch may serve interrogatories on E.W. Priestap, the assistant director of the FBI's counterintelligence division who supervised the investigation into Clinton's private email use. Judicial Watch's proposal goes further, seeking to depose Priestap on "the nature [and] extent of the FBI's efforts, such as who the FBI attempted to contact, who the FBI actually talked to, who the FBI requested records from, who actually provided records, and whether the FBI believes those that they requested records from actually returned all of the requested

records." Pl.'s Resp. 6, ECF No. 64. To be sure, "[t]his information could shed additional light on the adequacy of the State Department's search and other sources from which it might yet obtain records." *Id.*

But the government notes "Priestap has already provided declarations [in another case] recounting the 'FBI's extensive efforts to locate all potentially work-related' emails." *See* Def.'s Prop. Disc. Plan & Sched. 18-19 (quoting Mem. Op. at 13, *Judicial Watch v. Tillerson*, No. 15-785 (D.D.C. Nov. 9, 2017) (Boasberg, J.)). And those declarations rule out further stores of Clinton's emails. *See* Mem. Op. at 4, *Judicial Watch v. Tillerson*, No. 15-785 (D.D.C. Nov. 9, 2017), ECF No. 58. The FBI's final report echoes this testimony, U.S. Dep't of Justice, Clinton E-Mail Investigation, https://vault.fbi.gov/hillary-r.-clinton/Hillary%20R.%20Clinton%20Part% 2001%20of%2028, as does the FBI Inspector General's report. U.S. Dep't of Justice, A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election (2018), https://www.oversight.gov/sites/default/files/oig-reports/2016_ election_final_report_06-14-18_0.pdf.

To the extent Judicial Watch will cover unexplored terrain with Priestap, it has not justified saddling this high-ranking law enforcement official with a deposition. The Court does not see why Judicial Watch cannot adequately discover the information more efficiently through interrogatories. So Judicial Watch may only serve interrogatories on Priestap.

iii. Judicial Watch may serve interrogatories on Monica Hanley, a former staff member in State's Office of the Secretary, and on Lauren Jiloty, Clinton's former special assistant. The government does not oppose these interrogatories.

14

Judicial Watch's proposal goes further, seeking to depose Hanley and Jiloty to elicit their recollection of Clinton's frequent email correspondents. On one hand, their testimony matters: Hanley was a key Clinton assistant, and Jiloty maintained Clinton's Blackberry contacts, so their knowledge of Clinton's email practices will help ensure State turned over every stone to search for Clinton's emails. But the Court does not see why such a limited purpose necessitates an expensive and burdensome deposition. Nor does Judicial Watch adequately justify why it cannot discover what it needs from Hanley and Jiloty with equal effect and greater economy through interrogatories. So for now, the Court only allows Judicial Watch to serve interrogatories on Hanley and Jiloty.

iv.  Judicial Watch may also obtain through interrogatory the number of emails within Department records sent to or from the clintonemail.com domain name—including the "carbon copy" and "blind carbon copy" functions—between September 11, 2012 and February 2, 2013 including Alice Wells, Andrew Shapiro, Anne-Marie Slaughter, Caroline Adler, Mills, Claire Coleman, Dan Schwerin, Abedin, Sullivan, Joseph MacManus, Judith McHale, Jiloty, Lona Valmoro, Maria Sand, Melanne Verveer, Hanley, Patrick Kennedy, Philippe Reines, Richard Verma, Robert Russo, Rice, Victoria Nuland, Wendy Sherman, and William Burns. The government does not oppose this interrogatory.

Judicial Watch's proposal goes further, seeking this information for Clinton's entire turn as Secretary, starting January 20, 2009. But the Court does not see how information from before September 11, 2012 helps Judicial Watch verify State's search for documents necessarily created on or after that date. And neither Judicial Watch's proposal nor its response defends the earlier date. So Judicial Watch may only discover this information for emails sent between September 11, 2012 and February 2, 2013.

*C. Document Requests.* Judicial Watch may request the following documents:

1. all records—including internal communications—concerning this FOIA request;

2. all records relating to the Department's practices, policies, and actions accounting for Office of the Secretary records, including the emails of Hillary Clinton, Cheryl Mills, Huma Abedin, Jacob Sullivan, and other staff, during and after their employment.

The government does not oppose these document requests.

\*     \*     \*

It is **SO ORDERED**.

Date: January _15_, 2019

Royce C. Lamberth
United States District Judge