IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, <br><br> Defendant. | Civil Action No. 14-cv-1242 (RCL) |

**MOTION BY NON-PARTIES HEATHER SAMUELSON AND JACOB SULLIVAN FOR A PROTECTIVE ORDER SEALING THE AUDIOVISUAL RECORDINGS OF THEIR DEPOSITIONS**

Pursuant to this Court's order of January 15, 2019, Judicial Watch will depose Mr. Jacob Sullivan and Ms. Heather Samuelson on April 16 and June 13, 2019 respectively. These non-parties move this Court for a protective order sealing the audiovisual recordings of their depositions to protect their privacy and prevent the manipulation of their voice or image. Because each understands and appreciates the importance of dissemination of information to the public, neither opposes the release of his or her written transcript. This limited protective order will therefore strike an appropriate balance between serving both the public's right to know and the non-parties' right to privacy.

**ARGUMENT**

Upon showing of good cause, courts may issue protective orders to prevent a party or other individual from suffering "annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ.

P. 26(c)(1).¹  Good cause exists when an individual demonstrates that disclosure of particular information could lead to injury or embarrassment.  *See Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 7 (D.D.C. 2002).  Courts must balance the public's interest in garnering information from the litigation against the "residual privacy rights" of those swept up in the discovery process.  *Apple iPod iTunes Antitrust Litig.*, 75 F. Supp. 3d 1271, 1273-74 (N.D. Cal. 2014) (internal quotations omitted); *New York v. Microsoft Corp.*, 206 F.R.D. 19, 22 (D.D.C. 2002) ("Rule 26(c) appears to balance the public's interest in open proceedings against an individual's private interest in avoiding 'annoyance, embarrassment, oppression, or undue burden or expense.'").  Because trial courts are "in the best position to weigh fairly the competing needs and interests of parties affected by discovery," the federal rules afford them "substantial latitude" in fashioning protective orders.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)

I. **Public Interests Do Not Warrant Release Of The Video**

Dissemination of pertinent information to the public will be well-served by the publication of Ms. Samuelson's and Mr. Sullivan's written transcripts, the release of which neither opposes.  It is the transcript itself that informs the public of facts from this case; dissemination of the audiovisual recording, however, will not provide the public with additional pertinent information.  *See Felling v. Knight*, No. IP01-0571-C-T/G, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001) ("The practice of sealing videotapes of depositions has been approved of in several high-profile cases where the written depositions have been released to the public.").

---

¹ Pursuant to this District's Local Rule 7(m) and Federal Rule of Civil Procedure 26(c), counsel for non-party deponents Heather Samuelson and Jacob Sullivan conferred with counsel for the parties in an attempt to resolve this matter without the Court's intervention.  Judicial Watch opposes this motion, and the U.S. Department of State takes no position.  Having been unable to reach a consensus with the parties, Ms. Samuelson and Mr. Sullivan seek relief from the Court.

*Apple* is instructive both on the issue of public interest and on potential harm. There, Plaintiffs had deposed Steve Jobs, the former CEO of Apple, six months prior to his death. 75 F. Supp. 3d at 1273. During the trial three years later, clips of Jobs's deposition were played for the jury, though only the testimony, and not the clips, were made available to news media. *Id.* Despite having "no evidence that the news media intend[ed] to use the video for improper purposes," the court denied a motion for the media to copy the video clips because the gain to public knowledge from release of the recordings was minimal given that the "'transcript has been widely distributed and publicized.'" *Id.* at 1276 (quoting *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996)). The court also acknowledged that privacy rights and the potential for other harassment cautioned against release. *Id.* at 1274, 1276.

The Court here should follow the reasoning in *Apple*. Given that the privacy interests and avoidance of potential manipulation of the recording of a **deceased** deponent outweighed the potential benefit to the public, it would also be the case here. The specter of improper use of the recordings for harassment or embarrassment is far more concrete given that Ms. Samuelson and Mr. Sullivan would have to bear witness to the potential manipulation of their recordings. Dissemination of these recording would serve only to sensationalize a case and a topic that have already garnered significant public attention. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 603 (1978) (allowing all records to be publicly released without the exercise of discretion could make the court a partner in "gratify[ing] private spite or promot[ing] public scandal") (internal citations and quotations omitted).

II. <u>Deposition Recordings Are Not Intended For Public Consumption</u>

The principal purpose of recorded depositions is to provide **the factfinder** with a superior manner to judge the credibility and demeanor of a witness. The federal rules were "amended to

permit videotaped depositions as a matter of routine in recognition of the fact that videotapes are a means of presenting deposition testimony **to juries** that is superior to readings from cold, printed records. It was not intended to be a vehicle for generating content for broadcast and other media." *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) (emphasis added); *see also United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982) ("The videotape made it possible for **the trial court** to gauge [the witness's] attitude more accurately than would have been possible with just a cold deposition record . . . **The trial judge** was able to note [the witness's] attitude reflected by his motions, facial expressions, demeanor, and voice inflections.") (emphasis added). Moreover, the public does not have an absolute right to recordings of testimony as the common law right of access to judicial records does not encompass videotape recordings. *Application of Am. Broad. Cos.*, 537 F. Supp. 1168, 1171-72 (D.D.C. 1982). Following their depositions, the Court will have access to Ms. Samuelson's and Mr. Sullivan's recordings, permitting it to complete its role as factfinder in this case. With that purpose served, release of their recordings deviates from the reason for their creation.

### III. The Seal Would Prevent Manipulation Of Ms. Samuelson's and Mr. Sullivan's Voices And Images

The release of Ms. Samuelson's and Mr. Sullivan's audiovisual recordings carries with it the potential for embarrassment and undue burden because the video can be easily manipulated by others with political motivations to do so. Audiovisual recordings are susceptible to a "higher degree of potential abuse than transcripts" because they can be "spliced and used as 'sound-bites' on the evening news" or any other broadcast platform. *See, e.g., Felling*, 2001 WL 1782360, at *3; *see also Nixon*, 435 U.S. at 601 (release of audio recordings would facilitate "distortion through cutting, erasing, and splicing of tapes"). Parties "are not required to point to a specific portion of the videos that would be especially damaging if released. Instead, courts have recognized that the

4

specific harm derives from the nature of the video medium itself." *Low v. Trump Univ., LLC*, No. 313CV02519GPCWVG, 2016 WL 4098195, at *5 (S.D. Cal. Aug. 2, 2016).  Indeed, where political intrigue in a case's subject matter runs high, it is "nigh-inevitable" that segments of the deposition video would appear in news clips, political advertisements, or internet videos.  *Id*.

There is significant risk that the audiovisual recording of Ms. Samuelson's and Mr. Sullivan's depositions could be used for improper political purposes; Judge Emmet G. Sullivan recently recognized as much.  In a similar FOIA proceeding brought by Judicial Watch related to Secretary Clinton's use of a private email address while in office, Judge Sullivan ordered the permanent seal of the audiovisual recordings of non-party deponents.  Finding that public interests were well served by the publicly available transcripts, Judge Sullivan found that it was "unnecessary" to make the recordings public as well.  Transcript of Oral Argument and Ruling at 67, *Judicial Watch v. Dep't of State*, No. 13-cv-001363-EGS (D.D.C. Nov. 16, 2018) (ECF No. 177).  He also found that "particularized harm" would befall non-party deponents from the publication of the recordings: "it's inevitable segments of the depositions would be edited and taken out of context solely for the purpose of harassing or embarrassing the deponents." *Id.* at 70.

The same result should follow here.  Despite the conclusion of the 2016 presidential election, both Secretary Clinton as well as her use of a private email address continue to be near the center of American politics.  Republican candidates running in competitive districts as recently as the 2018 election cycle generated political advertisements attacking Secretary Clinton.[2]  And the topic of her email continues to draw the ire of prominent Republican politicians, including the

---

2   Rebecca Shabad and Alex Seitz-Wald, *2018 Campaign: Republicans are running against Hillary Clinton — again*, NBC News (Apr. 1, 2018, 4:45 AM), https://www.nbcnews.com/politics/elections/2018-campaign-republicans-are-running-against-hillary-clinton-again-n861261.

President himself.[3]  Indeed, the Plaintiff itself seems intent on using the depositions for improper political purposes; it is already publicizing the upcoming depositions, at the same time imploring viewers to donate to the Plaintiff.[4]  The deposition videos of Ms. Samuelson and Mr. Sullivan would only provide further fodder and footage for political messaging and fundraising.  Just as with State Department career civil servants, the risk runs high that Ms. Samuelson's and Mr. Sullivan's videos would be manipulated solely for political purposes designed to harass these private citizens and non-parties to this case.  *See* Def.'s Mot. for Protective Order at 6 (ECF No. 71) ("Further, the risk that any audio or video may be edited or otherwise manipulated once released to the detriment of the deponent is especially high here, given the notoriety surrounding former Secretary Clinton's use of a private email server.")

## CONCLUSION

The very susceptibility of audiovisual recordings to manipulation or abuse cautions against releasing any portion of Ms. Samuelson's and Mr. Sullivan's deposition recordings.  For these reasons, the Court should issue a protective order sealing the audiovisual recordings of their upcoming depositions.

Dated: March 25, 2019                                           Respectfully submitted,

                                                                /s/ Beth A. Wilkinson
                                                                Beth A. Wilkinson (D.C. Bar No. 462561)

---

[3]    Philip Rucker, Anton Troianovski, Seung Min Kim, *Trump hands Putin a diplomatic triumph by casting doubt on U.S. intelligence agencies*, The Washington Post (July 16, 2018), https://www.washingtonpost.com/politics/ahead-of-putin-summit-trump-faults-us-stupidity-for-poor-relations-with-russia/2018/07/16/297f671c-88c0-11e8-a345-a1bf7847b375_story.html?noredirect=on&utm_term=.0c8ff38cc069 (quoting the President as saying "I think it's a disgrace that we can't get Hillary Clinton's 33,000 emails")

[4]    Judicial Watch YouTube channel, *TEN Witnesses Scheduled for Sworn Testimony to Judicial Watch Attorneys on Clinton Email Scandal*, Mar. 4, 2019, https://www.youtube.com/watch?v=4qKkCR2TUnY (including a link with "Donate Today!" directly below the video).

Alexandra M. Walsh (D.C. Bar No. 490484)
Brian L. Stekloff (D.C. Bar No. 486405)
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street NW
Tenth Floor
Washington, D.C. 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com
awalsh@wilkinsonwalsh.com
bstekloff@wilkinsonwalsh.com

*Counsel for Heather Samuelson and Jacob Sullivan*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 25th day of March 2019, a true and correct copy of the foregoing document was served upon the parties in this case via the Court's electronic filing system and is available for viewing and downloading from the ECF system.

Dated: March 25, 2019　　　　　　　　　　By:　　*/s/ Beth A. Wilkinson*
　　　　　　　　　　　　　　　　　　　　　　　　Beth A. Wilkinson