**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-1242 (RCL) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Judicial Watch, Inc., pursuant to the Court's January 15, 2019 Memorandum and Order (hereinafter "Discovery Order") and Rule 37 of the Federal Rules of Civil Procedure, hereby files its Motion to Compel and the Memorandum of Points and Authorities in support thereof.[1]

Plaintiff has requested that Defendant U.S. Department of State (hereinafter "Defendant" or "State") produce information from 12 documents which State claims it may withhold under the attorney-client privilege or the work product doctrine.[2]  State does not demonstrate that the information is protected.  After repeated attempts to resolve this dispute were unsuccessful, Plaintiff respectfully asks the Court to order State to produce the information within short order.[3]

---

[1]  Pursuant to the Rules of this Court, Plaintiff has in good faith conferred with Defendant before filing this motion.  Defendant informed Plaintiff that it opposes the motion.

[2]  On May 6 and May 14, 2019, Defendant withdrew all assertions of deliberative process privilege over these documents.  *See* Ex. 1 (DOJ Attorney Robert J. Prince May 6, 2019 Ltr. and May 14, 2019 Email).

[3]  The documents at issue in this motion are relevant to the upcoming depositions beginning May 31, 2019 (John Hackett-May 31; Monica Tillery-June 3; Clarence Finney-June 4; Jonathan Wasser-June 6; Gene Smilansky-June 11; Heather Samuelson-June 13; 30(b)(6)-June 19.

## Memorandum of Points and Authorities

## Statement of Facts

1.      This is a rare Freedom of Information Act ("FOIA") case in which the Court determined that civil discovery is appropriate.  On March 29, 2016, the Court granted Plaintiff's motion for discovery, holding that "[w]here there is evidence of government wrong-doing and bad faith, as here, limited discovery is appropriate, even though it is exceedingly rare in FOIA cases."  *See* Memorandum and Order, March 29, 2016, p. 1 (ECF No. 39).

2.      On January 15, 2019, the Court carefully outlined the parameters of the discovery permitted in this case.  It limited discovery to three issues: (1) whether Clinton intentionally attempted to evade FOIA by using a private email while Secretary of State; (2) whether State's efforts to settle this case in late 2014 and early 2015 amounted to bad faith; and (3) whether State adequately searched for records responsive to Judicial Watch's FOIA request.  *See* Memorandum and Order, January 15, 2019, p. 1 (ECF No. 65) (hereinafter "Discovery Order").  The Court also detailed the written discovery and the 11 depositions it authorized.

3.      Pursuant to the Court's Discovery Order, Plaintiff served Defendant on January 15, 2019 with the six written requests for production of documents outlined in the Court's Discovery Order.  Discovery Order at pp. 10, 16; Ex. 2 (Pltf. RFPD) (hereinafter "Pltf. RFPD").

4.      State served written responses on March 12, 2019 and made a rolling production on March 14, April 2 and April 9.[4]  With each rolling production, State produced a corresponding privilege log to identify documents it deemed protected.  In total, Defendant initially produced 419 pages of privilege logs and listed 1,902 documents as privileged.

---

[4]      Due to a lapse of appropriations the case was stayed on January 17, 2019 until January 25, 2019.  Order January 17, 2019 (ECF No. 68) and Def. Notice, Jan. 30, 2019 (ECF No. 70).

5.      On April 12, Plaintiff submitted a four-page-letter response with detailed
objections to State's discovery responses.[5]  Since then, the parties have conferred and State made
several supplemental productions with some additions to its privilege logs on April 26, May 2
and May 6.

6.      Due to Plaintiff's good faith efforts to narrow the dispute before the Court,
Plaintiff has substantially narrowed the documents in dispute to only 12 documents from the
nearly 2,000 documents State originally listed as privileged.

7.      On May 13, Plaintiff informed State that it would move the Court for an order to
compel if it did not produce the information Plaintiff requests in these documents.  State
responded on May 14 that it opposes Plaintiff's motion.  Ex. 5 (Attorney Ramona R. Cotca May
13, 2019 Email); Ex. 7 (Prince May 14 Email).

8.      On May 6 and May 14, State withdrew all assertions of deliberative process
privilege over the documents at issue in this motion.  The protection claims that remain in
dispute are the the attorney-client and work product privileges.

9.      Six of the 12 documents are emails that relate to the December 6, 2012 FOIA
request submitted by Citizens for Responsibility and Ethics in Washington ("CREW").  They are
Documents 896, 897, 899, 900, 901 and 902.  Ex. 1.  The other six documents concern State's
pre-February 2, 2015 awareness of the need to continue searching for records responsive to this
FOIA request, internal communications concerning this FOIA request, and records relating to

---

[5]      Defense counsel has accused Plaintiff of delay because it did not object to Defendant's
withholdings before April 12.  Plaintiff did not submit its objections prior to Defendant's
complete document production of April 9 to avoid piecemeal or fragmented objections.
Plaintiff's efforts to avoid fragmented objections is not evidence of delay, but rather, evidence of
a good faith effort to thoroughly review each document and each privilege log in an effort to
narrow the issues before the Court, which Plaintiff has done.

State's practices, policies, and actions accounting for Office of the Secretary records.  They are

Documents 021, 076, 187 (206 is a duplicate), 1040, 1326 (1328 and 3636 are duplicates) and

Document 2475.  *Id*.

10.     All documents at issue in Plaintiff's motion were identified as responsive to

Plaintiff's requests for production of documents and are relevant to the discovery authorized by

the Court.  Discovery Order at pp. 10, 16; Ex. 3 (Def.'s Responses to Pltf.'s RFPD).

## Argument

As the party asserting the privileges, State bears the burden to present sufficient facts to

establish that the information is protected.  *See Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C.

2000); quoting *Alexander v.* FBI, 186 F.R.D. 102, 111 (D.D.C. 1998), citing *Odone v. Croda*

*Int'l PLC*, 950 F. Supp. 10, 12 (D.D.C. 1997); Fed. R. Civ. P. 26(b)(5).

In reviewing government claims for privilege, public policy favoring government

transparency generally and the importance of internal investigation of government malfeasance

suggest that the privilege claims should be scrutinized closely,[6] with some courts observing the

potential dangers of improper expansion of attorney-client privilege claims by the federal

government.  *Jupiter Painting Contracting Co. v. U.S.*, 87 F.R.D. 593, 598 (E.D. Pa. 1980)

("Courts generally have accepted that attorney-client privilege applies in the governmental

context, while expressing apprehension at its pernicious potential in a government top-heavy

with lawyers."); *see also Bristol-Myers Co. v. FTC*, 598 F.2d 18, 28 (D.C. Cir. 1978)

(government claims of work product privilege should be scrutinized because the "executive

branch of our government employs an unaccountable and ever-growing number of attorneys"),

---

[6]  Lory A. Barsdate, ATTORNEY-CLIENT PRIVILEGE FOR THE GOVERNMENT ENTITY, 97 Yale L.J.
1725, 1735 (1988), available at https://digitalcommons.law.yale.edu/ylj/vol97/iss8/13.

quoting *Kent Corp. v. NLRB*, 530 F.2d 612, 623 (5th Cir. 1976).  Accordingly, in a case like this one concerning "what government officials knew and when they knew it," the Court may require disclosure of as much factual information as possible without vitiating the privilege.  Discovery Order at pp. 6, 8 (ECF 65).

### Attorney-Client Privilege

The D.C. Circuit set forth the test to determine whether the attorney-client privilege attaches:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; [*99] (3) the communication relates [**11] to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Seal Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984), quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950).  The Court continued:

> To this we append two additional black letter statements.  Communications from attorney to client are shielded if they rest on confidential information obtained from the client. *Mead Data Central, Inc. v. United States Department of Air Force*, 184 U.S. App. D.C. 350, 566 F.2d 242, 254 (D.C. Cir. 1977). Correlatively, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Brinton v. Department of State*, 204 U.S. App. D.C. 328, 636 F.2d 600, 604 (D.C. Cir. 1980)(footnote omitted), *cert. denied*, 452 U.S. 905, 69 L. Ed. 2d 405, 101 S. Ct. 3030 (1981).

*Id.*

This Court has held that the party claiming the privilege must demonstrate through affidavits or other evidence that it meets the essential elements to sustain a claim of the privilege – the attorney and client involved, the nature of the document, all persons or entities shown on the document to have received or sent the document, all persons or entities known to have been

furnished the document or informed of its substance, and the date the document was generated, prepared or dated." *Alexander v. FBI*, 186 F.R.D. 102, 106-107 (D.D.C. 1998), citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (quoting *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989); *Id*. at 99.  General descriptions and conclusory statements also do not adequately "inform the requestor of the character of the information being withheld from him or her." *Jones v. Carson*, 2018 U.S. Dist. LEXIS 67400 *16-17 (D.D.C. 2018), quoting *Alexander v. FBI*, 198 F.R.D. 306, 312 (D.D.C. 2000); *Alexander*, 186 F.R.D. at 111. Also, simply copying an attorney on an email does not make the information protected. *Zelaya v. UNICCO Service Company, et. al.*, 2010 U.S. Dist. LEXIS 7261, *25 (D.D.C. 2010) (carbon copying some emails to in-house counsel will not provide the basis for attaching the attorney-client privilege), citing *Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.").

### Attorney Work Product Doctrine

The work product doctrine is not a privilege, but a qualified immunity under Federal Rule of Civil Procedure 26. *Jones v. Carson*, 2018 U.S. Dist. LEXIS 67400 * 6-8 (D.D.C. 2018). Rule 26 provides that "ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" but such information may be obtained if a requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Hickman v. Taylor*, 329 U.S. 495 (1947) (work product concerning an attorney's interview of a fact witness is not discoverable without a showing by the requesting

party that a "denial of such production would unduly prejudice the preparation of petitioner's case.").

The party asserting the work product protection must first show that the document in question was prepared in anticipation of litigation.  The D.C. Circuit applies the "because of" test which asks "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Jones* at *8, quoting *F.T.C. v. Boehringer Ingelheim Pharmaceuticals, Inc.* 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting *U.S. v. Deloitte LLP*, 610 F3d 129, 137 (D.C. Cir. 2010).  "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available."  *Id*. (quoting *Deloitte*, 610 F.3d at 138).

If a particular document is determined to be protected by the work product doctrine, the party seeking the document must make a showing of both unavailability and need proportionate to the nature of the work product.  *F.T.C. v. Boehringer,* 778 F.3d at 153.  For opinion work product, the party must "make an 'extraordinary showing of necessity.'" *Id*.  For fact work product, the party seeking to discover it must merely provide "adequate reasons" that it should be permitted to discover those facts consistent with the "substantial need" standard of Rule 26(b)(3)(A)(ii).  *Id*.

**Defendant does not demonstrate that the asserted privileges apply**

CREW Related Documents (Documents 896, 897, 899, 900, 901 and 902)

Document 896

Document 896 is an email string about the CREW FOIA request. Ex. 1 (Doc. 896).  On May 6, Defendant made a supplemental production in which it released additional information

from this document.  Ex. 4 (Pltf.'s Separate Objections to Def.'s Supp. Privilege Log (hereinafter "Pltf.'s May 1 Objections"); Ex. 7 (Prince May 6 Email).  Based on the newly released document, it appears that the email exchange discusses the status of the CREW request in response to a request from the White House.  In a December 20, 2012 email, Sheryl L. Walter wrote, in part: "WH called – have we received a FOIA request from CREW…If we have it, can you give me the details so I can call the WH back?"

Defendant redacts information from a February 14, 2013 email from Sheryl L. Walter to Sheryl L. Walter, Heather F. Samuelson, and Jonathan E. Davis in response to an earlier email that same day from Samuelson asking for a status of "where things left off on this."  Ex. 1 (Doc. 896 at p. 1).  The only basis Defendant provides in its privilege log to redact information from this email is under the deliberative process privilege.  "The redacted portions reveal pre-decisional proposals for how to go about processing the request as well as references to communications with another part of the executive branch that would reveal the internal executive branch process of developing a public response to a FOIA request."  Ex. 6 (Def.'s Supp. Privilege Log of April 26, 2019) (herein after "Def.'s Supp. PL") (Plaintiff only includes the relevant pages).  However, Defendant made it clear that it was withdrawing all assertions of deliberative process over the documents still in dispute. Ex. 7 (Prince May 6 Ltr. and May 14 Email).  Defendant, therefore must release the information too.

State's only redaction under the attorney-client privilege in this document appears in the most recent email, sent on March 5, 2013, by State attorney, Jonathan E. Davis, to Heather F. Samuelson, with carbon copy to others.  Ex. 1 (Doc. 896 at p. 1).  State claims that the "top email from State attorney Jonathan Davis reflects his legal advice to clients about how to adequately process the request."  Ex. 6 (Def.'s Supp. PL).  Defendant's privilege description is general and

conclusory.  State does not claim that the redacted information reveals confidential facts provided by the client.  State also does not make a showing that any confidential information has been held in confidence and not waived.  To the extent the information reflects facts learned from communications with the White House, those facts are also not protected by the attorney-client privilege.  As this Circuit has repeatedly recognized, facts acquired by an attorney from another source are not protected under the attorney-client privilege.  *See In re Seal* at 98-99.

State also claims that Davis' March 5, 2013 email is protected by the work product doctrine, but State fails to demonstrate that the email was created in reasonable anticipation of litigation.  Merely stating so in the privilege log is not enough.  Moreover, CREW never sued the State Department concerning its FOIA request.  Also simply stating that litigation later ensued, presumably referring to litigation after the March 2015 news reports concerning Secretary Clinton's email use at the State Department or State OIG's January 2016 report about State's inadequate FOIA responses, is insufficient to demonstrate the litigation was reasonably anticipated for purpose of the creation of these documents two years prior.  *See* https://www.stateoig.gov/system/files/esp-16-01.pdf (last accessed online on May 17, 2019).  State also fails to demonstrate that the release of the email would reveal the attorney's mental impressions or legal conclusions.  The entire email exchange appears to be discussions about the status of the request in response to the White House's inquiry.

Document 897

Document 897 is an email exchange from August 8, 2014 between several State officials.  The first email was sent at 4:19 PM by Clarence N. Finney to Jim P. Bair with a carbon copy to Jonathan Wasser and Clarence J. Finney with the Subject line: "Former Secretary E-Mail Account."  Ex. 1 (Doc. No. 897).  The entire substance of the email is redacted.  It appears that

Bair then forwarded the response to State attorneys Gene Smilansky and Andrew Keller, and Bair's email is followed by a response from Gene Smilanksy at 5:46 PM with several attachments.  Most of the substance of Smilansky's email is redacted, as well as the names of the attachments to his email.  *Id.*

State asserts that Finney's email is privileged because he "provides State Attorney James Bair with information that he requested.  Mr. Bair then forwards the information to other State attorneys."  Ex. 6 (Def.'s Supp. PL at p. 50 of document (entry is out of order)).  State's claim that the email is protected by the attorney-client privilege is based on nothing more than a general description and conclusory statement.  State does not claim that the release of Finney's email would reveal confidential facts provided by the client for the purposes of seeking legal advice.  State also does not establish that the information has been held in confidence and not waived.

State also claims that Smilansky's email to the other attorneys, Bair and Keller, is protected because "Mr. Smilanksy provides additional background to Mr. Bair based on his experience providing legal advice concerning the CREW FOIA request."  It is unclear what this means or what privilege State is asserting over this email.  Similar to the other email above, State does not claim that Smilansky's email contains confidential facts provided by Finney for the purpose of seeking legal advice.  State also does not demonstrate that the information has been held in confidence.

To the extent State asserts that both emails are protected by the work product privilege, this assertion is also inadequate.  State does not demonstrate that the document was prepared in anticipation of litigation.  Both emails were created 15 months after State sent CREW its final "no records" response.  Ex. 8 (State May 10, 2013 Final Response Ltr. to CREW).  State does

not explain why it reasonably anticipated litigation would follow.  State also does not identify the ongoing litigation it refers to in its privilege log.  Importantly, what State officials knew about the CREW request and Secretary Clinton's email use from 2012 to 2014 is critical to Plaintiff's case.

Finally, State does not establish how the names of the attachments appearing in Smilansky's email are protected by either privilege.  State does not even address this redaction in its supplemental privilege explanations.  Ex. 4 (Pltf.'s May 1 Objections at p. 6 (Def.'s entry was out of order)); Ex. 7 (Prince May 5 Email).  State fails to show how the information would reveal attorney's legal conclusions and mental impressions or how it could possibly be construed as revealing confidential facts provided by the client for the purpose of seeking legal advice. Without waiving any objections, Plaintiff only seeks the names of the attachments at this time.  If the names of the attachments were redacted under the privilege of deliberative process, the redaction should be removed as the privilege has been withdrawn.[7]

Document 899

Document 899 is an email exchange about the status of the CREW request.  Ex. 1 (Doc. 899).  As in Document 896, it appears that the exchange concerns White House's request to track CREW's FOIA request and subsequent communications with the White House.

State asserts the attorney-client privilege, stating that the "first and third emails from State attorney Jonathan Davis reflects his legal advice to clients about how to adequately process the request."  Ex. 6 (State's Supp. PL).  However, this does not establish that release of the

---

[7]     State withheld in this discovery dispute other information in this document under the deliberative process privilege, later found to be inappropriate.  Previously State redacted the Subject line, "Re: Former Secretary E-Mail Account."  Nothing about this information discloses the deliberations of agency officials.  State finally released the improperly withheld information with its May 6 supplemental production.

emails would reveal confidential facts that were provided by the client.  State also does not

establish that it held in confidence any facts learned from the client.  Similar to document 896, in

Document 899 State does not demonstrate that it did not waive the privilege or that Davis'

emails do not contain facts learned from third parties in the White House.  As discussed below,

the email exchange appears to be about the status of the request and discussions with the White

House.  Ex. 1 (Doc. 899).  They are not protected by the attorney-client privilege.

To assert the work product privilege, State claims, "In addition, these messages were

prepared by Mr. Davis in reasonable anticipation of future litigation concerning the processing of

the FOIA request, litigation which did in fact later occur."  Ex. 6 (Def.'s Supp. PL).  As for

Document 896, this general assertion is insufficient.  State does not explain why it reasonably

anticipated litigation would follow.

Although State withdrew its assertions of the deliberative process privilege over this

document, it has failed to remove the corresponding redactions still appearing in three other

emails in the document.  Ex. 4 (Pltf.'s May 1 Objections); Ex. 7 (Prince May 6 Ltr. and May 14

Email).  It withheld information from emails from Sheryl L. Walter, dated February 14, 2013,

and Brock A. Johnson, dated March 8, 2013 and April 19, 2013, for which State claimed that the

"redacted portions reveal pre-decisional proposals for how to go about processing the request as

well as references to communications with another part of the executive branch that would reveal

the internal executive branch process of developing a public response to a FOIA request."  Ex. 1

(Doc. 899); Ex. 6 (Def.'s Supp. PL).  State does not make a claim that this information is

protected by the attorney-client or work product privileges.  *Id*.  In fact, a review of the document

confirms that the information concerns internal deliberations and discussions with the White

House.  Ex. 1 (Doc. 899 at pp. 1-2).  On February 14, 2013, Water wrote, "I believe we are still

[Redaction]."  Further up the email chain, Brock A. Johnson responds to Heather F. Samuelson's email regarding the status: "[Redaction] Happy to call over there if needed, just let me know." On April 19, 2013, Johnson again writes about the status: "Jonathan, Sheryl, Where did we end up on this case? [Redaction]."  It is apparent that these redactions concern State's communications with the White House about the CREW FOIA request.  State has been wrongfully withholding this information for two months and, as there is no longer any privilege asserted over these emails, Plaintiff requests that the Court order Defendant to produce it forthwith.[8]

Document 900

Document 900 is a two-page-email string between Gene Smilansky and Brett A. Gittleson.  Ex. 1 (Doc. 900) (State did not release any additional redactions appearing in ECF Exhibit 62-2).  State redacts two emails from Smilanksy to Gittleson, one on April 24, 2013 and one on May 1, 2013.  In addition to the since withdrawn assertion of the deliberative process privilege, State claims that the emails "reflect[] a confidential request for legal advice from Mr. Smilansky's clients, as well as his response to that request.  The withheld analysis by Mr. Smilansky reflects his mental impressions as an attorney concerning the case and was prepared in reasonable anticipation of future litigation related to the processing of this FOIA request, litigation that in fact later occurred."  Ex. 6 (Def.'s Supp. PL).

---

[8]     The deliberative process privilege is overcome in civil discovery upon a showing that the requesting party has a particularized need for the information.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (1980), citing *EPA v. Mink*, 410 U.S. 73, 86, (1973).  The Court already recognized that what State officials knew about the CREW request from 2012 to 2014 is "highly relevant and critical to Judicial Watch's case."  Discovery Order at p. 8.  Despite Plaintiff's repeated objections over State's deliberative process withholdings, State withheld this information until May 6. Ex. 4 (Pltf.'s May 1 Objections); Ex. 5 (Cotca April 12 Ltr.; Cotca May 1, 13 and 14 Emails).

State's privilege descriptions are general and conclusory.  State fails to assert that the release of the emails would in fact reveal confidential facts that were provided by Gittleson for the purpose of seeking legal advice.  The assertion that the email reflects "a confidential request for legal advice" does not demonstrate that the communication would reveal confidential facts provided by the client.

To the extent State claims that the information is protected by the work product doctrine, it does not explain why Smilanksy reasonably anticipated litigation would occur.

<u>Document 901</u>

Document 901 is another email exchange that concerns the White House's tracking of the status of the CREW request.  Ex. 1 (Doc. 901).  In fact, the Subject line of the email chain reads, in part, "WH & S/Clinton's e-mail."  The "WH" reference to the White House was previously redacted and State only disclosed it with its third supplemental production that it made on May 6.  State had no good faith basis to shield this from Plaintiff since March.[9]

State redacts information from the third email in the document, an email from Sheryl L. Walter to Patrick D. Scholl sent on March 28, 2013, with a carbon copy to others, including Gene Smilanksy and Jonathan Davis (both attorneys).  *Id*.  It claims that the information is protected because "Sheryl Walter seeks legal advice from state attorneys concerning the proposed response."  Again, State fails to demonstrate that release of the information would reveal confidential facts that are provided by the client.  Ex. 4 (Pltf.'s May 1 Objections).  Also,

---

[9]     State redacted the reference to the White House ("WH") under the pretext that it was protected by the deliberative process privilege.  Ex. 4 (Pltf.'s May 1 Objections at Docs. 896, 899 and 901); Ex. 5 (Cotca May 1 and 13 Emails).  However, the fact that State was deliberating with the White House is not exempt information even under FOIA, which imposes a higher burden than civil discovery to overcome the privilege.  Exemption 5 under FOIA protects inter or intra agency deliberations.  It does not shield the identities of the persons or entities with whom the agency is deliberating.

Walter sent the email to Patrick D. Scholl, not State attorneys and the attorneys copied on the email do not respond. This is a client to client communication.  Simply copying an attorney on an email does not make the information protected.  *Zelaya*, 2010 U.S. Dist. LEXIS 7261, *25.  State fails to demonstrate that the email is protected by the attorney-client privilege.

State also redacts information from five other emails in the document, asserting that they "summarize prior guidance given by State attorney Gene Smilansky, seek information and legal advice concerning how to continue the processing of the request, and [] Smilanksy responds with the results of his analysis and makes pre-decisional deliberative recommendations for how to proceed."  Ex. 6 (Def.'s Supp. PL).  State's assertions to shield the information pursuant to the attorney-client privilege amount to no more than insufficient general and conclusory assertions.  State fails to demonstrate that the emails from Smilanksy contain confidential facts that were provided by the client for the purpose of seeking legal advice.  By reading the document, it is apparent that it relates to the White House's tracking of the request and how other agencies, including Department of Homeland Security, may be responding to a similar request.  Even though a State attorney, Jonathan E. Davis, is included on some of the emails, he never responds.  These appear to be internal deliberations about the request rather than communication of confidential facts for the purpose of seeking specific legal advice.  Ex. 1 (Doc. 901); Ex. 4 (Pltf.'s May 1 Objections).  They should be produced.

State also claims that the emails sent by Smilansky are protected by the work product doctrine because they "reflect his mental impressions as an attorney concerning the case and were prepared in reasonable anticipation of future litigation related to the processing of this FOIA request, litigation that in fact later occurred."  *Id*.  However, like the other CREW related documents, State fails to demonstrate that it reasonably anticipated litigation would follow.  State

does not show how Smilansky's emails about the White House and Secretary Clinton's email were created in anticipation of litigation filed years later.

<u>Document 902</u>

Document 902 is the last of the CREW related documents.  It is an August 2013 email exchange about the FOIA request.  Ex. 1 (Doc. 902).  Defendant fails to demonstrate that the email from Karen M. Finnegan to Sheryl L. Water, with a carbon copy to Gene Smilansky, is protected by either privilege.  State seeks to shield the information because the email "includes a pre-decision recommendation for how to interpret the scope of a FOIA request and a reference to a confidential communication between State attorney Gene Smilanksy and his clients, when asked for advice concerning the CREW request.  Mr. Smilansky's recommendations on this matter were prepared in reasonable anticipation of future litigation…"  Ex. 4 (Pltf.'s May 1 Objections).  As stated before, a claim of attorney-client privilege based on an assertion of "confidential communication" does not demonstrate that the communication involved confidential facts from the client to his or her attorney – a necessary element for the privilege to attach.  State also fails to demonstrate that the information has been held in confidence and not waived.

State also does not demonstrate that the email is protected by the work product doctrine. First, the email at issue is one from the client, not the attorney.  State does not explain how an email from client to client is protected under the work product doctrine.  Second, State does not claim that the release of the information would reveal the mental impressions or legal conclusions of its attorney.  Third, State does not prove that it was created in reasonable anticipation of litigation.  The emails in this document were sent three months after State submitted its May 10, 2013 final "no records" response to CREW.  Ex. 8.  Simply pointing to the

fact that litigation followed years later does not explain why State reasonably anticipated that litigation would follow.

To the extent the Court finds that the work product doctrine protects any of the CREW related emails from disclosure, which Plaintiff specifically disputes, Plaintiff respectfully requests that the Court order State to disclose the fact work product because Plaintiff has a substantial need for these facts surrounding the Crew FOIA request to prove its claims against State.  As the Court recognized in its Discovery Order, what State officials knew about the CREW request from 2012 to 2014 – which sought records related to Secretary Clinton's emails – is "*highly relevant and critical*" to Plaintiff's case.  Discovery Order at p. 8 (emphasis added).  It is also true for all of the CREW-related documents that Plaintiff cannot obtain them from any other party or source as they are State documents.

Non-CREW Related Documents

Document 21

State wrongfully withholds Document 21 for several reasons.  Ex. 1 (Doc. 21); Ex. 4 (Pltf.'s May 1 Objections).  While Plaintiff indicated in its May 1, 2019 Objections that it did not seek the "summary of legal advice provided by state attorney Martha Lovejoy," which would be noted on the fourth page of the document next to the Comment Type "L" for "Legal," the remaining information that is redacted must be produced.

State does not meet the threshold requirement that its privilege log identifies the essential elements necessary to prove that the remaining information is protected.  State does not identify who created each redacted notation and the persons' roles in making the notation.  State does not even describe what the document is or who it is prepared by for Plaintiff to determine the applicability of the privileges asserted, or even which privilege State asserts over which

redaction.  Defendant only describes the document as "material collected or created for the

purposes of litigation; attached to Document C06276767 from FOIA request in 17-cv-205."  *Id*.;

Ex. 6 (Def.'s Supp. PL).  State's description is far too general than what the law require.

State also does not demonstrate that the work product doctrine shields the information.

The information appears to be internal notations about the status of Plaintiff's FOIA request.

Plaintiff seeks the redactions designated as "D" for document comment or "T" for Task

Comment.  Plaintiff does not even know if the redacted notations were made by an attorney.  To

the extent the Court does find that the work product doctrine applies to this document, Plaintiff

requests that the Court order State to release only the fact work product because it is essential to

Plaintiff's discovery, namely what State officials searched and knew about the need for a

supplemental search when they processed Plaintiff's FOIA request.  The information is also not

available elsewhere as it is a State document and should be produced.

## Document 76

State also wrongfully withholds the name of the attachment that appears in Document 76

as information protected by the work product and attorney-client privileges.  Ex. 1 (Doc. 76).

The State Department claims that the information is protected because it "reflects State

Department attorney James Bair's mental impressions and legal advice because disclosure of the

name of the document would allow people to identify the document that was the subject of Mr.

Bair's legal advice and mental impressions."  Ex. 7 (Prince May 6 Ltr.)  State does not explain

what the attachment is, or how name of the attachments would reveal confidential facts provided

by the client.  Neither the attorney-client privilege nor the work product doctrine protects the

identity of a document merely because it is attached in a communication between the attorney

and his or her client.  If the Court finds that the work product doctrine shields this information,

Plaintiff asks that State be ordered to release the fact work product only.  The document is relevant to the discovery authorized by the Court and the information is otherwise unavailable.

Documents 187 & 206

State also wrongfully withholds the email contained in Document 187 (Document 206 contains a duplicate copy of the email) sent by Susan C. Weetman to Karen M. Finnegan on November 4, 2014 with the Subject line "Office of the Secretary."  Ex. 1 (Docs. 187 & 206); Ex. 4 (Pltf.'s May 1 Objections).  Defendant claims the work product privilege over the email: "The emails in this document were gathered and prepared by an IPS official at the direction of State attorney Jamie Bair for use in this ongoing litigation."  Ex. 4 (Pltf.'s May 1 Objections).  State never explains, however, how an email from Weetman to Finnegan reveals Bair's thinking.  For this reason this email must also be disclosed.

If the Court finds that this email is protected by the work product doctrine, which Plaintiff disputes, Plaintiff respectfully requests that the Court order State to disclose the fact work product only that is contained in the email.  The email is a communication between State officials involved in responding to Plaintiff's FOIA request prior to State's February 2015 disclosure that it needed to search additional emails.  The information is relevant to Plaintiff's claims and Plaintiff cannot obtain it from elsewhere because it is a State document.

Document 1040

State does not demonstrate that the email contained in Document 1040 from Clarence N. Finney to Joseph E. Macmanus is protected by either of the two privileges.  Ex. 1 (Doc. 1040); Ex. 4 (Pltf.'s May 1 Objections); Ex. 7 (Prince May 6 Ltr.).  The communication is between two non-attorney State officials.  In sending the email to Macmanus, Finney actually removed the attorney from the recipient list.  The first element required to invoke the attorney-client privilege

is a showing of the attorney and client involved.  This email is not protected by the attorney-client privilege.  To the extent the attorney-client privilege applies to any of the emails in the document, State applied it to the wrong email.  The communication from Mr. Macmanus to the attorney, where he writes "This is a good point," is an example of attorney-client privileged communication, but State waived the privilege.  Ex. 1 (Doc. 1040).

The communication is also not protected by the work product doctrine because State does not establish that it was made in anticipation of litigation.  Merely pointing to the fact that lawsuits were filed after the March 2015 news reports concerning Secretary Clinton's email use is insufficient to establish that the email communications would not have been created otherwise.  Based on the subject line of the email ("RE: Dear rep.docx"), Plaintiff can deduce that it relates to State's request for the return of federal records from previous Secretaries of State, including Secretary Clinton.  *Id.*  The communications are part of the ordinary business of an agency managing its records.  Also, State does not allege that the communication would reveal the attorney's mental impression or legal conclusions.  Ex. 4 (Pltf.'s May 1 Objections.).   Plaintiff disputes that the information is privileged, but to the extent the Court finds that the email is protected under the work product doctrine, Plaintiff respectfully requests the Court to order State to release all fact work product from the email.  The email communication relates to what State knew about the return of Secretary Clinton's emails before State disclosed on February 2, 2015 that it needed to conduct a new search.  Moreover, the communication is with Clarence Finney – who was directly involved in responding to Plaintiff's FOIA request.  *See* Discovery Order at pp. 5-6 (ECF No. 65).  As with all documents in dispute, Plaintiff has substantial need for the information, and it is otherwise unavailable.

Documents 1326, 1328 & 3636

Defendant does not establish that the two emails redacted in Documents 1326, 1328 and 3636 are protected as attorney-client communications.[10]  Ex. 1 (Docs. 1326, 1328 & 3636). State asserts the privilege because the emails "reflect Ms. Grafeld seeking legal advice from the copied State Department attorney, Joshua Dorosin."  Ex. 4 (Pltf.'s May 1 Objections).  However, it is evident that the emails reflect a back and forth discussion between Tasha Thian and Margaret P. Grafeld about departing officials in January 2013.  In fact, Dorosin never responds to Grafeld's email. Ex. 1 (Docs. 1326, 1328 & 3636).  Copying an in-house attorney on an email does not establish that the email is protected.  State should be ordered to release the information.

Document 2475

State asserts attorney-client-privilege and the work product doctrine to redact the two emails Plaintiff seeks in Document 2475. Ex. 1 (Doc. 2475).  They appear in the bottom half of the document – emails between attorneys Gary M. Stern for the National Archives and Records Administration and Richard C. Visek for State.  Clearly the email communications are not protected by the attorney-client privilege as they are with a third party. Ex. 4 (Pltf.'s May 1 Objections); Ex. 5 (Cotca May 13 Email).  The communications also cannot be shielded under the work product doctrine because Defendant has not established that the document was created in anticipation of litigation.  State references "ongoing litigation" but it does not identify the litigation it refers to.  More importantly, State does not demonstrate that communication would not have been made absent litigation.  As with Document 1040, the return of Secretary Clinton's emails is part of State's normal agency business and responsibility to manage its records.

---

[10]    The documents contain the same two emails Plaintiff seeks.  Defendant does not assert the work product doctrine over the emails.

Defendant cannot establish that the information is protected under either privilege.  To the extent the Court finds that the document is protected under the work product doctrine, which Plaintiff disputes, Plaintiff respectfully requests the Court to order Defendant to produce all fact work product reflected in the communication.  The information is relevant to the discovery authorized by the Court and Plaintiff cannot obtain it from elsewhere because it is a State document.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and order Defendant to produce to Plaintiff all information improperly withheld within short order.  At a minimum, Plaintiff respectfully requests that the Court review the unredacted documents *in camera* to determine the legitimacy of the privileges asserted.  Plaintiff narrowed the dispute to only 12 documents, which should be a minimal burden on the Court.  Furthermore, the Court has found that *in camera* review is appropriate where privilege logs and productions have been inadequate.  *Alexander v. FBI*, 186 F.R.D. 102, 112 (D.D.C. 1998).  Plaintiff does not trust the accuracy of Defendant's privilege assertions considering the many previous withholdings that have proven to lack any good faith basis.[11]

## Award of Fees and Costs

Plaintiff requests that it be awarded its attorneys' fees and costs related to the preparation, filing, and argument of this Motion.

---

[11]   Defendant previously withheld, in this discovery dispute, under the pretext of attorney-client, attorney work product and deliberative process privileges copies of Plaintiff's Complaint; Plaintiff's FOIA request in this case; Plaintiff's FOIA request in its previous talking points lawsuit; email communications between undersigned counsel and defense counsel; and electronic email notifications defense counsel received from the Court's D.C. ECF electronic system.  Ex. 5 (Cotca April 12 Ltr.; Cotca April 30 Email; Cotca May 1 Email).  This is only a sample of the documents previously wrongfully withheld, in conjunction with State's suspect redactions of "WH" in the CREW related emails. Ex. 5 (Cotca May 13 Email); *Id.*

Dated:  May 17, 2019                              Respectfully submitted,

                                                  JUDICIAL WATCH, INC.

                                                  /s/ Ramona R. Cotca
                                                  Ramona R. Cotca (D.C. Bar 501159)
                                                  425 Third Street SW, Suite 800
                                                  Washington, DC 20024
                                                  (202) 646-5172
                                                  rcotca@judicialwatch.org

                                                  *Counsel for Plaintiff*