UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE, <br><br> Defendant. | Case No. 14-cv-1242 (RCL) |

**NON-PARTY SHERYL WALTER'S MOTION TO QUASH
<u>RULE 45 SUBPOENA AND MOTION FOR A PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................. 1

    I.      Ms. Walter's Work for the State Department and its Connection to this Lawsuit ................................................................................................. 1

    II.     Ms. Walter's Cancer Diagnosis and Treatment, and Judicial Watch's Agreement to Forgo Her Deposition In Lieu of Interrogatories ............................ 3

    III.    Judicial Watch Reneges on its Agreement with Ms. Walter .................................. 6

LEGAL STANDARD........................................................................................................... 7

ARGUMENT........................................................................................................................ 8

    I.      Ms. Walter, a non-party who left her job at the State Department over five years ago, should not be deposed in a FOIA case while she is being treated for cancer ................................................................................................................ 8

    II.     Ms. Walter should not be deposed because she has little (if any) relevant information to offer, and any information that she does have is also available from other sources. ............................................................................... 10

    III.    At a minimum, the Court should order that Ms. Walter may not be deposed until she has served sworn interrogatory responses that Judicial Watch can demonstrate are insufficient. ................................................................ 14

    IV.    Ms. Walter is entitled to a stay pending the Court's consideration of this motion. ......................................................................................................... 15

CONCLUSION................................................................................................................... 15

# INTRODUCTION

Non-Party Sheryl Walter, through undersigned counsel from the United States Department of Justice (who represent Ms. Walter in connection with this matter in her official capacity as a former employee of Defendant United States Department of State ("State")), hereby moves to quash a Rule 45 subpoena served by Plaintiff Judicial Watch, Inc. ("Judicial Watch") and for a protective order. In particular, Ms. Walter seeks an order that would allow her to serve responses to sworn interrogatories in lieu of a deposition in this matter—precisely the arrangement to which counsel for Judicial Watch agreed over a month ago, before recently reneging on that agreement— as a result of Ms. Walter's ongoing cancer treatment and recovery from surgery to remove her thyroid, and because she has little (if any) relevant information to offer, all of which would be more readily available from other sources. As good cause for this motion, Ms. Walter offers the following, and is also concurrently submitting a partially sealed declaration (and an unopposed motion for leave to file that declaration under seal), which provides additional details regarding her personal medical circumstances that are inappropriate for public disclosure. Ms. Walter also respectfully requests, at a minimum, that this Court stay the effect of the outstanding Rule 45 subpoena (for a deposition noticed for June 14, 2019), until the Court is able to issue a ruling on this motion.

# BACKGROUND

I.   Ms. Walter's Work for the State Department and its Connection to this Lawsuit

Sheryl Walter is a career public servant. In December of 2011, after approximately 12 years working as an attorney at the Department of Justice, she left her position at the DOJ's National Security Division to accept the position of Director at the State Department's Office of Information Programs and Services ("IPS"). May 23, 2019 Declaration of Sheryl L. Walter

("Walter Decl.") (attached as Ex. 1), ¶ 2. Ms. Walter served as the Director of IPS for less than two-and-a-half years, from December 2011 to March 2014. *Id.* ¶¶ 2, 5. As Director of IPS, her responsibilities included:

> (1) managing State's response to records access requests made by the public (including under the Freedom of Information Act ("FOIA"), the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders and discovery requests; (2) records management; (3) privacy protection; (4) national-security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the State Department's library; and (8) technology applications that support these activities.

*Id.* ¶ 3. In March of 2014, Ms. Walter left the State Department to accept a new position as Deputy General Counsel at the Administrative Office of the U.S. Courts. *Id.* ¶ 5. In April of 2015, she was promoted to General Counsel. *Id.* Ms. Walter continues to serve, to this day, as the General Counsel of the Administrative Office of the U.S. Courts. *Id.*

Because Ms. Walter left the State Department in March of 2014—that is, before the FOIA request at issue in this lawsuit was submitted to State, before any searches were conducted, before this lawsuit was filed, and before any settlement negotiations took place—she has no personal knowledge of the events that are central to the only issue on which the Court permitted her deposition: "whether State's settlement attempts in late 2014 and early 2015 amounted to bad faith." Jan. 15, 2019 Order, ECF No. 65, at 7; *see also* Walter Decl. ¶¶ 24-25. In fact, the first time that Ms. Walter learned about former Secretary Clinton's use of a private email account to

conduct government business was when she heard about it in the news media, approximately one year after she left her job at the State Department. Walter Decl. ¶¶ 25, 41.

Nevertheless, when Ms. Walter read the Court's January 15, 2019 Order authorizing Judicial Watch to take her deposition, ECF No. 65, she immediately understood her obligation to comply fully with the Court's order, and planned to testify to the best of her recollection, under oath, about the one topic identified by the Court—even though she expected to have no testimony of value to offer to these proceedings. Walter Decl. ¶ 26. When counsel for the Government contacted Ms. Walter in February of 2019, she offered several available dates for a deposition. Ms. Walter and both parties to the case eventually agreed that her deposition would take place on April 23, 2019. Counsel for Judicial Watch then sent a notice of deposition and a Rule 45 subpoena for that date, on February 28, 2019. Original Subpoena, attached as Ex. 2. All parties then proceeded on the assumption that Ms. Walter's deposition would take place on April 23, 2019.

II. Ms. Walter's Cancer Diagnosis and Treatment, and Judicial Watch's Agreement to Forgo Her Deposition In Lieu of Interrogatories

Unfortunately, after the parties reached agreement on her deposition date, Ms. Walter received a medical diagnosis in March of 2019 that suggested she might have thyroid cancer, and that she would therefore need surgery to remove her thyroid. She was promptly scheduled for surgery, which took place on April 10, 2019. Walter Decl. ¶¶ 6-7.

Counsel for the Government first learned of Ms. Walter's diagnosis on Friday, March 29, 2019. *Id.* ¶ 28. The next business day, on Monday, April 1, 2019, at 3:50 p.m., undersigned counsel explained the situation via email to counsel for Judicial Watch, and proposed an alternative solution—interrogatories—as a compromise to accommodate all parties' interests:

3

Dear Ramona:

Unfortunately, on Friday we learned that Sheryl Walter recently received a medical diagnosis that suggests she might have thyroid cancer. She is now scheduled for surgery to remove her thyroid on April 10.

As you know, Ms. Walter is currently scheduled for a deposition in the above-captioned matter on April 23, which is just under two weeks after her surgery. For obvious reasons, she (and we) are concerned that she will not be able to adequately prepare for and sit for a deposition under these circumstances, so close in time to her surgery and during her recovery period. In addition, our understanding is that there will a period of time post-surgery during which Ms. Walter's doctors will need to modulate and adjust the drugs she will need.

Ms. Walter has asked that we contact you to see if you are willing to forego her deposition. Ms. Walter stresses that she left the Department of State on March 24, 2014, and she does not believe she has any material information that will assist these discovery efforts. Nevertheless, she would be willing to answer under oath any written questions that you have. If you are willing to accept interrogatories in lieu of a deposition under these circumstances, we would work with you to come up with an appropriate schedule for her responses that would accommodate Ms. Walter's need to recover from surgery and your interest in her testimony, during the current discovery period.

Thank you for your consideration of this request. As always, we are available to discuss further at your convenience.

Sincerely,

Stephen M. Pezzi

Ex. 3 - Email Chain re: Agreement. Just under an hour later, at 4:48 p.m., counsel for Judicial Watch responded in the affirmative—without any caveat or reservation—confirming that Judicial Watch agreed to accept the proposed accommodation:

Stephen –

I am very sorry to hear of Ms. Walter's diagnosis and we wish her a full and speedy recovery! Under the circumstances, we will forgo

4

> Ms. Walter's deposition and we will try to limit the interrogatories to as few as possible. We appreciate your assistance to come up with a schedule that will work for all parties. We can discuss further on Friday when we meet for Mr. Hackett's deposition. If you have any questions before then please let us know.
>
> Ramona R. Cotca

*Id.* At that time, counsel for Judicial Watch was fully aware that, although a substantial portion of Defendant's document production in this case was complete (and had been since March 12, 2019, with no objections from Judicial Watch), additional documents were forthcoming. Counsel for the Government thanked counsel for Judicial Watch, and told her that the Government would be informing Ms. Walter "that she can treat the Rule 45 subpoena and notice of deposition as having been withdrawn, but that she should still expect to answer interrogatories (with the precise timing to be worked out by counsel soon)." *Id.* Counsel for the Government then so informed Ms. Walter of the news: no deposition would be necessary after all. She returned her focus to her upcoming surgery, now just over a week away. Walter Decl. ¶ 29.

On April 10, 2019, as planned, Ms. Walter underwent a full thyroidectomy (*i.e.*, surgery to remove the entirety of her thyroid), along with a simultaneous radical neck dissection (*i.e.*, to remove any lymph nodes to which cancerous cells may have spread). *Id.* ¶ 7. For a period of approximately two weeks, she did not work at all, as she began her recovery from surgery, and her wound began to heal. *Id.* ¶ 12.

Unfortunately, after her surgery, Ms. Walter's doctors informed her that her laboratory results confirmed that she did, in fact, have cancer (papillary thyroid carcinoma). *Id.* ¶ 8. As a result, and as explained in greater detail in the partially sealed Walter Declaration, significant additional treatment would be required.

Consistent with her doctor's advice, Ms. Walter has now returned to work on a significantly reduced part-time schedule (typically in the office for no more than three or four hours per day), while continuing her cancer treatment. *Id.* ¶¶ 12-14. Ms. Walter has frequent doctor's appointments, sometimes multiple times per week. *Id.* ¶ 14. As her recovery and treatment continues, Ms. Walter suffers daily through substantial side effects and complications stemming from her surgery; from the medication prescribed by her team of doctors to act, essentially, as an artificial thyroid (as Ms. Walter no longer has one); and from her ongoing cancer treatment. Those side effects and complications are detailed further in the Walter Declaration.

III.  Judicial Watch Reneges on its Agreement with Ms. Walter

For reasons unknown to the Government, Judicial Watch never served any interrogatories on Ms. Walter—despite the parties' having agreed to proceed in that fashion on April 1, 2019. *Id.* ¶ 30. The next time the Government heard from Judicial Watch regarding Ms. Walter was May 8, 2019—and, much to the Government's surprise, counsel was not writing about interrogatories. Instead, counsel for Judicial Watch was now demanding (on a 24-hour turnaround) proposed dates for Ms. Walter's deposition, vaguely suggesting that recent document productions from State had somehow changed Judicial Watch's calculus. Ex. 4 – Email Chain re: Meet and Confer. Counsel for the government then approached Ms. Walter once again with this news, and inquired again about her current medical status. As described above (and in her declaration), Ms. Walter reported that, if anything, her medical situation had worsened, as a result of the now-confirmed cancer diagnosis and accompanying need for additional treatment, which was now underway while she continued to recover from surgery. Walter Decl. ¶¶ 32-33.

The parties conferred regarding the issue via email on several occasions, in which counsel for the Government reminded counsel for Judicial Watch of the parties' agreement, reiterated Ms.

Walter's willingness to respond to sworn interrogatories, and requested several times that Judicial Watch at least proceed *first* by receiving sworn interrogatory responses, before considering whether they believe a deposition is truly necessary in this circumstance. Counsel for the Government (with Ms. Walter's permission[1]) also updated Judicial Watch about Ms. Walter's medical situation at a high-level: confirming that Ms. Walter did, in fact, have cancer, and that additional treatment would now be required.

Counsel for Judicial Watch ultimately responded by serving a Rule 45 subpoena, commanding Ms. Walter to appear for an in-person deposition in less than a month, on June 14, 2019. Ex. 5 – New Subpoena. Counsel for the Government then confirmed that a motion to quash and for a protective order was forthcoming, absent immediate withdrawal of the subpoena. Pursuant to Local Rule 7(m), counsel for Judicial Watch reported that Plaintiff opposes the motion to quash and for a protective order, but does not oppose the motion for leave to file Ms. Walter's private medical information under seal. Counsel for Judicial Watch also reported that Plaintiff opposes Ms. Walter's request that the effect of the Rule 45 subpoena (for a deposition to be held on June 14, 2019) be stayed at least until the Court is able to issue a ruling on this motion.

As of this filing, Judicial Watch has refused to withdraw its subpoena to Ms. Walter.

## **LEGAL STANDARD**

The Court has wide discretion and "should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). In particular, Federal Rule of Civil Procedure 26(b) directs a district court to limit the scope of discovery if "the discovery

---

[1] Ms. Walter has authorized counsel for the Government to reveal publicly all of the medical information that appears in this motion and in the publicly filed (and partially redacted) version of the Walter Declaration. *Id.* ¶ 33. As explained further in Defendant's motion for leave to file an unredacted version of the Walter Declaration under seal, Ms. Walter has asked that any additional detail about her personal medical circumstances be filed only under seal.

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  Courts therefore have discretion to issue a protective order under Federal Rule of Civil Procedure 26(c) upon a showing of good cause in order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (stating that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"); *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007) ("Rule 26 'vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'" (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998))).  This discretion includes orders forbidding the requested discovery altogether.  Fed. R. Civ. P. 26(c)(1)(A); *see also St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. 2011) (stating that a protective "order may forbid disclosure altogether").

Although district-court discretion to manage the discovery process is broad, "[a] court . . . *must* quash or modify a subpoena that . . . [would] 'subject[ ] a person to undue burden.'" Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).  And in applying these standards, courts are particularly solicitous to the burdens imposed on non-party witnesses. *See, e.g.*, *Millennium TGA, Inc. v. Comcast Cable Communications LLC*, 286 F.R.D. 8, 2012 WL 2371426, at *11 (D.D.C. 2012) (courts must be sensitive to costs and burdens imposed on third parties in discovery).

## ARGUMENT

### I. Ms. Walter, a non-party who left her job at the State Department over five years ago, should not be deposed in a FOIA case while she is being treated for cancer.

After having already agreed that this deposition was unnecessary given Ms. Walter's medical condition, Judicial Watch is now attempting to renege on that agreement, in order to depose a non-party cancer patient in a FOIA case.  That is unconscionable.  Ms. Walter is receiving

8

ongoing treatment for thyroid cancer, as she continues to recover from a full thyroidectomy with a radical neck dissection. As a result of the combination of her recent surgery, her cancer diagnosis, and her medication (to which she is still adjusting and modulating, with constant input from her team of doctors), Ms. Walter suffers from constant and substantial side effects and medical complications, which would make it extraordinarily burdensome to require her to prepare for and sit for a deposition.

Courts have quashed deposition subpoenas in analogous circumstances—even where, unlike here, the prospective deponent is a party to the case. *See, e.g.*, *In re Tutu Water Wells Contamination CERCLA Litig.*, 189 F.R.D. 153, 157 (D.V.I. 1999) (second deposition of defendant, "a man with health problems in his 70's" who "was not getting any younger or healthier" was unwarranted, given the defendant's frail medical condition); *United States v. Mariani*, 178 F.R.D. 447, 451 (M.D. Pa. 1998) (granting motion for a protective order to preclude deposition of a defendant who was "terminally ill with severe coronary artery disease and congestive heart failure"). And the showing required by a non-party witness, like Ms. Walter, is substantially lower. *See, e.g.*, *Campos v. Webb Cty. Tex.*, 288 F.R.D. 134, 137 (S.D. Tex. 2012) (issuing an order to stay (rather than to completely preclude) deposition of the only plaintiff, reasoning that "[i]n the cases the Court has found in which a protective order completely proscribing a deposition is issued, there appears to be a clear distinction from the present case," as "[t]hose cases prohibit the deposition of a witness, rather than that of a party").

Although additional specificity about Ms. Walter's private medical information cannot be shared on the public docket, the unredacted version of Ms. Walter's declaration details the specific medical burdens that she is currently facing, and why forcing her to sit for a deposition at this time would be inappropriate. But those details should never have been necessary for Judicial Watch to

agree to forgo Ms. Walter's deposition under these circumstances. In fact, they were apparently not necessary to Judicial Watch less than two months ago, when counsel for Judicial Watch responded immediately to counsel for the Government's initial request to accommodate Ms. Walter's circumstances, by offering Judicial Watch's full and unreserved agreement.

Importantly, at that time, Judicial Watch was fully aware that it did not have all of the documents that the Government intended to produce in this case. If Judicial Watch believed that Ms. Walter's medical circumstances needed to be balanced against Judicial Watch's interest in her testimony, Judicial Watch could have (1) refused outright the Government's offer of interrogatories; (2) asked for more time to consider the offer after reviewing the Government's past or future document productions; (3) tentatively accepted the offer, but reserved the right to revisit the question if the future document productions (which they knew were forthcoming) somehow changed their views on Ms. Walter's significance to the case; or (4) asked for additional detail about Ms. Walter's medical circumstances before responding to the Government's offer. Judicial Watch did none of those things. Instead, counsel for Judicial Watch agreed immediately and unreservedly to the Government's proposed accommodation: that Ms. Walter be permitted to respond by interrogatory instead of a deposition. As a result, Judicial Watch should not be heard now to claim that Ms. Walter's medical circumstances are somehow but one factor to be considered, or weighed against any other interests that Judicial Watch has belatedly advanced to reopen the question of Ms. Walter's deposition.

**II. Ms. Walter should not be deposed because she has little (if any) relevant information to offer, and any information that she does have is also available from other sources.**

Even setting aside the compelling medical justifications for relieving Ms. Walter of the mental and physical burden of preparing for and sitting for an in-person deposition—after having

already been told, unequivocally, that she would not need to endure that experience—Ms. Walter's deposition is also entirely unnecessary as a matter of routine discovery principles.

Based upon Judicial Watch's representation that Ms. "Walter was involved in the processing of FOIA requests pertaining to Secretary Clinton's email in 2014, including the CREW FOIA request," Pl.'s Proposed Discovery Plan, ECF No. 62, at 3, the Court originally ordered (over the Government's objection) that Ms. Walter be deposed on one of the three topics of discovery that the Court has authorized in this FOIA case: "whether State's settlement attempts in late 2014 and early 2015 amounted to bad faith." Jan. 15, 2019 Order, ECF No. 65, at 7.

But as Judicial Watch was informed in early April of 2019, Ms. Walter left the State Department in March of 2014. Accordingly, she has *no personal knowledge whatsoever* of the State Department's processing of the FOIA request at issue in this case (submitted in May of 2014), this FOIA lawsuit (filed in July of 2014), or any settlement efforts in this litigation. So to the extent Ms. Walter has any relevant information to offer at all, it is necessarily quite peripheral.

To the extent the Government can discern it, Judicial Watch's theory appears to be as follows: (1) Ms. Walter was involved in the State Department's processing of an entirely separate FOIA request, submitted by Citizens for Responsibility and Ethics in Washington ("CREW") in December of 2012; (2) Ms. Walter allegedly spoke directly to the White House about State's processing of the CREW request; and (3) this information will shed light on whether subsequent litigation decisions in *this* matter—made by the State Department after Ms. Walter had already left the agency—were made in good faith.

This theory is deeply flawed as a matter of logic, and appears to be factually inaccurate in material respects. First, as Ms. Walter makes clear in her sworn declaration, although she did have supervisory authority over the processing of tens of thousands of FOIA requests as Director of

11

IPS, including the CREW request, she has no recollection of any work that she did in supervising State's processing of the CREW request. Walter Decl. ¶ 35. That should come as no surprise, as the idea that the topic of personal email usage by the Secretary of State would come to dominate American political discourse for years to come was entirely unpredictable in 2012 and 2013—at least to Ms. Walter, who had no idea that Secretary Clinton had been conducting government business on a private email account until she learned about it through the news media after leaving the State Department. *Id.* ¶ 41.

Ms. Walter also makes clear in her declaration that she does not recall *ever* speaking to the White House about *any* particular FOIA request, let alone about this particular request from CREW. *Id.* ¶¶ 36-38. And Ms. Walter's recollection (or lack thereof) is corroborated by the documents produced by the Government to Judicial Watch, which suggest that although there appears to have been some White House-to-State Department communications about the CREW request (seemingly a result of CREW having sent essentially identical FOIA requests to multiple agencies across the Executive Branch), there is no reason to believe that *Ms. Walter*—rather than, say, Heather Samuelson, who appears on the same email discussions produced to Judicial Watch, and whose title at the State Department was Senior Advisor & White House Liaison—would have been the one to actually communicate with the White House about a subject like this. *See, e.g.*, Ex. 6 - Bates 898 (Jan. 10, 2013 Email from H. Samuelson to S. Walter, copying K. Finnegan, J. Davis, G. Smilansky: "White House Counsel was locking [sic] into this for me . . . I will circle back with them now to see if they have further guidance."); *id.* (Jan. 26, 2014 Email from H. Samuelson to S. Walter, copying K. Finnegan, J. Davis, G. Smilansky: "I heard back from WHC.").

Assuming that Ms. Samuelson spoke to the White House about the CREW request, as these documents appear to suggest, Ms. Walter does not recall having ever had any conversations with Ms. Samuelson about any conversations with the White House, or about the CREW request in general, or about any other FOIA request—in fact, Ms. Walter does not even remember who Heather Samuelson is.  Walter Decl. ¶ 39.  And whatever conversations Ms. Walter may have had over the years—even those, if any, she may now have forgotten, half-a-decade later—they would presumably not have been on the subject of the use of a private email server by the Secretary of State, because Ms. Walter learned about that subject for the first time in the press.  Walter Decl. ¶ 41.  And Ms. Walter's review of the documents in question failed to refresh her recollection on any of the subjects that Judicial Watch is focused on.  *Id.* ¶ 40.

In short, the basic factual premises of Judicial Watch's claimed need for Ms. Walter's testimony has eroded, as Judicial Watch appears to have drawn mistaken inferences about a handful of documents on the subject of the processing of an entirely separate FOIA request.  But whatever Judicial Watch's theory, Ms. Walter will have no ability to shed further light on any of these facts, given her (unsurprising) lack of any recollection whatsoever about the processing of this one particular FOIA request from CREW—just one of the tens of thousands of requests that she supervised while Director of IPS.

What is more, Judicial Watch will have the opportunity to question other witnesses about this precise topic, including but not limited to former State Department "White House Liaison" Heather Samuelson (scheduled for deposition in this case on June 13, 2019); and State Department Attorney-Advisor Gene Smilansky (scheduled for deposition on June 11, 2013).  That makes Ms. Walter a comparatively inferior source of testimony regarding the processing of the CREW request, especially given her lack of any meaningful recollection of these subjects.  For these

13

reasons, even if Ms. Walter were not receiving medical treatment that Judicial Watch had already agreed justified forgoing her deposition, this deposition would still be unnecessary.

### III. At a minimum, the Court should order that Ms. Walter may not be deposed until she has served sworn interrogatory responses that Judicial Watch can demonstrate are insufficient.

Given Ms. Walter's indirect connection (if any) to the events giving rise to discovery in this FOIA case, which generally post-date Ms. Walter's departure from the State Department, as well as her recently confirmed lack of recollection about even the peripheral subject about which Judicial Watch and this Court once thought that she could testify (*i.e.*, the CREW FOIA request), the compromise offered by the government, and previously accepted by Judicial Watch, is more than reasonable. Instead of a deposition, Ms. Walter has agreed to answer interrogatories, in writing and under oath. That accommodation is more than sufficient to confirm Ms. Walter's understanding (if any) of whatever events within the scope of permissible discovery that Judicial Watch would like to ask her about—and it is an accommodation to which Judicial Watch *already agreed* without reservation, before recently reneging on that commitment. Importantly, this would allow Ms. Walter to provide any information that she may have that is relevant to this court-ordered discovery, without being forced to sit through a deposition that would be both physically and mentally taxing to someone receiving ongoing cancer treatment, recovering from major surgery, and taking a variety of potent medications.

Accordingly, at an absolute minimum, Judicial Watch should be required to *first* serve interrogatories on Ms. Walter and review her sworn responses before pursuing a deposition. If, contrary to the Government's expectations, Ms. Walter's responses are somehow insufficient to demonstrate her minimal involvement and lack of recollection of the subjects of discovery in this case, then Judicial Watch can re-raise the issue of a deposition at that time (although both the

14

Government and Ms. Walter respectfully reserve their rights to continue to object to a deposition, especially given the high likelihood that Ms. Walter will still be receiving cancer treatment at that time, *see* Walter Decl. ¶ 20).

### IV.     Ms. Walter is entitled to a stay pending the Court's consideration of this motion.

The Court should promptly stay the effect of the outstanding Rule 45 subpoena for Ms. Walter's deposition testimony (currently scheduled for June 14, 2019) pending the Court's consideration of this motion. As detailed above and in the Walter Declaration, significant medical obstacles would prevent Ms. Walter from either adequately preparing for or sitting for a deposition on June 14, 2019. For those reasons, and because Ms. Walter has no relevant recollection to offer—and certainly nothing that is unavailable from other sources, including other deponents in this litigation and interrogatory responses from Ms. Walter herself—the Government is likely to prevail on this motion. Absent prompt relief or an order staying the effectiveness of the subpoena, Ms. Walter will face continued uncertainty as to the scope of her obligations, which is itself an inappropriate burden on a non-party who is undergoing serious cancer treatment, and who had already been told, unequivocally, that her deposition would not be necessary. The balance of equities therefore strongly favors Ms. Walter's position, and at least counsels in favor of a temporary stay to allow the Court to meaningfully consider her reasonable request for relief. Judicial Watch, on the other hand, will suffer no prejudice from a temporary stay while the Court considers this motion, as Ms. Walter recalls nothing of significance that will assist in these proceedings.

### CONCLUSION

For these reasons, and for the reasons stated in the Walter Declaration, Non-Party Sheryl Walter respectfully requests that the court issue a protective order precluding her deposition in this

15

case absent further order of the Court, and that the Court issue an order to quash Judicial Watch's subpoena for her deposition testimony (currently scheduled for June 14, 2019). Ms. Walter also requests that this Court stay the effect of the outstanding Rule 45 subpoena (for a deposition noticed for June 14, 2019), until the Court is able to issue a ruling on this motion.

Dated: May 23, 2019					Respectfully submitted,

							JOSEPH H. HUNT
							Assistant Attorney General

							ELIZABETH J. SHAPIRO
							Deputy Branch Director

							/s/   *Stephen M. Pezzi*
							ROBERT J. PRINCE (D.C. Bar No. 975545)
							Senior Trial Counsel
							STEPHEN M. PEZZI (D.C. Bar No. 995500)
							Trial Attorney
							United States Department of Justice
							Civil Division, Federal Programs Branch
							1100 L Street NW
							Washington, DC 20005
							Phone: (202) 305-8576
							Fax: (202) 616-8470
							Email: stephen.pezzi@usdoj.gov

							*Attorneys for Defendant United States Department of State, and for Non-Party Sheryl Walter (in her Official Capacity as a Former Employee of the United States Department of State)*