IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.

*Plaintiff,*

v.

U.S. DEPARTMENT OF STATE,

*Defendant.*

Civil Action No. 14-cv-1242 (RCL)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ........................................................................................................... 3

   I.  **LEGAL STANDARD** ............................................................................... 3

     A.  Attorney-Client Privilege.................................................................... 3

     B.  Work-Product Doctrine........................................................................ 6

  II.  **STATE'S ASSERTIONS OF THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION ARE PROPER** ........................ 8

     A.  CREW-Related Documents (Bates 896, 897, 899, 900, 901, 902)............................. 8

       1.  Bates 896........................................................................... 8

       1.  Bates 897........................................................................... 11

       2.  Bates 899........................................................................... 13

       3.  Bates 900........................................................................... 15

       4.  Bates 901........................................................................... 16

       5.  Bates 902........................................................................... 17

     B.  Other Documents (Bates 21, 76, 187 & 206, 1040, 1326, 1328, 3636) .................... 20

       1.  Bates 21............................................................................. 20

       2.  Bates 76............................................................................. 23

       3.  Bates 187 and 206................................................................ 24

       4.  Bates 1040.......................................................................... 25

       5.  Bates 1326, 1328, and 3636................................................... 29

       6.  Bates 2475.......................................................................... 30

CONCLUSION ...................................................................................................... 35

## INTRODUCTION

Plaintiff Judicial Watch, Inc. challenges modest redactions made by the Department of State to twelve documents on the basis of the attorney-client privilege and the work product doctrine.   Plaintiffs' motion primarily expresses dissatisfaction with the sufficiency of the descriptions on State's privilege logs.  But even a cursory review of the privilege logs reveals that State has described the basis for the redactions with as much detail as it could without revealing the privileged materials, and in all circumstances provided sufficient information to allow Judicial Watch to assess the validity of the privilege assertions.   And any doubt about the propriety of State's privilege assertions is laid to rest by the declaration of Principal Deputy Legal Adviser Richard Visek (attached as Exhibit 1), who explains the context in which each of these documents were created and provides a factual basis for why these narrow redactions were appropriate.

Judicial Watch's motion also reveals a fundamental misunderstanding about a number of these documents.  For example, Judicial Watch spills significant ink contending that some of the redactions would reveal improperly withheld communications between the State Department and the White House concerning then-Secretary of State Clinton's email usage.  But as explained in detail below, these emails (and redactions) contain no such thing.  Judicial Watch simply finds no support in the challenged documents for its theories.

Judicial Watch further makes the unadorned claim that they have need sufficient to overcome the work product doctrine.  But Judicial Watch fails to meet its burden based on its generic claim of need for work product in this Freedom of Information Act case in which the Court has permitted narrow discovery.

At bottom, the State Department has been exceedingly judicious in its redactions for privilege and work product protection, and Judicial Watch's motion to compel fails to establish that any of those redactions were improper.  Judicial Watch's motion should be denied.

# BACKGROUND

Plaintiff served six requests for the production of documents on January 15, 2019.  In response, State engaged in a robust collection, review, and document production process.  In total, State has produced 2,455 documents as part of discovery in this Freedom of Information Act ("FOIA") case, and served 419 pages of privilege log entries.

On April 12, 2019, one month after State had served its written responses and objections and made its first production (which completed State's response to five out of six of Plaintiff's document requests), Plaintiff raised objections to certain of State's withholdings and redactions.  Plaintiff initially identified 268 documents about which it either disagreed with State's privilege assertions, or requested additional information to substantiate the claims.

State promptly responded to Plaintiff's questions and concerns,[1] and ultimately re-reviewed all 268 documents in question and provided a supplemental production (with a 95-page supplemental privilege log) shortly thereafter.  Although State maintains that all of its original privilege determinations (and privilege log entries) were proper and sufficient, that supplemental production included releasing redacted versions of documents that had been withheld in full, releasing less-redacted versions of documents that had previously been more heavily redacted, and producing some documents in full that had previously been redacted or withheld.  As part of that supplemental production, State voluntarily withdrew certain privilege assertions, as a matter of its discretion, in the interest of compromise and avoiding unnecessary litigation.  *See* Ex. 6, Apr. 26, 2019 Ltr. From S. Pezzi to R. Cotca re: Supplemental Production.  Ultimately, the parties were able to negotiate the universe of disputed documents down to a total of 12, which are now the subject of Judicial Watch's motion to compel, ECF No. 102 ("MTC").  These challenged

---

[1] Judicial Watch attached to its motion to compel a copy of its April 12, 2019 letter to State first raising objections, but did not attach State's April 19, 2019 response to Judicial Watch's letter. Although nearly all of the issues discussed in those letters have now been resolved by the parties without court intervention, State attaches its responsive letter here, as Exhibit 5, in the interest of completeness.

redactions and withholdings are based exclusively upon the attorney-client privilege and/or the work product doctrine.

ARGUMENT

State has withheld information from the twelve documents at issue here under the attorney-client privilege and the work product doctrine.  In addition to the privilege log reflecting these 12 documents, which is attached as Exhibit 6 to Plaintiff's Motion to Compel (ECF No. 102-6) ("Supplemental Privilege Log or "Supp. Priv. Log"), the attached Declaration of Richard Visek, Acting Legal Adviser for State (Exhibit 1), describes the facts upon which those assertions are based and, together with the analysis below, demonstrates the propriety of each of the narrow withholdings at issue here.  Plaintiff's arguments to the contrary are based largely on far-too-narrow interpretations of the work-product doctrine and the attorney-client privilege.

## I.      LEGAL STANDARD

### A.      Attorney-Client Privilege

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, (1981).  The privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn*, 449 U.S. at 389).  "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).  The attorney-client privilege is not restricted to clients who are individuals; entities such as State may also assert it over communications between its attorneys and its employees or agents. *Upjohn*, 449 U.S. at 394 (in the context of corporations); *Ctr for Biological Diversity v. EPA*, 279 F. Supp. 3d

121, 145 (D.D.C. 2017) (holding that the attorney-client privilege applies to governmental clients) (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011)).

The privilege applies not only to communications from attorneys that provide legal advice, but also to communications from attorneys to clients seeking facts necessary to provide legal advice and communications from clients to attorneys.  In the latter case, the privilege applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984) (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358–59 (D. Mass. 1950)).  This Court has stated this test as follows: "the essential elements a party must provide to sustain a claim of attorney-client privilege are: (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared or dated."  *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000).

The attorney-client privilege also covers opinions given by an attorney to a client based on those facts, and "communications between attorneys that reflect client-supplied information." *Judicial Watch, Inc. v. Dep't of the Army*, 466 F. Supp. 2d 112, 121 (D.D.C. 2006); *Judicial Watch, Inc. v. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (applying privilege to documents written by agency attorneys to superiors describing advice given to clients within agency).  Because "advice prompted by the client's disclosures may be further and inseparably informed by other knowledge and encounters," "the privilege cloaks a communication from

4

attorney to client 'based, *in part at least*, upon a confidential communication [to the lawyer] from [the client].'" *In re Sealed Case*, 737 F.2d at 99 (quoting *Brinton v. Department of State*, 636 F.2d 600, 604 (D.C. Cir. 1980), *cert. denied*, 452 U.S. 905 (1981)) (emphasis added in original). More specifically, when a communication is made for more than one purpose, the privilege applies so long as "obtaining or providing legal advice was one of the significant purposes of the attorney-client communication." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014). For example, the privilege applies to attorney-client communications made in the context of an internal investigation required by federal regulations conducted as part of a mandatory compliance program, despite compliance being a separate, equally important purpose of the communications. *Id.*; *cf.* Andy Liu et al., *How To Protect Internal Investigation Materials from Disclosure*, 56 Government Contractor ¶ 108 (Apr. 9, 2014) ("Helping a corporation comply with a statute or regulation—although required by law—does not transform quintessentially legal advice into business advice.").

Confidential communications by attorneys seeking facts from employees of the client are also protected by the privilege. *Upjohn*, 449 U.S. at 394. This is true even when the communication is sent to a large number of employees. In *Upjohn*, the Supreme Court determined that a document sent by Upjohn's General Counsel to Upjohn employees worldwide was protected by the privilege. *Id.* at 395. The document contained both a questionnaire seeking facts so that the General Counsel could determine if certain payments had been legally made, as well as a legal policy statement requiring that certain future agreements had to be approved by a company attorney. *Id.* at 394-95. The Supreme Court rejected the lower court's decision to restrict the attorney-client privilege beyond Upjohn's "control group." *Id.* at 395. The Supreme Court found that protecting the document from disclosure would not "create a broad 'zone of silence' over corporate affairs." *Id.* (quoting *United States v. Upjohn Co.*, 600 F.2d 1223, 1227 (6th Cir. 1979)). In so finding, the Court noted that "[a]pplication of the attorney–client privilege to

communications such as those involved here . . . puts the adversary in no worse position than if the communications had never taken place." *Id.*

### B.     Work-Product Doctrine

"The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3); citing *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C.Cir.1997)).[2]  Absent the work-product doctrine, "much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served." *Id.* at 370 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

The "doctrine should be interpreted broadly and held largely inviolate." *Judicial Watch*, 432 F.3d at 369.  "Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work-product doctrine." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 69 (D.D.C. 2017) (quoting *Tax Analysts*, 117 F.3d at 620).  A document covered by the work-product doctrine "will retain its protected status even in subsequent, unrelated litigation.  *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (citing *FTC v. Grolier Inc.*, 462 U.S. 19, 27–28 (1983)).

"[A] document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation."

---

[2] The court in *Judicial Watch* evaluated the work-product doctrine in the context of Exemption 5 of the Freedom of Information Act.  But the scope of a discovery privilege should be given "the same meaning" in "both the discovery and FOIA contexts," even though FOIA and discovery analyses diverge after a determination that particular information is privileged.  *See Zander v. DOJ*, 885 F. Supp. 2d 1, 15 (D.D.C. 2012) (with respect to attorney-client privilege).

*United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010).  The document need not have been "prepared for use in possible litigation" to be protected work product.  *Id.* (noting that whether or not a document was "prepared for use in possible litigation" is a "much more exacting standard" than the "because of" test).  Nor must the party asserting work product protection identify any specific claim that had arisen at the time the documents were prepared.  *In re Sealed Case*, 146 F.3d at 885 (citing *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992)).  The doctrine applies "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation."  *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).  Demonstrating that a party's attorney had "a subjective belief that litigation was a real possibility" and that the belief was "objectively reasonable" suffices to show that litigation was reasonably anticipated.  *In re Sealed Case*, 146 F.3d at 884.

In limited circumstances, some documents covered by the work-product doctrine may be discovered.  A party seeking such discovery has the burden of showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  To meet this burden, the moving party must demonstrate "that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself."  *Boehringer Ingelheim*, 778 F.3d at 155.  Even if a party makes a sufficient showing, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  Such information "is virtually undiscoverable."  *Deloitte*, 610 F.3d at 138, (quoting *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C.Cir.1997)).

## II.   STATE'S ASSERTIONS OF THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION ARE PROPER

### A.   CREW-Related Documents (Bates 896, 897, 899, 900, 901, 902)

#### 1.   Bates 896

Plaintiff challenges a redaction in the most recent email in this chain, which was sent on March 5, 2013 from State Department Attorney-Adviser Jonathan Davis, to Heather Samuelson, copying Brock Johnson, Joshua Dorosin (also an attorney, who was then the Assistant Legal Adviser supervising the Legal Adviser's Office of Management), Sheryl Walter, and Karen Finnegan.  As explained in State's Supplemental Privilege Log and in further detail in the Visek Declaration, this email chain reflects discussion between a group of State FOIA professionals and State attorneys about the processing of a new FOIA request that had been received by the Department in December of 2012: the CREW FOIA request.  The entire email chain has now been produced, with the exception of one challenged redaction (that is, the second half of the second sentence of the March 5, 2013 email from Mr. Davis to Ms. Samuelson and others).[3]  The challenged redaction is properly withheld under both the attorney-client privilege and the attorney work product doctrine, and Judicial Watch's arguments to the contrary are without merit.

*Attorney-Client Privilege.*  As for the attorney-client privilege, the email was authored by Jonathan Davis, a State Department Attorney-Adviser, and the redacted information reflects a confidential attorney-to-client communication about how the Department should handle the CREW request.  As is clear from the unredacted portion of the email, in which Mr. Davis says that he "understand[s] that the next step is [redacted]," Mr. Davis is, in his capacity as an attorney,

---

[3] As Plaintiff noted in its motion to compel, MTC at 8, a portion of a February 14, 2013 email from Sheryl Walter to Heather Samuelson, over which State had only asserted the deliberative-process privilege, inadvertently remained redacted in State's May 6, 2019 production, even though State had already informed Judicial Watch that State intended to withdraw all of its assertions of the deliberative-process privilege contained within the 12 documents still in dispute. Accordingly, State has now produced to Judicial Watch another version of this document with that redaction removed, which is attached to this filing as Exhibit 2.

conveying the Legal Adviser's Office of Management's position as to what should happen next, in the future, regarding the processing of this FOIA request.  *See* Visek Decl. ¶ 29.  That statement about a possible future action to be taken by State in processing this request necessarily reflects an application of legal judgment to the situation at hand (by Mr. Davis and his other colleagues within the Office of the Legal Adviser), as confirmed by the Visek Declaration.  *See id.*  Therefore, as a confidential communication from an attorney (Mr. Davis) to representatives of his client (*i.e.*, to various attorney and non-attorney State Department officials), for the purpose of sharing legal advice regarding the processing of the CREW FOIA request, the redacted information is properly withheld under the attorney-client privilege.

Judicial Watch argues that State's "privilege description is general and conclusory," MTC at 8-9, but it could not be more detailed without revealing privileged information, and it has now been supplemented further by this filing and the accompanying Visek Declaration.  *See* Visek Decl. ¶ 29; *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii) (stating that a privilege log must "describe the nature of the document . . . without revealing information itself privileged or protected.").  Judicial Watch also argues that "State does not make a showing that any confidential information has been held in confidence and not waived," MTC at 9, but the Visek Declaration confirms that appropriate confidences have been maintained (for this document and every other).   Visek Decl. ¶ 3.

Finally, Judicial Watch argues that "[t]o the extent the information reflects facts learned from communications with the White House, those facts are also not protected by the attorney-client privilege."  MTC at 9.  To be sure, although "facts" standing alone are not privileged, State is not protecting "facts" here; State is protecting confidential attorney-client communications for the purposes of providing legal advice, which are privileged (even if they include discussion of otherwise non-privileged "facts").  *FTC v. Boehringer Inglheim Pharm., Inc.*, 180 F. Supp. 3d 1, 30 (D.D.C. 2016) (holding that facts collected at counsel's request for later use in providing legal advice are protected by the attorney-client privilege).  In any case, although State cannot reveal

the substance of this communication without waiving the privilege, as confirmed by the Visek Declaration, the redacted sentence in this document, on its face, does not "reflect[] facts learned from communications with the White House."  Visek Decl. ¶ 5.

*Attorney Work-Product Doctrine*.  The challenged redacted sentence is also protected by the attorney work-product doctrine because, as explained in State's privilege logs and in the Visek Declaration, the email was prepared by Mr. Davis in reasonable anticipation of future litigation concerning the processing of the CREW FOIA request, litigation which did in fact later occur—in multitudes, including but not limited to this very lawsuit, even though CREW itself did not file a FOIA lawsuit over that particular request.

Judicial Watch contests the premise that the communication was made "in reasonable anticipation of litigation."  MTC at 9.  First, Judicial Watch argues, without any legal support, that "[m]erely stating [that a document was created in anticipation of litigation] in the privilege log is not enough."  MTC at 9.  Plaintiff is mistaken, and fails to appreciate that this is precisely what is required for a privilege log that identifies withholdings based on the work product doctrine.  But as confirmed by the Visek Declaration, the mere fact that Mr. Davis was involved *at all* in discussions about the processing of this FOIA request confirms that he and the other State officials and attorneys on this email chain subjectively and reasonably anticipated that the processing of this FOIA request was likely to lead to litigation.  *See* Visek Decl. ¶ 4.  That is because State Attorney-Advisers, from the Legal Adviser's Office of Management, generally do not provide legal advice on the processing of FOIA requests unless litigation has been initiated or is anticipated.  *Id.*  And here, that prediction—which in fact, turned out to be true (albeit litigation with plaintiffs other than CREW)—was eminently reasonable.

By the time Mr. Davis authored this email, more than 20 days had passed without a response to the litigious requester, CREW.  *See id.* ¶ 29.  As Judicial Watch and this Court are well aware, the *modus operandi* of certain organizations, of which CREW is one of many examples, is

to file FOIA requests on subjects that they believe will be of interest to the public, their membership, and their donors, and then sue in district court when they fail to receive a response that they consider to be timely and adequate.  The fact that CREW does not *always* sue (and did not sue State over this particular request) does not change the fact that litigation was reasonably anticipated in this case, and in every case in which the State Department saw fit to assign an attorney to assist with the processing of the request.

Judicial Watch is correct that the participants of this email may not have anticipated, in late 2012 and early 2013, the *extent* of the litigation that would eventually ensue on the issue of the processing of this FOIA request (including but not limited to this very discovery, in another FOIA matter), but the fact that *more* litigation resulted than expected does not suggest that State's judgment that at least *some* litigation was likely to occur was unreasonable—if anything, just the opposite.  And given the status of the CREW request at the time (more than 20 days had passed), the subject-matter of the request (the Secretary of State), and the identity of the requester (CREW), the judgment that litigation was likely was entirely reasonable.  *See id.* ¶ 29.

### 1.    Bates 897

At the outset, clarification regarding the scope of Plaintiff's challenges to this document is necessary.  According to Plaintiff's motion to compel, although there are several redactions in this document (all of which Plaintiff discusses in the motion), Plaintiff is apparently only challenging one: "Without waiving any objections, Plaintiff only seeks the names of the attachments at this time."  MTC at 11.  So despite Plaintiff's discussion of other redactions in this document, the only redaction it challenges in its motion to compel is the redaction of the names of the attachments to State Department Attorney-Adviser Gene Smilansky's August 8, 2014 email.

That redaction is justified, under both the attorney-client privilege and the attorney work-product doctrine.  This is an email from one State Department Attorney-Adviser (G. Smilansky) to another State Department Attorney-Advisor (J. Bair).  Revealing the information

beneath that redaction would provide Judicial Watch a window into the legal judgment being exercised by Mr. Smilansky in representing his client on matters for which litigation was reasonably anticipated, in connection with former Secretary Clinton's records-management practices.  This particular redaction concerns the attachments' filenames, the disclosure of which would allow Judicial Watch to see what specific documents and information were relevant (in Smilansky's view) to this privileged discussion, between attorney and client, about how State had processed a different FOIA request in the past relating to Secretary Clinton's emails, and how the processing of that older request might relate to more recent developments that at least potentially involved the records of former Secretary Clinton.  *See* Visek Decl. ¶¶ 30-31

Although Judicial Watch contends that it is only challenging the redacted attachment name, it (inconsistently) claims that other redactions in this document are inappropriate.  Given the lack of clarity in Plaintiff's argument, State also addresses the appropriateness of the other redactions in this document.  Judicial Watch complains that State's privilege logs "do[] not claim that the release of Finney's [Aug. 8, 2014] email would reveal confidential facts provided by the client for purposes of seeking legal advice," MTC at 10, and that, therefore, the information cannot be privileged.  Although, contrary to the suggestion in Judicial Watch's motion, that is plainly not the only circumstance in which a client-to-attorney email can be protected by the attorney-client privilege; in fact, releasing this information *would* "reveal confidential facts provided by the client for purposes of seeking legal advice," as confirmed by the Visek Declaration.  *See* Visek Decl. ¶ 30.  That is sufficient to dispose of Judicial Watch's argument about the Finney email.  The Visek Declaration also confirms that the information has been held in confidence.  *Id.* ¶ 3.

Finally, the attorney work-product doctrine also protects both the Finney email and the Smilansky email in this chain.  As explained above and in the Visek Declaration, the only reason this email chain includes two State Department Attorney-Advisers discussing the processing of

FOIA requests is because the FOIA requests in question were the sort of FOIA requests for which litigation was reasonably anticipated, *id.* ¶ 4.[4]

### 2.    Bates 899

Only two redactions in this document remain in dispute, both in emails authored by State Department Attorney-Adviser Jonathan Davis, and sent to State (non-attorney) official Brock Johnson (also copying attorneys Gene Smilansky and Joshua Dorosin, among a variety of other non-lawyer State officials).[5]   At the outset, Judicial Watch makes several erroneous factual and legal assumptions about the document, which warrant correction.  Judicial Watch claims that "a review of the document confirms that the information concerns internal deliberations and discussions with the White House," and that "[i]t is apparent that these redactions concern State's communications with the White House about the CREW FOIA request."  MTC at 12, 13; *see also id.* at 12 ("[T]he email exchange appears to be about the status of the request and discussions with the White House. . . They are not protected by the attorney-client privilege.").  The reason for Judicial Watch's apparent confidence that the redactions protect information relating to the White

---

[4] Judicial Watch asserts in a footnote that State had previously withheld other information from this document under the deliberative-process privilege, and that those withholdings were "later found to be inappropriate."  MTC at 11 n.7.  That is inaccurate; there has never been any such finding.  In fact, those previous deliberative-process assertions—recently withdrawn by State as a matter of discretion, in the interest of compromise and in avoiding unnecessary litigation— were proper, and Judicial Watch offers no argument to the contrary other than a passing *ipse dixit*.  But the Court need not concern itself with already-withdrawn redactions, as there is no dispute for the Court to resolve regarding information that State already has produced.

[5] As discussed above, *see supra* at 8 n3, State has withdrawn the inadvertent deliberative-process redaction that appeared in this document (from the February 14, 2013 email from Ms. Walter to Ms. Samuelson and Mr. Dorosin), which also appeared in Bates 896.  The same is true of two additional inadvertent deliberative-process privilege redactions in this document (in the April 19, 2013 and March 8, 2013 emails from Brock Johnson), which have also now been produced to Judicial Watch in unredacted form, and are attached to this filing as Exhibit 3.  To be clear, State has withdrawn every assertion of the deliberative-process privilege over any portion of any of the 12 disputed documents, and the Court therefore need not address Judicial Watch's commentary about the appropriateness of these (or any) deliberative-process claims that State has made in this litigation.

House is unclear; in fact, as confirmed by the Visek Declaration, none of the redacted information in this document (or in any other of the 12 disputed documents, for that matter) contains any discussion of any communications with the White House—all such references to the White House are unredacted.[6]  Visek Decl. ¶¶ 5, 32.

As for State's assertion of attorney-client privilege and work-product protection over these redactions in the two emails from Mr. Davis, Judicial Watch has not made any particular objection, except that it generically claims that State's privilege log entries were insufficiently detailed.  But Judicial Watch does not contend that it was unable to assess State's assertions of privilege and work product protection as reflected in State's privilege log, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), or even identifies what information it believes the logs lack.  And in any event, this filing and the Visek Declaration provide even more additional detail.  These emails, drafted by a State Department Attorney-Adviser, and sent to other State Department attorneys and non-attorney officials, are on the subject of State's then-ongoing discussions about how to process a particular FOIA request (the CREW request) that they predicted (correctly, it turns out) would lead to litigation.  *See* Visek Decl. ¶ 32.  The redacted discussions make clear that this is a discussion about how to process the request, which necessarily reflects the legal input, judgment, and advice of attorneys in the Office of Management.  Once again, as discussed above and in the Visek Declaration, had State not believed that the processing of the CREW request was likely to lead to litigation, then these emails would simply not exist, at least in this form—the reason that multiple

---

[6] Judicial Watch similarly asserts that "State does not demonstrate that . . . Davis' emails do not contain facts learned from third parties in the White House."  MTC at 12.  As discussed above, none of the redactions concern communications with the White House.  Even if they did, the fact that a confidential attorney-client communication "contain[s] facts learned from third parties in the White House" would not have prevented a valid assertion of the attorney-client privilege or the attorney work product doctrine.  An attorney at an Executive Branch agency does not waive privilege by communicating with the White House (including about "facts"); the White House is not a "third party" in the relevant sense, and Plaintiff cites to no authority for the contrary conclusion.

State attorneys were engaged on these issues was precisely because of their expectation that litigation was likely (a prediction that ultimately proved to be correct).  *See* Visek Decl. ¶¶ 4, 32.

### 3.    Bates 900

This document contains two redactions, both of which were challenged by Judicial Watch. Both are from emails authored by State Department Attorney-Adviser Gene Smilansky, and both are on the subject of State's processing of the CREW FOIA request.  Both are plainly protected by the attorney-client privilege and the attorney work-product doctrine, and Judicial Watch hardly attempts to show otherwise.

First, both redactions are covered by the attorney work-product doctrine, as they were drafted by Mr. Smilansky in reasonable anticipation of litigation.  Judicial Watch argues that State has failed to explain "why Smilanksy [sic] reasonably anticipated litigation would occur."  MTC at 14.  As discussed at length above and in the Visek Declaration, the entire purpose of Mr. Smilansky's involvement in the minutiae of the processing of the CREW FOIA request (the subject of this email discussion) was because State reasonably anticipated litigation over that request— otherwise, he would not have been assigned to the matter at all.  Visek Decl. ¶¶ 4, 33.  And that expectation was entirely reasonable (again, because of the identity of the requester, the fact that it had been pending more than 20 days, and the subject-matter of the request), and in fact turned out to be well-founded.   Visek Decl. ¶¶ 29, 33.   In addition, the redacted information contains memorialization of Mr. Smilansky's legal opinions and mental impressions concerning the processing of the FOIA request.  That is more than enough to show that Ms. Smilansky and State "reasonably" anticipated litigation over the CREW request, and that both redactions are properly withheld as work product.

Judicial Watch also argues that State has "not demonstrate[d] that the communication would reveal confidential facts provided by the client," MTC at 14.  In fact, the Visek Declaration confirms that the redacted information includes a "recap" of an explanation that Mr. Gittleson

(representing the client, here) had provided earlier to Mr. Smilansky on a specific factual issue that Mr. Smilansky was asking about in order to allow him to effectively represent the State Department as an attorney.  Visek Decl. ¶ 33.  That sort of confidential communication is in the heartland of the attorney-client privilege.

Finally, Judicial Watch argues, without elaboration, that "State's privilege descriptions are general and conclusory."  MTC at 14.  State's descriptions provided sufficient detail to allow Plaintiff to assess the adequacy of these privilege assertions, without actually disclosing the privileged information.  *See* Fed. R. Civ. P. 26(b)(5)(A)(ii)  In any event, State has now provided even more, extensive detail about the documents in question.  *See* Visek Decl. ¶ 33.

### 4.    Bates 901

This document offers another example of Judicial Watch making unsupported assumptions about the nature of redacted material.  Judicial Watch claims that "by reading the document, it is apparent that it relates to the White House's tracking of the request," and that State has failed to "show how Smilansky's emails about the White House and Secretary Clinton's email were created in anticipation of litigation filed years later."  MTC at 15, 16.  In fact, the only references to the White House in this document are unredacted.  *See* Visek Decl. ¶¶ 5, 34.  Instead, as State already explained in its privilege log (and now explains again in the Visek Declaration), the redacted material concerns State's then-ongoing deliberations about how to respond to CREW's FOIA request.  *See* Visek Decl. ¶ 34

Other than offering generic concerns based on the (false) premise that State is somehow improperly shielding information related to the White House, Judicial Watch challenges five redactions in five separate emails in this chain.  Four of the five emails were either sent to or from a State Department attorney (some were sent both to *and* from a State Department attorney).  As explained in State's privilege log and in the Visek Declaration, this email chain reflects then-ongoing deliberations about how to handle the CREW request, for which State attorneys were

engaged solely for the purposes of applying their legal judgment, and because litigation was reasonably anticipated (as explained repeatedly above).  *See* Visek Decl. ¶ 4.  It is therefore properly redacted.

One of the four emails in this chain was sent from Sheryl Walter, to Patrick Scholl, copying two State Department Attorney-Advisers (Gene Smilansky and Jonathan Davis).  Judicial Watch makes much of this to/cc distinction, arguing that "[t]his is a client to client communication," and that "[s]imply copying an attorney on an email does not make the information protected."  MTC at 15.  But State is not arguing that the mere fact that Mr. Smilansky and Mr. Davis were copied on the communication makes it privileged; what makes it privileged is that the two attorneys were added to this email conversation, by Ms. Walter, for purposes of seeking their legal input regarding the ongoing discussion about how to process the CREW FOIA request.  *See* Visek Decl. ¶ 34.  In fact, as the Visek Declaration explains, this particular redacted email includes a specific reference to the need to coordinate with the Office of the Legal Adviser on this subject, *see id.*, which is in fact what happens on the later emails on the chain (as is apparent even from the redacted version), in which Mr. Smilansky and Mr. Davis actively participate in further discussion about the processing of the request.  Ms. Walter's decision to first loop in legal counsel via the "cc" line rather than the "to" line has no significance to the privilege analysis.

### 5.    Bates 902

Judicial Watch challenges the only redaction in this lengthy email chain.  It makes a series of conclusory objections, but all of them are disposed of by the State's existing privilege logs.  The Visek Declaration, which contains a detailed explanation of the way this document fits within a broader set of conversations about the CREW request, confirms the appropriateness of this redaction.

Primarily, Judicial Watch again makes much of the fact that State Department Attorney-Adviser Gene Smilansky is added to the chain by Karen Finnegan on the "cc" line, rather than the

"to" line.  As discussed above, that is irrelevant.  What matters here is that the purpose of adding Mr. Smilansky to the discussion was to provide him with information so that he could provide legal advice.  *See* Visek Decl. ¶ 35.  In fact, were there any doubt that this particular carbon copy was effectively identical to an email "to" Mr. Smilansky, it is disposed of by the fact the Mr. Smilansky was the one to actually respond to the email—rather than the only person on the "to" line (Ms. Walter).

In addition, as explained by the Visek Declaration, the redacted sentence contains Ms. Finnegan's high-level summary of a prior (privileged) conversation she had had with Mr. Smilansky about the CREW request.  *See* Visek Decl. ¶ 35.  The fact that that attorney-client conversation was summarized by Ms. Finnegan, rather than Mr. Smilansky, does not mean its disclosure would not reveal a confidential attorney-client communication, or Mr. Smilansky's mental impressions.

Judicial Watch points out that by this time, the no-records response to the CREW request had already gone out, a few months earlier.  But that is insufficient to defeat application of the work-product doctrine.  As explained in the Visek Declaration, a frequent FOIA litigant like CREW, who receives a no-records response on a politically charged FOIA request (especially on a topic, like this one, that has already led to other litigation, *see* Visek Decl. ¶ 29) is still likely to eventually litigate the propriety of that no-records response, even if they have already received some response to the request, *see id.* ¶¶ 29, 35.  And as the rest of the unredacted emails in this chain make clear, the purpose of this conversation was not just tied to the (now complete) processing of the CREW FOIA request, it was also about State's response to a variety of other FOIA requests that some at State thought might be connected to the CREW request in some way, and leveraging Mr. Smilansky's experience in handling the CREW request to inform State's response to other, pending requests, over which litigation was also reasonably anticipated.  *See* Visek Decl. ¶ 35.

Finally, the Visek Declaration confirms that this information was been maintained in confidence, and that the privilege has not been waived.  *See id.* ¶ 3.

*     *     *

Judicial Watch makes one conclusory argument that it purports to apply to all six of the CREW-related documents: "that the Court order State disclose the fact work product" contained within these documents because "Plaintiff has a substantial need for those facts surrounding the Crew FOIA request to prove its claims against State."  MTC at 17.  This argument fails for several independent reasons.

First, "need," substantial or otherwise, is insufficient to overcome a proper assertion of the attorney-client privilege.  *See, e.g., Blumenthal v. Drudge*, 186 F.R.D. 236, 241 (D.D.C. 1999).  So, as long as the attorney-client redactions remain in effect, overcoming work-product redactions that are entirely overlapping would make no difference—the information would remain redacted under the attorney-client privilege.  The Court therefore need not address the issue of whether Judicial Watch has shown that it has a substantial need (or whether substantially similar information is available from other sources) for any of the fact work product in the redactions described above.

Second, Judicial Watch cannot meet its burden to show it has a "substantial need" for any or all of the documents in question by this scattershot, conclusory statement, which contains no discussion whatsoever of any individual documents, and simply asserts without explanation that all fact work product from these six documents should be disclosed.  *See* MTC at 17.

Third, in any event, Judicial Watch has no need for "facts surrounding the Crew FOIA request to prove its claims against State," MTC at 17, let alone a substantial one that overcomes work-product protections.  Although the Court did take the rare step of ordering limited discovery in this FOIA case, this remains a FOIA case about a specific FOIA request that Judicial Watch submitted to State regarding talking points provided to Susan Rice regarding the Benghazi attacks.

Judicial Watch brings only one "claim" against State, for violation of FOIA, alleging that "Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552." Compl. ¶ 11.  There is no fact that could be revealed about State's processing of the CREW FOIA request that would shed light on the question of whether State has adequately searched for and produced all agency records subject to FOIA that are responsive to Plaintiff's FOIA request in this case.  And Plaintiff fails to articulate any other explanation for why such materials potentially could be relevant to the narrow issues over which the Court has permitted discovery.

### B. Other Documents (Bates 21, 76, 187 & 206, 1040, 1326, 1328, 3636)

#### 1. Bates 21

Plaintiff challenges redactions in Bates 21, a set of case comments related to the processing of the FOIA request at issue in this case taken from State's FOIA document review platform and dated March 10, 2017.  Visek Decl. ¶ 6.  The individual entries were written by IPS FOIA analysts and reviewers during their processing of the FOIA request at issue in this litigation.  *Id.*  While a FOIA case is in litigation, State attorneys work closely with IPS staff to ensure that the Department's collection and processing of documents comply with FOIA's requirements.  *Id.* ¶ 7. State attorneys provide IPS with legal advice about what bureaus to task with searches, what search terms to use, how to sort responsive documents from non-responsive documents, and whether documents or portions thereof must be withheld under a FOIA exemption.  *Id.*

Document 21 is one type of document that facilitates and memorializes those interactions. *Id.*  In a case-comments document like Document 21, IPS staff record the status of the case and the next steps to be taken, their determinations regarding documents' responsiveness and/or the necessity and propriety of any withholdings.  *Id.*  State attorneys review these comments before documents are produced so that they can provide legal advice as to whether the determinations by IPS staff as to responsiveness and/or withholdings are legally defensible.  *Id.*  State attorneys also

refer to the case comments when drafting or reviewing court filings, including *Vaughn* indices and search declarations.  *Id.*

The redacted entries, withheld pursuant to the work product doctrine and/or attorney-client privilege, are IPS's comments on documents that were collected and processed by IPS at the direction of the State attorney adviser assigned to the case.[7]  *Id.* ¶ 8.  For the entry dated November 4, 2015, this attorney was James Bair.  *Id.*  For the remaining redacted entries, the relevant attorney was Martha Lovejoy.  *Id.*  Before these entries were made, Mr. Bair and Ms. Lovejoy provided legal advice to IPS staff regarding searches that should be conducted to ensure compliance with the FOIA; they also provided legal advice about how IPS should determine whether documents collected in the course of those searches were responsive to the FOIA request in this case and whether those documents or portions thereof should be withheld under a FOIA exemption.  *Id.*

*Attorney-Client.*   The comment in Bates 21 made on 4/8/2016 at 10:50 am directly summarizes legal advice provided by Ms. Lovejoy concerning the review of specific documents, and were memorialized in the case comments to facilitate the correct implementation of that legal advice.  This redaction is thus proper under the attorney-client privilege.  *Id.* ¶ 9.  Plaintiff does not seek disclosure of this comment.  MTC at 17.[8]

*Work Product.*   The redacted case comments were made by IPS staff while they were processing the documents pursuant to Mr. Bair and Ms. Lovejoy's directions.  *Id.* ¶ 8.  As described above, Ms. Lovejoy and Mr. Bair provided extensive legal direction and advice about what documents were responsive to the request and which portions of those documents were exempt

---

[7] Document-specific comments are marked "D" in the *Comment Type* column, whether or not they are related to litigation.

[8] Plaintiff misidentifies the "summary of legal advice provided by state attorney Martha Lovejoy" to which it does not object as being on "the fourth page of the document next to the Comment Type 'L' for 'Legal.'"  MTC at 17.  The "L" type means "Litigation," and there are no comments marked with this type on the document, just a blank space where any comments might be.  Rather, as noted above, the comment made on 4/8/2016 at 10:50 am contains the summary of legal advice to which Judicial Watch does not object.

from disclosure.  Without this direction and advice—which State Attorneys do not generally provide unless litigation is anticipated or, as here, actually initiated, *Id.* ¶ 4—the comments would not exist in a substantially similar form.  They are therefore protected work product.  *In re Sealed Case*, 146 F.3d at 885.

Moreover, this direction and advice, which constitute Ms. Lovejoy's and Mr. Bair's mental impressions concerning the case, is reflected in the redacted comments.  For this reason, they must be protected from disclosure under Rule 26(b)(3)(B).  Even if the comments reflected fact work product, Plaintiff cannot show a substantial need for them.  For example, the comments made at the following times are solely about whether one or more FOIA exemptions apply, not about the search for responsive records: 4/7/2016 @ 2:53 PM; 4/7/2016 @ 2:54 PM; 4/8/2016 @ 10:50 am; 4/15/2016 @ 9:52 am; 4/15/2016 @ 9:47; and 11/4/2015 @ 2:11 pm.  Visek Decl. ¶ 9.  In addition, the first sentence in the comment made at 4/8/2016 @11:29 am is also about what should be withheld and not about the search for responsive records.  *Id.*  As such, these redactions are not relevant to any of the three topics for which the Court authorized discovery.  Plaintiff has no substantial need for a non-relevant document.

Finally, State's privilege log entry for this document is adequate.  The entry describes the document as a "report of case comments for the FOIA request at issue in this case" that contains deliberative discussion about "(1) the future tasking of bureaus to search for records potentially responsive to this FOIA request and (2) the final disposition of various records identified as potentially responsive to the FOIA request at issue in this case."  Although the quoted language is part of State's description of its deliberative-process assertions, which State has withdrawn in the interest of reducing litigation in this case, the language is still an accurate description of the comments.  The entry also notes that "comments [were] prepared by, or at the direction of, Ms. Lovejoy for ongoing litigation in this case" and that document contains material that was

"collected or created for purposes of litigating this case."  In short, the privilege log sets forth all the elements of the work-product doctrine, and the Visek Declaration provides even more detail.

### 2.      Bates 76

The first email in Bates 76, dated November 22, 2014, is from James Bair, the State attorney assigned to this case at the time the document was created, to Jonathon Wasser and Clarence Finney, two State officials in the Office of the Executive Secretariat (S/ES) involved in the search for records potentially responsive to the FOIA request at issue in this case.  Visek Decl. ¶ 10.  The withheld information consists of Mr. Bair's mental impressions about issues arising in those cases, as well as Mr. Bair's confidential legal advice about searches for documents responsive to the FOIA request at issue in each case.  *Id.* ¶ 11.  The redacted information also conveys Mr. Bair's instructions and questions seeking facts necessary to provide legal advice.  *Id.* It is therefore properly protected by the attorney-client privilege.

Mr. Bair prepared the email because of this litigation and contemporaneous litigation concerning another FOIA request.  *Id.* ¶ 11.  This is evident from the first paragraph of the email, which is unredacted and says, "As discussed, there are two active items with which we need your assistance in two separate cases.  I have also added a third here that I'd like to connect with you about on Tuesday, if possible."  This email would not exist but for the ongoing litigation and is therefore properly withheld as work-product.

Plaintiff challenges the redaction of the filename of a document attached to the email. Contrary to Plaintiff's assertion, State is not withholding the name of the attachment "merely because it is attached to a communication between the attorney and his or her client."  MTC at 18. Indeed, State left the filename of another attachment to this email unredacted.  The filename of the redacted attachment consists of what is called a CADRE number, which State uses to uniquely identify documents it has processed in the course of responding to FOIA requests.  Visek Decl. ¶ 12.  For example, Bates 76 was processed as part of another FOIA request, and its CADRE

number is C06296541.  Suppl. Privilege Log (ECF No. 102-6) at 4.  Revealing the filename of the attachment, therefore, would reveal the CADRE number of the attachment.  Visek Decl. ¶ 12.

Because the attachment, which is marked with the CADRE number, has been produced and is available on the internet, a simple search would allow anyone to obtain the contents of the document about which Mr. Bair was seeking information for the purposes of providing legal advice in the two relevant cases.  *Id.* ¶ 13.  Revealing the filename, therefore, would also reveal portions of the work product and legal advice redacted from the body of the email, *id.*—a redaction that Plaintiff does not challenge.  Specifically, disclosure would reveal portions of the confidential legal advice and inquiries contained in the redacted portion of the body of the email that is undisputedly protected by the attorney-client privilege

Plaintiff requests that if the Court concludes that the work product doctrine properly shields this information, then the Court should order that State release "the fact work product only."  MTC at 18-19.  But there is no fact work product to release; Mr. Bair's mental impressions concerning the litigation are core work product and protected against disclosure by Rule 26(b)(3)(B).  Such information "is virtually undiscoverable."  *Deloitte LLP*, 610 F.3d at 138.

### 3.      Bates 187 and 206

Bates 187 and 206 are duplicate email chains between Karen Finnegan, the Chief of FOIA for IPS, Susan Weetman, the Branch Chief for FOIA Litigation and Appeals, and John Hackett, then the Director of IPS.  Visek Decl. ¶ 14.  The redacted portion, which is identical in each document and withheld under the work-product doctrine, contains information that was gathered and prepared at the direction of State attorney James Bair in the course of providing legal advice in this ongoing litigation.  *Id.* at 15.  The information provided by Ms. Weetman related to ongoing discussions between IPS staff and Mr. Bair concerning the determination of whether the searches conducted in the case, which were being directed by Mr. Bair, were legally sufficient under FOIA.  *Id.*  While Mr. Bair does not appear on this email, the content of this email related to a topic on

which Mr. Bair provided direction and legal advice in several in person conversations between Mr. Bair, Ms. Weetman, Ms. Finnegan, and Mr. Hackett. *Id.* Because this information was assembled pursuant to direction from Mr. Bair, and because Mr. Bair would not have been providing legal advice related to the processing of this FOIA request unless litigation was ongoing or anticipated, this document would not exist in substantially similar form if litigation were not ongoing or anticipated. *Id.* Indeed, this document would not exist at all absent the ongoing litigation. It is therefore properly withheld as work product.

Plaintiff asserts that the redacted information does not reveal Mr. Bair's mental impressions. As an initial matter, a document can be work product even if it does not contain an attorney's mental impressions, as long as it was prepared because of anticipated or ongoing litigation. More importantly, the redacted information is the product of Mr. Bair's discussions with IPS staff, and revealing that information would reveal his mental impressions and legal opinions. As such, it "reflects the attorney's focus in a meaningful way" and is core opinion work product. *Boehringer Ingelheim*, 778 F.3d at 151 (holding that "[w]hen a factual document selected or requested by counsel exposes the attorney's thought processes and theories, it may be appropriate to treat the document as opinion work product, even though the document on its fact contains only facts") (citing *Dir., Office of Thrift Supervision v. Vinson & Elkins*, 124 F.3d 1304, 1308 (D.C. Cir. 1997). It is therefore protected from disclosure under Rule 26(b)(3)(B)

### 4.    Bates 1040

Bates 1040 is an email chain dated October 17, 2014 between Deputy Legal Adviser Richard Visek and various State officials. In October 2014, Mr. Visek worked closely with clients in the Office of the Under Secretary for Management, the Bureau of Administration and the Office of the Secretary, including Under Secretary for Management Patrick Kennedy, Deputy Assistant Secretary in the Bureau of Administration for Global Information Services Peggy Grafeld, and Executive Secretary Joseph MacManus, to provide legal advice on how to comply with the

requirements of the Federal Records Act and evolving guidance from the National Archives and Records Administration (NARA) to properly retain and recover email records of former Secretaries of State.  Visek Decl. ¶ 16.  Among other things, Mr. Visek drafted letters to be sent by Under Secretary Kennedy to representatives of former Secretaries of State requesting that they return any federal record in their possession to the State Department if there was reason to believe that such record may not otherwise be preserved in the Department's recordkeeping system.  *Id.*  Under Secretary Kennedy had sought advice from Mr. Visek about the proposed contents of the letter.  *Id.*  Mr. Visek's advice about the letters was informed by confidential communications from Under Secretary Kennedy and other Department employees with duties relating to records retention and management.  *Id.*

The earliest email, sent at 10:08 am, was from Mr. Visek to Deputy Director of the Executive Secretariat for Records, Clarence Finney, copying to Mr. Macmanus, to whom Mr. Finney reported.  The redacted information, withheld under both the attorney-client privilege and the work-product doctrine, explains portions of the proposed contents of the letters, provides an attached draft letter embodying Mr. Visek's legal advice, and asks Mr. Finney for information needed by Mr. Visek to complete drafting of the letter.  Visek Decl. ¶ 17.  Plaintiff does not challenge the redaction in this email.

The next email, sent at 2:12 pm from Mr. Finney to his supervisor, Mr. Mcmanus, and other staff in the Office of the Executive Secretariat, contains Mr. Finney's response to the attached draft letter.  *Id.* ¶ 18.  Although not sent directly to Mr. Visek, it was created in response to Mr. Visek's request and provides information Mr. Visek sought for the purpose of finalizing the letter and providing legal advice concerning it.  *Id.*  Mr. Macmanus then forwarded Mr. Finney's answer to Mr. Visek in the 2:54 pm email, noting that Mr. Finney had raised a "good point" about the issue about which Mr. Visek had requested Mr. Finney's opinion.  *Id.*

Plaintiff challenges only the withholding of information from Mr. Finney's 2:12 pm email to Mr. Macmanus.  This information was withheld as work product; it was not withheld pursuant to the attorney-client privilege.  Accordingly, Plaintiff's arguments about the inapplicability of the attorney-client privilege, MTC at 19-20, are beside the point.  As for the work product doctrine, Plaintiff alleges that Mr. Finney's email was not made in anticipation of litigation and that it does not reveal Mr. Visek's mental impressions.  Plaintiff is mistaken on both counts.

**Anticipation of Litigation.**  The work-product doctrine applies when the relevant lawyer subjectively believed litigation to be a real possibility and that belief was objectively reasonable.  *In re Sealed Case*, 146 F.3d at 884.  Plaintiff makes two errors in challenging State's conclusion that the 2:12 pm email was created in anticipation of litigation.  First, Plaintiff argues that work product does not apply unless "the email communications would not have been created otherwise." MTC at 20.  Such a "but-for" test is not the standard in this Circuit; the standard is whether the document "would not have been prepared in substantially similar form but for the prospect of that litigation."  *In re Sealed Case*, 146 F.3d at 885.  Second, Plaintiff incorrectly argues that because managing records is part of State's ordinary business, it cannot be work product.  MTC at 20.  But "a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation."  *Deloitte*, 610 F.3d at 138.

At this time the letters were drafted, Mr. Visek believed it was advisable for the Department to send the letters to ensure its compliance with the Federal Records Act and Department directives, and anticipated potential litigation concerning the Department's compliance and its actions to recover any lost federal records.  Visek Decl. ¶ 20.  Mr. Visek's belief that litigation of this type was a real possibility is objectively reasonable.  Indeed, such litigation did in fact occur later on, when multiple advocacy groups filed suit alleging that the Department's actions to recover the emails of Secretary Clinton and Secretary Powell had been insufficient under the FRA.  *Id.*

(citing *Judicial Watch v. Kerry*, 15-cv-785 (filed May 28, 2015); *Cause of Action Institute v. Kerry*, 15-cv-1068 (filed July 8, 2015); *Cause of Action Institute v. Kerry and Ferriero*, 16-cv-02145 (filed October 26, 2016)).

In addition, State had been the subject of several Congressional document requests and subpoenas for information related to the Benghazi attacks.  Visek Decl. ¶ 20.  Given the then-recent litigation that had occurred between Congress and other federal agencies following Congressional inquiries involving legal process, Mr. Visek also anticipated potential litigation from Congress concerning the sufficiency of the Department's response to particular Congressional inquiries that might involve Secretary Clinton's email records.  *Id.*  That then-recent litigation demonstrates the objective reasonableness of Mr. Visek's belief that litigation was a real possibility.

The prospect of litigation concerning these issues was one of the important factors that influenced Mr. Visek's drafting of the proposed letters, as it was likely that the Department's efforts to seek the return of any federal records from former secretaries would later be subject to litigation.  Visek Decl. ¶ 21.  Indeed, final versions of these letters were later submitted as exhibits in a number of lawsuits.  *Id.*  In turn, this prospect influenced the legal advice included in Bates 1040 concerning the content of those letters as well as the information Mr. Visek sought from Mr. Finney to aid in their drafting.  *Id.*  Mr. Finney's email, therefore, "would not have been prepared in substantially similar form but for the prospect of that litigation" and is therefore work product. *In re Sealed Case*, 146 F.3d at 885.

**Mental Impressions.**   Because Mr. Finney's email was prepared in anticipation of litigation, it is work product whether or not it contains attorney mental impressions.  But Mr. Finney's email reveals the precise information Mr. Visek sought; indeed, it *is* the information Mr. Visek sought and that was later provided to him by Mr. Macmanus, such that it "reflects the attorney's focus in a meaningful way" and is core opinion work product.  *Boehringer Ingelheim*,

28

778 F.3d at 151.  Its disclosure would therefore reveal Mr. Visek's mental impression about a key element of the letter he was drafting and about what information was needed before the letter could be finalized.  For this reason, it is protected from disclosure even if Plaintiff makes a showing of substantial need.  Fed. R. Civ. P. 26(b)(3)(B).

### 5.        Bates 1326, 1328, and 3636

Bates 1326, 1328, and 3636 are duplicative redacted email chains dated between January 27, 2013 and January 30, 2013, between Deputy Assistant Secretary for Global Information Services Peggy Grafeld, Agency Records Officer Tasha M. Thian, Assistant Legal Adviser for Management, Joshua Dorosin, Director of Information Programs and Services Sheryl Walter, and Management and Program Analyst, Eric Stein.[9]  Visek Decl. ¶ 23.  Plaintiff challenges only State's redactions in two emails, one from Ms. Grafeld on January 27, 2013, and one from Ms. Thian on January 29, 2013 at 7:53 am, on the basis of the attorney-client privilege.  These two emails each appear in Bates 1326, 1328, and 3636.

As the Assistant Legal Adviser for Management at the time, Mr. Dorosin was Ms. Grafeld's primary senior contact in the Office of the Legal Adviser for legal advice concerning the Department's compliance with the Federal Records Act and other State Department and Government-wide regulations and policies concerning records retention.  *Id.*  Ms. Grafeld and her staff worked closely with Mr. Dorosin and other attorneys assigned to the Office for Management, and frequently sought their advice concerning the sufficiency of the IPS's actions and plans to comply with these requirements as well as legal review of policy documents and significant communications prepared by Ms. Grafeld's office.  *Id.*  Mr. Dorosin and more junior attorneys assigned to the Office of Management were asked to conduct a legal review of many policy documents and significant communications prepared by Ms. Grafeld's office.  *Id.*

---

[9] Ms. Grafeld also forwards the chain to her Executive Assistant, Vicki Dotson, to be printed.  Visek Decl. ¶ 24.

In the January 27, 2013 redacted email sent at 12:22pm, Ms. Grafeld outlined a set of possible issues and proposed actions pertaining to records management compliance and policy as well as the implications of such records management compliance and policy given the upcoming departure of senior officials, copying Mr. Dorosin. *Id.* ¶ 24. Ms. Thian responded in a redacted email dated January 29, 2013 at 7:53 am with further background information concerning the issues raised by Ms. Grafeld including specific information about planned actions to address them, and further included Mr. Dorosin. *Id.* Plaintiff's sole challenge to these redactions is that because Mr. Dorosin was merely copied on these chains, he was not part of the substantive discussion and, therefore, the redaction cannot be privileged. MTC at 28. Judicial Watch is mistaken. It was typical for Mr. Dorosin to be copied on emails of this type, and he would typically interpret them as a request for the Office of the Legal Adviser's confirmation that the included guidance or actions were consistent with applicable law and regulations and, to the extent that there was a legal concern, for intervention from an attorney to ensure that the guidance or course of action was adjusted appropriately. *Id.* ¶ 24. Ms. Thian responded with further background information concerning the issues raised by Ms. Grafeld including specific information about planned actions to address them, and further included Mr. Dorosin to solicit his legal views. *Id.*

The two emails contain confidential communications from two employees of State, the client, to a State attorney. The redacted information relates to facts of which Mr. Dorosin was informed by Ms. Grafeld and Ms. Thian for the purpose of securing an opinion on law. The privilege has not been waived. The redacted information is therefore properly withheld under the attorney-client privilege.

### 6.     Bates 2475

Finally, Bates 2475 is a redacted email chain containing emails dated between March 20, 2015 and March 23, 2015, starting with an email sent on March 20, 2015 at 12:44 pm by State Deputy Legal Adviser Rich Visek to Gary Stern, General Counsel of the National Archives and

Records Administration (NARA) transmitting a draft letter to former Secretary Clinton's attorneys and seeking the "assistance" of Mr. Stern.[10]  Visek Decl. ¶ 25.  Mr. Stern then replied to Mr. Visek that same day at 4:41 PM, providing his comments on the letter.  *Id.*  Mr. Visek then then forwarded the email chain to a set of State Department attorneys and clients in the Executive Secretariat, the Office of the Under Secretary for Management, and the bureaus of Administration and Legislative Affairs.  Visek Decl. ¶ 27; Bates 2475.  State redacted portions of the emails between Mr. Visek and Mr. Stern pursuant to the attorney-client privilege and the work-product doctrine.

*Attorney-Client Privilege.*  Plaintiff raises only one challenge to State's assertion of attorney-client privilege over the exchanges between Mr. Visek and Mr. Stern, erroneously claiming that the communications were between third parties.  MTC at 21.  But confidential communications between the attorneys at two different federal agencies may be protected by the attorney-client privilege.  *See, e.g.*, *Hollar v. Internal Revenue Service*, No. 95-1882, 1997 WL 732542 (D.D.C. Aug. 7, 1997), *5 ("Communications between one agency's attorneys and another agency's attorneys are also covered by Exemption 5 and the attorney-client privilege as 'inter-agency' memoranda so long as those communications reflect the facts given by agency decision-makers to elicit legal advice.") (citing *Schlefer v. United States*, 701 F.2d 233, 245 (D.C. Cir. 1983)).  *Cf. Menasha Corp. v. U.S. Dept. of Justice*, 707 F.3d 846, 852 (7th Cir. 2013) (holding in a FOIA case that for purposes of the work product doctrine, documents exchanged between components of Department of Justice assigned to provide legal assistance to federal agencies who possessed adverse interests was nevertheless subject to attorney work product doctrine).  Accordingly, the fact that Mr. Visek was communicating with Mr. Stern concerning the provision of legal advice does not render that advice subject to public disclosure.

In his May 20, 2015 email sent at 12:44 pm, Mr. Visek was seeking confidential legal advice from another government attorney with specific expertise in records management law.

---

[10] The emails at 12:44 pm and 4:41 pm are also copied to State attorney Catherine Duval.

Visek Decl. at 28.  Mr. Stern was the General Counsel of NARA, the executive branch agency responsible for implementing the Federal Records Act and promulgating regulations and policy governing records management at other agencies including the State Department.  *Id.*  Mr. Stern's response in his March 20, 4:41 pm email was confidential guidance rendered by the General Counsel in response to the information provided by the State Department.  *Id.*  Mr. Visek's March 23, 2015 email relates a part of that guidance to his own clients as part of his legal advice concerning the ultimate content of the draft letter that he was asked to draft by clients in the Office of the Under Secretary for Management.  *Id.*  Both emails are therefore protected by the attorney-client privilege.

*Work Product.*  Plaintiff argues that the emails between Mr. Visek and Mr. Stern were not created in anticipation of litigation because State did not identify the specific litigation anticipated. MTC at 21.  But as discussed above in the section discussing Bates 1040, Mr. Visek and other State Department attorneys had been anticipating litigation concerning the Department's compliance with the Federal Records Act and the sufficiency of its response to certain Congressional requests for months prior to this communication taking place.  Section II.B.4, *supra*; Visek Decl. ¶ 26.  And as of March 20, 2015, the expectation of imminent litigation under the Federal Record Act had become heightened.  Visek Decl. ¶ 26.  Earlier that week, a group of twelve nonprofit groups, several of which are frequent litigants against the government, had sent a letter to both State and NARA stating that they were "extremely troubled" about Secretary Clinton's reported use of a private email address for government business and calling it "a potential violation of the Federal Records Act."  *Id.*; *see also id.* Ex. 1, Letter of March 17, 2015.  Also at that time, there were several ongoing FOIA litigation cases in which Secretary Clinton's email use was at issue, including this one.  *Id.*  Both State and NARA were in fact sued under the Federal Records Act within a few months.  *Id.*  Mr. Visek's belief that litigation was a real possibility was not only reasonable; such litigation was almost inevitable.

Plaintiff makes another error, arguing that the emails are not work product because they would still have been created had no litigation been ongoing or anticipated.  MTC at 21.  The prospect of litigation was an important factor shaping the manner in which Mr. Visek drafted the proposed letter and his approach to seeking NARA advice.  Visek Decl. ¶ 27.  Mr. Visek anticipated that the communications with former Secretary Clinton's attorneys concerning the federal records in her possession could be submitted and evaluated in the anticipated litigation, and that the nature of State's engagement of NARA could also be examined.  *Id.*  This email chain was a part of Mr. Visek's work product prepared in anticipation of litigation and reflects his mental impression about elements of the draft letter.  *Id.*  The email chain, therefore, "would not have been prepared in substantially similar form but for the prospect of that litigation" and is therefore work product.  *In re Sealed Case*, 146 F.3d at 885.  Moreover, because it the redacted information reflected Mr. Visek's and Mr. Stern's mental impressions, it is not subject to disclosure even if Plaintiff were to make a showing of substantial need.  Fed. R. Civ. P. 26(b)(3)(B).

*      *      *

Judicial Watch also requests, "[a]t a minimum" that the Court conduct an *in camera*, *ex parte* review of the challenged documents because there are only 12 documents in dispute and it "should be a minimal burden on the Court."  MTC at 22.  State opposes that request because (1) *in camera* review is generally disfavored" in this Circuit, *PHE, Inc. v. DOJ*, 983 F.2d 248, 253 (D.C. Cir. 1993); *see also Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) ("[A]n *in camera* review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'"); (2) Judicial Watch has failed to raise any substantial question regarding the propriety of State's withholdings and redactions; and (3) it would impose an unnecessary burden on the Court.

That said, the Government recognizes that the Court has "broad discretion in this area," *Quinon*, 86 F.3d at 1228.  Should the Court decide that *in camera* review is appropriate, the

Government is prepared to make a prompt *in camera* submission, and is confident that such a review will confirm that the redactions in question were appropriate and made in good faith.[11]

Finally, even if Plaintiff prevails on its motion to compel, in whole or in part, Plaintiff is not entitled to any award of fees or costs.   All of State's privilege assertions are entirely appropriate; they are certainly, at a minimum, "substantially justified."  *Parsi v. Daioleslam*, 778 F.3d 116, 126-27 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 37(a)(5)(A)(ii)).  To avoid fee-shifting after a discovery dispute, a discovery objection need not be "justified to a high degree," *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 5 (D.D.C. 2018), it is sufficient that "there is a genuine dispute" between the parties, or that "reasonable people could differ" on the issue, *Parsi*, 778 F.3d at 127.  That standard would plainly be satisfied here, even were the Court to order some additional disclosure over the Government's objections.

---

[11] Plaintiff's motion closes with the remarkable assertion that *in camera* review is needed because "Plaintiff does not trust" State's withholdings, because of Plaintiff's view that prior, withdrawn privilege assertions "have proven to lack any good faith basis." MTC at 11.  Of course, the Court need not concern itself with now-withdrawn privilege claims in deciding Plaintiff's motion.  With respect to Plaintiff's charge of bad faith, however, Government counsel is obligated to respond, and strongly disagrees with Plaintiff's characterization.

All of State's prior withholdings were appropriate—and certainly made in good faith—including the examples cited in footnote 11 of Plaintiff's motion to compel.  As but one example, Plaintiff misleadingly describes one previously withheld document as "electronic email notifications defense counsel received from the Court's D.C. ECF electronic system," MTC at 22 n.11.  Plaintiff omits mention of the fact that the notice of electronic filing was then forwarded by a Department of Justice Trial Attorney, to other attorneys at DOJ and State, for the purpose of discussing litigation strategy with respect to developments in this very litigation—as is entirely obvious from the redacted version of the document that State produced to Judicial Watch a month ago, and that is attached to this filing as Exhibit 4.  The discussions in the resulting email chain are plainly protected by the attorney-client privilege and the attorney work-product doctrine (as Plaintiff has never disputed), even though the first email in the chain originated from the Court's electronic filing system.  And with respect to work product, withholding in full is appropriate and routine: "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work-product doctrine." *Graham*, 253 F. Supp. 3d at 69.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the attached Declaration of Richard Visek, the Court should deny Plaintiff's motion to compel production of twelve documents.

May 24, 2019                                        Respectfully submitted,

                                                   JOSEPH H. HUNT
                                                   Assistant Attorney General

                                                   ELIZABETH J. SHAPIRO
                                                   Deputy Branch Director

                                                   */s/ Robert J. Prince*
                                                   ROBERT J. PRINCE
                                                   D.C. Bar No. 975545
                                                   Senior Trial Counsel

                                                   STEPHEN M. PEZZI
                                                   D.C. Bar No. 995500
                                                   Trial Attorney

                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   1100 L Street, NW, Room 11010
                                                   Washington, DC 20005
                                                   Tel: (202) 305-3654
                                                   Email: robert.prince@usdoj.gov

                                                   *Counsel for Defendant*