UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| Plaintiff, ) | |
| v. ) | Civil Case No. 14-1242 |
| U.S. DEPARTMENT OF STATE, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The government continues to assert attorney–client or work-product privilege over twelve documents requested by Judicial Watch. Six concern a 2012 Freedom of Information Act (FOIA) request from government watchdog Citizens for Responsibility and Ethics in Washington (CREW) concerning government officials' personal email use. Another six address Judicial Watch's FOIA request, and specifically the State Department's pre–February 2, 2015 awareness of missing and unsearched records from former Secretary Hillary Clinton and her staff. (On February 2, 2015, months after Clinton quietly turned over 55,000 pages of her missing emails, and after months of settlement attempts, the Department filed a status report admitting "additional searches for documents . . . must be conducted," ECF No. 11.) Judicial Watch argues the government fails to demonstrate these documents' protectability, and moves to compel their production. After reviewing the documents in camera, the Court will grant-in-part and deny-in-part Judicial Watch's motion.

## I. Legal Standards

The attorney–client privilege protects "confidential communication[s] between attorney and client . . . made for the purpose of obtaining or providing legal advice." *Fed. Trade Comm'n v. Boehringer Ingelheim Pham., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018) (Kavanaugh, J.). In other words, it covers both "communications in which an attorney gives legal advice," and "communications in which the client informs the attorney of facts that the attorney needs to understand the problem." *Id.* And it applies with equal force to government counsel, who remain "fully empowered to engage in privileged communications," even though the "client" is an entire government agency. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) (Kavanaugh, J.) (internal quotation marks omitted) (quoting 1 Restatement (Third) of the Law Governing Lawyers § 72, cmt. C, at 551). That said, an organization "cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel," *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 189 n.13 (D.D.C. 2014) (quoting *Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005)); the communication must somehow engage the attorney in resolving a legal issue.

The work-product privilege shields "documents and tangible things" as long as they "[we]re prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). Yet for "government lawyers act[ing] . . . as legal advisors protecting their agency clients from the possibility of future litigation," that limitation does not do much work. *In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998). Although "work product doctrine does not extend to every written document generated by an attorney" for the federal government, *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987), a "specific claim" of litigation need not precipitate the document, either. *In re Sealed Case*, 146 F.3d at 885-87. Indeed, this Circuit extends largely

inviolate protection to attorney impressions, conclusions, opinions, and theories "integral" for "legal analyses" and strategic "discussions" alike.[1] *Martin v. Dep't of Justice*, 488 F.3d 446, 455 (D.C. Cir. 2007); *see* Fed. R. Civ. P. 26(b)(3)(B); *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005). That renders virtually undiscoverable everything from prophylactic "memoranda prepared by agency attorneys that analyze[] the legal ramifications of a new" government procedure, *In re Sealed Case*, 146 F.3d at 885, to "documents" giving general "tips and advice for litigating" particular kinds of "cases," *id.*, and even documents "used for ordinary business purposes" in a particularly litigious field, *United States v. Deloitte LLP*, 610 F.3d 129, 136-38 (D.C. Cir. 2010). *See Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997). The government attorney need only "belie[ve] that litigation [i]s a real possibility, and that belief must [be] objectively reasonable." *In re Sealed Case*, 146 F.3d at 884. And moreover, "document[s] prepared as work product for one lawsuit will retain [their] protected status even in subsequent, unrelated litigation." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015).

The lone exception to this otherwise expansive privilege arises when the work-product contains discoverable facts (distinct from legal opinions) and the party seeking discovery demonstrates both a "substantial need" for the factual information and an inability to collect the information or its "substantial equivalent" without "undue hardship." Fed. R. Civ. P. 26(b)(3); *see Office of Thrift Supervision*, 124 F.3d at 1307. This safety valve "balance[s] the needs of the

---

[1] But not every Circuit. Although most jurisdictions follow this approach, the Fifth Circuit requires anticipation of litigation be the "primary motivating purpose" behind the document's creation. *Compare United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), *with Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010); *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004); *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002); *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002); *Montgomery Cty. v. Microvote Corp.*, 175 F.3d 296, 305 (3d Cir. 1999); *In re Sealed Case*, 146 F.3d at 884; *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).

adversary system to promote an attorney's preparation against society's general interest in revealing all facts relevant to the resolution of a dispute." *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988).

## II. Analysis

Assessing the government's attorney–client privilege claims follows neatly from the legal standard. Based on the Court's in camera review, the Court affirms the government's withholdings in documents 21 (in part), 76, 896, 897, 899, 900, 901 (in part), 902, and 2475; but rejects the government's withholding in the duplicate documents numbered 1326, 1328, and 3636.

Yet the government's work-product privilege claims are more complicated. As this Court has already recognized, this case falls within the (thankfully) rare subset of FOIA cases where "the government's response . . . smacks of outrageous misconduct," and "merit[s] additional discovery into the government's motives." 344 F. Supp. 3d 77, 80. So as this case "expanded to question the motives behind Clinton's private email use while Secretary, and behind the government's conduct in this litigation," the Court authorized discovery on three topics: "(1) whether Clinton intentionally attempted to evade FOIA by using a private email while Secretary of State; (2) whether State's efforts to settle this case in late 2014 and early 2015 amounted to bad faith; and (3) whether State adequately searched for records responsive to Judicial Watch's FOIA request." Mem. & Order 1, ECF No. 65.

Within those bounds, this motion presents the "difficult and sensitive" task of drawing "a precise line between fact and opinion work product." *In re Sealed Case*, 129 F.3d 637, 638 (D.C. Cir. 1997) (Tatel, J., dissenting from denial of rehearing *in banc*); *see also Office of Thrift*

4

*Supervision*, 124 F.3d at 1308. On one hand, the government may properly withhold any opinion work-product: the documents were undoubtedly prepared in anticipation of litigation since government attorneys could reasonably anticipate litigation resulting from a FOIA request by either CREW or Judicial Watch.[2] Yet the government cannot withhold any fact work-product: for each document, Judicial Watch shows a substantial need for the otherwise-unobtainable information.

But this discovery's extraordinary subject matter blurs the distinction between discoverable facts and privileged opinions. Consider a hypothetical State Department attorney's pre–February 2015 opinion about the adequacy of the FOIA search in this case. Ordinarily, that opinion would fall within the "virtually undiscoverable" realm of opinion work-product. *Office of Thrift Supervision*, 124 F.3d at 1307. But this case "hinge[s] on what specific State employees knew and when they knew it." Mem. & Order 5. In other words, this case contains factual questions answerable only through State officials' (including attorneys) contemporaneous thoughts, beliefs, and conclusions. So—in this specific context—the content of that hypothetical attorney's opinion is itself a material fact. And since it's substantially relevant to a key question in this case and unobtainable from any other source, Judicial Watch can discover it. So too for a department attorney's advice about settlement or about Clinton's use of a personal email for official business. Indeed, that's why the Court already took the "exceptional step" of permitting Judicial Watch to depose a State Department attorney, and further allowed Judicial Watch to request "*all* records—including internal communications—concerning this FOIA request" and "*all* records relating to the Department's practices, policies, and actions accounting for Office of

---

[2] Judicial Watch and (to a lesser extent) CREW routinely sue the government in this court over FOIA requests. In 2014 alone, Judicial Watch brought forty-four of the 228 FOIA cases filed in this district—according to PACER, nearly three times as many as the next most frequent plaintiff.

the Secretary records, including the emails of Hillary Clinton, Cheryl Mills, Huma Abedin, Jacob Sullivan, and other staff." Mem. & Order 8, 16 (emphasis added).

So the Court holds that any contemporaneous documents shedding light on the three narrow discovery topics—even documents evincing attorney impressions, conclusions, opinions, and theories—constitute fact work-product. This holding heeds the D.C. Circuit's instruction that "not every item which may reveal some inkling of a lawyer's mental impressions . . . is protected as opinion"—only impressions "creat[ing] a real, nonspeculative danger of [prejudicially] revealing the lawyer's thoughts." *Boehringer Ingelheim*, 778 F.3d at 151-52 (internal quotation marks omitted) (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988)). Here, the lack of any possible prejudice supports construing these documents as fact work-product: "the concerns for the integrity of the trial adversarial process are simply not present in the same way as" in, for instance, the situation where "one lawyer seeks the notes of opposing counsel taken during witness interviews." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 201 F.R.D. 265, 268 (D.D.C. 2001). Put differently, the law permits deeming the documents fact work-product since doing so will not affect State's position in this litigation. Additionally, construing these documents as fact work-product comports with the purpose of the work-product privilege: since "there will be no trial in this case and the parties are not conducting discovery to prepare their case for trial," *Judicial Watch, Inc.*, 201 F.R.D. at 268, society's general interest in revealing relevant facts outweighs any need to protect an attorney's private thoughts..

Accordingly, the Court overrides the government's assertions of work-product privilege in documents 21 (in part), 187 and 206 (duplicates), 901 (in part), and 1040.

### A. Document 21

This record from State's FOIA document review platform "facilitates and memorializes th[e] interactions" between the Department's attorneys and its FOIA division "to ensure that the Department's collection and processing of documents compl[ied] with FOIA's requirements." Gov't's Opp'n 20, ECF No. 107.

One comment—dated April 8, 2016 at 10:50 AM—"directly summarizes legal advice provided by" a State attorney "concerning the review of specific documents." *Id.* at 21. State properly withholds this comment under the attorney–client privilege.

But State's attempt to withhold other comments as opinion work-product fails for the reasons stated above. Since information about the scope and procedures of State's search goes to the heart of this case, the other comments are fact work-product. And since Judicial Watch shows a substantial need for the otherwise-unobtainable information, *see* Mot. Compel 18, ECF No. 102, the Court will order the corresponding portion's production.

### B. Document 76

This email from a department attorney to two department officials "involved in the search for records potentially responsive to the FOIA request at issue in this case" offers the attorney's "confidential legal advice about searches for documents responsive to the FOIA request at issue in the case." Gov't's Opp'n 23. The government redacts two parts: the body of the email, which clearly falls within attorney–client privilege; and the filename of a document attached to the email, which does not. But State adequately justifies the filename's redaction by explaining that since the attachment "has been produced and is available on the internet," unmasking its filename "would allow anyone to obtain the contents of the document about which [the attorney]

was seeking information for the purposes of providing legal advice," and thus "reveal portions of the confidential legal advice." Gov't's Opp'n 24. So the government properly asserts attorney–client privilege over document 76.

### C. Documents 187 & 206

State asserts work-product privilege over these duplicate documents from November 2014 summarizing "ongoing discussion between" State's FOIA department and an attorney "concerning the determination of whether the searches conducted in the case . . . were legally sufficient under FOIA." Gov't's Opp'n 24. Thus this document shines a spotlight on a central issue in this case: whether State's efforts to settle this case in late 2014 and early 2015 amounted to bad faith. And so—for purposes of this case—it is not only fact work-product, but also discoverable, since Judicial Watch shows a substantial need for the otherwise-unobtainable information. *See* Mot. Compel. 19. The Court will order its production.

### D. Document 896

This email from a department attorney to department officials "convey[s] the Legal Adviser's Office of Management's position as to what should happen next, in the future, regarding the processing of [the CREW] FOIA request." Gov't's Opp'n 9. Since the attorney–client privilege paradigmatically protects this confidential communication providing legal advice, the government properly withholds it.

### E. Document 897

The government asserts attorney–client privilege over this email chain between a department official and two department attorneys about "how State had processed a different FOIA request in the past relating to Secretary Clinton's emails, and how the processing of that

8

older request might relate to more recent developments that at least potentially involved the records of former Secretary Clinton." Gov't's Opp'n 12. Since this Court's in camera review confirms the redacted exchange shares facts the attorneys needed to understand a legal problem, the Court affirms the government's attorney–client privilege claim.

### F. Document 899

In this twelve-email chain, the government invokes attorney–client privilege over two sentences "drafted by a State Department Attorney-Adviser, and sent to other State Department attorneys and non-attorney officials . . . on the subject of State's then ongoing-discussions about how to process" CREW's FOIA request. Gov't's Opp'n 14. And since the withheld portions provide confidential legal advice on the next steps in processing that request, the government properly invokes the privilege.

### G. Document 900

The government applies attorney–client privilege to two confidential emails from a department attorney "recap[ping]" a department official's legal question and recommending the official take a particular action. Gov't's Opp'n 15-16. Accordingly, it constitutes legal advice from an attorney properly withheld under the attorney–client privilege.

### H. Document 901

This email chain with multiple redactions "reflects then-ongoing deliberations about how to handle the CREW request." Gov't's Opp'n 16. The government invokes both the work-product and attorney–client privileges since "State attorneys were engaged solely for the purposes of applying their legal judgment, and because litigation was reasonably anticipated."

Gov't's Opp'n 16-17. Yet the government never explains which privileges justify which redactions.

Regardless, the Court's in camera review determined that the attorney–client privilege justifies redacting only the emails from department attorneys Sheryl Walter and Gene Smilansky. In Walter's first email, she directs another State official to take a particular action; in subsequent emails, she asks Smilansky a legal question; he summarizes relevant facts and recommends a particular action; she asks a follow-up; and he responds. Accordingly, their emails fall within attorney–client privilege. But the remaining redaction—Karen Finegan's April 4, 2013 email—cannot be fairly characterized as a client requesting or an attorney providing legal advice. Instead, Finegan volunteers factual information beyond what Walter needed to understand the legal issue. So her email falls outside attorney–client privilege.

Nor does Finegan's email fall within the work-product privilege. It amounts to a factual observation about State's processing of CREW's request, not a legal impression, conclusion, opinion, or theory. And moreover, because the observation relates to when the Department learned about Clinton's missing emails, it sheds light on the central question of whether State attempted to settle this case in bad faith. Finegan's email accordingly constitutes discoverable fact work-product since Judicial Watch can show a substantial need for the otherwise unobtainable information. So the Court will override its redaction of Karen Finegan's email but affirm all other withholdings as proper under the attorney–client privilege.

### I. Document 902

Citing attorney–client privilege, the government redacts a one-sentence, "high-level summary of a prior (privileged) conversation" between a department official and a department

attorney concerning a legal question "about the CREW request." Gov't's Opp'n 18. Because that summary—shared only with other department officials—falls with the privilege, the government properly withholds it.

### J. Document 1040

Though the government withholds multiple parts of this email chain, Judicial Watch challenges only the withholding of Clarence Finney's response, which the government tries passing-off as opinion work-product. But for purposes of this case, it's fact work-product: it provides insight into whether State adequately searched for responsive documents. And even if it didn't, nothing in the response can be construed as a legal impression, conclusion, opinion, or theory—Finney, a non-lawyer, merely makes a matter-of-fact observation about the division of responsibilities among offices. So this document constitutes discoverable fact work-product since Judicial Watch demonstrates a substantial need for the otherwise-unobtainable information. *See* Mot. Compel 20. The Court will compel its release.

### K. Documents 1326, 1328 & 3636

This email chain "reflects a back and forth discussion between" two department officials with a department attorney carbon-copied, which the government contends cloaks their entire initial exchange in attorney–client privilege. Mot. Compel 21. Not so. After all, neither official engages the attorney, enlists his help in resolving a legal question, or even acknowledges him at all. And for his part, the attorney never participates in the conversation, making it impossible to know why the officials copied him on this specific exchange, or if he even read or acknowledged it. Yet for the attorney–client privilege to apply, the attorney must play a role in the description of a legal problem or the dissemination of legal advice. And since the proposed withholdings fail

11

to clear that low bar, the government inappropriately invokes the attorney–client privilege. So the Court will order the documents' production.

### L. Document 2475

The government asserts attorney–client privilege over emails between the State Department's deputy legal advisor and the general counsel of the National Archives and Records Administration soliciting and providing input on a draft of State's March 2015 letter to Clinton's attorneys concerning preservation of her emails. Judicial Watch claims the government waived the privilege by emailing another executive branch attorney outside the State Department.

True enough, voluntary disclosure to a third party ordinarily vitiates the attorney–client privilege. But courts in this district have extended attorney–client privilege to situations like this one, where counsel for one government agency asks for confidential legal advice from counsel for another government agency within the executive branch. *See Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 256 (D.D.C. 2017) (collecting cases). That strikes this Court as the right approach here too, given the historic significance and singular importance of the attorney–client privilege, and the salutary effects of interagency cooperation within a unitary executive. Since the withheld communication remained a confidential request for legal advice between lawyers in the executive branch, the attorney–client privilege applies.

## III. Conclusion

In sum, the Court affirms the government's assertions of attorney–client privilege in documents 21 (in part), 76, 896, 897, 899, 900, 901 (in part), 902, and 2475, but rejects the government's assertions of attorney–client privilege in the duplicate documents 1326, 1328, and 3636. The Court further rejects the government's assertion of work-product privilege in

documents 21 (in part), 187 and 206, 901 (in part), and 1040 (in part). So the Court will grant-in-part and deny-in-part Judicial Watch's motion to compel. A separate order follows.

June 12, 2019

*[signature]*

Royce C. Lamberth
United States District Judge