# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>　　Defendant. | No. 14-cv-1242 (RCL) |

## INTERVENOR HILLARY RODHAM CLINTON'S OPPOSITION
## TO PLAINTIFF'S REQUEST FOR A DEPOSITION

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Stephen L. Wohlgemuth (D.C. Bar. No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Intervenor Hillary Rodham Clinton*

**INTRODUCTION**

Judicial Watch, Inc. ("Judicial Watch") seeks leave to depose former Secretary of State Hillary Rodham Clinton. For the reasons to follow, we respectfully submit that this Court should deny Judicial Watch's request for a deposition and, at most, permit it to propound additional interrogatories to Secretary Clinton.

Discovery in FOIA cases is rare. When it is ordered, it is usually limited to an agency's potential bad faith or to the adequacy of its search for documents. In this case, the Court permitted discovery but limited it to three issues: (1) whether Secretary Clinton used private email in an effort to evade the Freedom of Information Act ("FOIA"); (2) whether the State Department's attempt to settle this FOIA case in 2014 and 2015 amounted to bad faith; and (3) whether the State Department has adequately searched for records responsive to Judicial Watch's FOIA request. It appears that the second and third issues have consumed much of this litigation. As Judicial Watch has seemingly acknowledged, Secretary Clinton has no knowledge about those issues. She left the State Department in February 2013—well before Judicial Watch submitted the FOIA request that is at issue in this case. She was not involved in any effort to settle this case or in any attempt by State Department officials to locate documents responsive to Judicial Watch's FOIA request.

With respect to the first issue—Secretary Clinton's state of mind in using private email while Secretary of State—there is an extensive public record on that subject. Secretary Clinton has spoken about her use of private email with Congress, the FBI, the media, and even Judicial Watch, which propounded interrogatories on the subject in a prior FOIA case before Judge Sullivan. Each and every time, she has made clear that she used personal email to conduct State Department business because she had done so in the Senate and because she believed it would be more convenient to use one electronic device (rather than two).

1

There is no new ground here for Judicial Watch to explore. In fact, Judicial Watch has already implicitly conceded as much. In the prior FOIA case, the Court invited Judicial Watch to seek leave to propound additional interrogatories if it had any follow-up questions after seeing Secretary Clinton's initial round of answers. Judicial Watch did not do so. After declining the opportunity to propound more interrogatories in the prior FOIA case, Judicial Watch cannot now credibly claim there is some gap in the extensive, existing record. But even if it could, there is no reason that it needs to fill any purported gap with a deposition of the former Secretary of State. In light of the existing record, even if there were a need for additional discovery—and there is not— it should be as minimally intrusive as possible and could be obtained by targeted interrogatories. Anything more would be cumulative and unnecessary.

## BACKGROUND

I.   **This Case.**

This lawsuit relates to a FOIA request that Judicial Watch submitted in May 2014, over a year after Secretary Clinton's February 2013 departure from the State Department. *See* Dkt. 1 ¶ 5. Judicial Watch's FOIA request seeks "any updates and/or talking points given to Ambassador Rice" concerning "the September 11, 2012 attack on the U.S. consulate in Benghazi, Libya" and any communications or records "relating to those talking points or updates." *Id.* As this Court has recognized, the case has since "expanded" beyond those narrow FOIA requests to now encompass "the motives behind [Secretary Clinton's] private email use while Secretary, and behind the government's conduct in this litigation." Dkt. 65 at 1. This Court found that the existence of these issues made this case one of the rare FOIA cases warranting discovery. Dkt. 39 at 3.

Although this Court granted discovery, it recognized that the scope of discovery depended, at least in part, on the scope of discovery in *Judicial Watch v. Department of State*, 13-cv-1363 (D.D.C.), a related FOIA case pending before Judge Sullivan. Specifically, this Court held that,

2

after Judge Sullivan ruled on the scope of discovery in that case, Judicial Watch would have to identify what "additional proposed discovery, tailored to this case, it seeks to have this Court order." Dkt. 39 at 3.

Judge Sullivan ordered discovery on two issues: "[1] the creation and operation of clintonemail.com for State Department business, [2] as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State's processing of the FOIA request that is the subject of this action." Dkt. 73, No. 13-cv-1363, at 12. Although Judicial Watch requested a deposition of Secretary Clinton on those subjects, Judge Sullivan rejected that request, finding that any discovery must be sought using "other, less burdensome means such as interrogatories." *See Judicial Watch v. U.S. Dep't of State*, Case No. 13-1363, 2016 WL 10770466, at *6 (D.D.C. Aug. 19, 2016).

Judicial Watch propounded 25 interrogatories on Secretary Clinton. She initially answered 22 of them and objected to the remaining three on relevance or privilege grounds. *See* Ex. A. After a motion to compel, Judge Sullivan ordered Secretary Clinton to provide answers to two of the three interrogatories to which she objected. She did so. *See* Ex. B (Supplemental Responses of Hillary Rodham Clinton). Although Judge Sullivan expressly invited Judicial Watch to seek leave to "move this Court for permission to serve additional interrogatories" if it turned out to have been "unable to anticipate" any needed follow-up questions, Judicial Watch never sought such leave or otherwise challenged the adequacy and completeness of any of Secretary Clinton's answers. *See Judicial Watch*, 2016 WL 10770466, at *6.

After Judge Sullivan's rulings, this Court addressed the scope of discovery in this case and ordered that it should be limited to the following three issues: (1) "Whether Secretary Clinton intentionally attempted to evade FOIA by using a private email server while Secretary of State";

3

(2) "Whether State's efforts to settle this case in late 2014 and early 2015 amounted to bad faith"; and (3) "Whether State adequately search for records responsive to Judicial Watch's FOIA request." Dkt. 65 at 1.  Two of those issues—State's settlement attempts and its search for records—relate to events that occurred well after Secretary Clinton left the State Department in February 2013.

Although the Court declined to "expressly curtail discovery in this case" because of the overlapping discovery in the prior Judicial Watch case, the Court expressed its "hope[] [that] the parties [would] avoid unnecessarily duplicative discovery here." *Id.*

## II. Judicial Watch's Request to Depose Secretary Clinton.

Judicial Watch has now requested permission to depose Secretary Clinton in this case. According to Judicial Watch, it would like to depose Secretary Clinton on the following subjects: "(i) whether her use of a private email server was intended to stymie FOIA; (ii) whether the State Department's efforts to settle this case in late 2014 and 2015 amounted to bad faith; and (iii) whether the State Department has adequately searched for records responsive to Plaintiff's request." Dkt. 131 at 14.  For the first time in this case (or the previous one), it also seeks leave to depose her on subjects that are completely outside the range of FOIA discovery—namely, "the preparation of talking points for [Ambassador] Rice's September 16, 2012 media appearances, the advance dissemination or discussion of those talking points, the aftermath of Rice's appearances, and the Department's evolving understanding of the Benghazi attack." *Id.* at 15.

Judicial Watch has now significantly expanded its discovery demands.  Previously, Judicial Watch stated that it did <u>not</u> want to depose Secretary Clinton regarding her use of personal email for State Department business.  *See* Dkt. 50 at 9-10.  It now claims that such a deposition is needed, purportedly because it has "discovered new facts that necessitate questioning [Secretary] Clinton on this topic." Dkt. 131 at 14.  Judicial Watch specifically points to an email exchange between

4

Secretary Clinton and General David Petraeus from January 2009.  *Id.*  But this "new fact" is not new at all.  Although Judicial Watch states that this email exchange was recently produced on "May 6, 2019," *id.* at 14, it fails to disclose that the State Department actually first produced the email exchange in October 2016.  In fact, Judicial Watch itself issued a press release on October 20, 2016 relating to this very email exchange.  S*ee* Judicial Watch, *Clinton Emails with Petraeus Reveal Her 'Blackberry Blues;' Clinton Tells Then-Centcom Commander to Use Her 'Personal Email Address'*, https://www.judicialwatch.org/press-releases/clinton-emails-petraeus-reveal-blackberry-blues-clinton-tells-centcom-commander-use-personal-email-address/ (October 20, 2016).  Judicial Watch has identified no other purportedly "new" fact necessitating a deposition.

## ARGUMENT

I.   **Under This Court's Discovery Ruling, The Only Subject Relevant to Secretary Clinton Is "Whether [She] Intentionally Attempted To Evade FOIA By Using A Private Email Server While Secretary Of State."**

As this Court has recognized, discovery in FOIA cases is "rare."  *Schrecker v. U.S. DOJ*, 217 F. Supp. 2d 29, 36–37 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *see Thomas v. Dep't of Health & Human Servs.*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008); *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000).  And when discovery is granted, it is usually limited in scope—typically to "the adequacy of the agency's search" or the agency's potential "bad faith."  *Voinche v. F.B.I.*, 412 F. Supp. 2d 60, 72–73 (D.D.C. 2006).  Discovery is not an invitation for a "fishing expedition[]."  *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 54 (D.D.C. 2009).

Here, the Court found that there are only three genuine issues in dispute.  The only one relevant to Secretary Clinton is the first:  "Whether [she] intentionally attempted to evade FOIA by using a private email server while Secretary of State."  Dkt. 65 at 1.  The other two issues—State's effort to settle this case and its FOIA search—relate to events that occurred well after she

5

left office.[1]  Secretary Clinton knows nothing about the State Department's proposed settlement of this case or its response to Judicial Watch's FOIA request.  Judicial Watch has offered no basis for concluding otherwise.

But more troublingly, Judicial Watch is attempting to go far beyond the three narrow subjects this Court identified as the genuine issues in dispute.  It now wants to depose Secretary Clinton about the attacks on the Benghazi compound as well as the government's response to those attacks—subjects that have nothing to do with FOIA.  *See supra* p. 4.  This is a FOIA case.  Discovery in FOIA cases is rare and, even when discovery is granted, it is typically limited to the government's potential bad faith or the adequacy of the agency's search for <u>documents</u>, and does not extend to the substance of the documents requested.  *See Voinche*, 412 F. Supp. 2d at 72.  The United States' response to the 2012 terrorist attack in Benghazi does not fall within the three specific issues on which this Court ordered discovery and it does not otherwise relate to the State Department's potential bad faith or its search for documents.  Nor is the underlying substance of the documents requested by Judicial Watch in its FOIA request in any way relevant to the claims and defenses in this case, as is required to be discoverable.  *See* Fed. R. Civ. P. 26(b)(1).  We respectfully submit that Judicial Watch is not entitled to any discovery on these newly introduced topics.

**II.    Secretary Clinton Has Already Addressed the Issue of Whether She "Intentionally Attempted to Evade FOIA" in Sworn Statements and in Other Public Statements.**

This Court's prior orders recognize that discovery in this case should not be "unnecessarily duplicative" of the discovery in the prior Judicial Watch FOIA case, Dkt. 65 at 2, and that it should be "tailored to this case," Dkt. 39 at 3.  Moreover, as Judicial Watch has already conceded, the

---

[1] Her lack of knowledge of these two issues may be easily established by interrogatories.

"apex doctrine" holds that a deposition of "current or former high-ranking government official" must be justified by "extraordinary circumstances."[2] *Judicial Watch*, 2016 WL 10770466, at *6 (noting that Judicial Watch "agree[d]" with that proposition). Under that standard, Judicial Watch must be mindful of whether "the necessary information can[] be obtained through other, less burdensome or intrusive means." *Id.* This principle is consistent with the generally applicable rules governing discovery, which limit discovery if a party seeks information that is "unreasonably cumulative or duplicative" or that can obtained "from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Under those principles, Judicial Watch is not entitled to discovery, as it already has an extensive public record regarding whether Secretary Clinton used private email in an attempt to "evade FOIA." The Benghazi Select Committee, the State Department Inspector General, and the FBI also have conducted inquiries and made findings on her use of private email. The findings of those inquiries are public.[3]

Perhaps more importantly, Secretary Clinton has already answered all the questions that Judicial Watch had on this topic by providing verified answers to Judicial Watch's thorough interrogatories. Judicial Watch asked Secretary Clinton about:

- the "creation" of her private email account and system (interrogatories 1 and 2);
- when she decided to use a private email account (interrogatory 3);

---

[2] *See also* Ex. I at 36 ("THE COURT: You agree that the apex line of cases does control? MR. BEKESHA: It does, Your Honor.").

[3] *See* U.S. Department of State, Office of Inspector General, *Evaluation of the Department of State's FOIA Process for Requests Involving the Secretary* (January 2016); U.S. Department of State, Office of Inspector General, *Office of the Secretary: Evaluation of Email Records Management and Cyber Security Requirements* (May 2016); U.S. Department of Justice, Office of Inspector General, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* (June 2018).

- the process by which she made this decision (interrogatories 4, 5, 6, and 20);

- why she used a private email account (interrogatory 7);

- whether FOIA or other recordkeeping laws played any role in the decision (interrogatories 7, 8, and 9);

- what steps she took to preserve her emails for FOIA purposes (interrogatory 10 and 13);

- which officials within the State Department were aware of her use of private email (interrogatory 11);

- whether she recalls responding to a FOIA request during her tenure (interrogatory 12);

- her departure from the State Department (interrogatories 19, 21); and

- the potential destruction of documents (interrogatory 22).

Judicial Watch also asked several detailed questions about specific documents (interrogatories 16, 17, 18, 24).

Secretary Clinton answered all of those questions under oath and to the best of her ability. Judicial Watch never complained that her answers to those questions were incomplete or that it needed additional follow-up interrogatories to clarify any perceived ambiguities. In fact, Judge Sullivan invited Judicial Watch to seek leave to propound additional interrogatories if it felt the need to ask additional follow-ups. *Supra* p. 3. Judicial Watch never did so.

Nor could it have credibly done so. In her verified responses, Secretary Clinton provided the following information:

- She explained the origins of her use of private email: "In the Senate, when Secretary Clinton began using e-mail, she used a personal e-mail account for both work-related and personal e-mail. Secretary Clinton decided to transition from the account she used in her tenure at the Senate to the clintonemail.com account. She recalls that it was created in early 2009. Secretary Clinton did not set up the account. Although Secretary Clinton does not have specific knowledge of the details of the account's creation, her best understanding is that one of President Clinton's aides, Justin Cooper, set up the account. She decided to use a clintonemail.com account for the purpose of convenience." Ex. A at 5.

8

- She also addressed FOIA and other recordkeeping laws, stating that she did "not recall being advised, cautioned, or warned, [that] she d[id] not recall that it was ever suggested to her, and [that] she d[id] not recall participating in any communication, conversation, or meeting in which it was discussed that her use of a clintonemail.com e-mail account to conduct official State Department business conflicted with or violated federal recordkeeping laws." Ex. A at 7. She further stated that "she understood that e-mail she sent or received in the course of conducting official State Department business was subject to FOIA" and that "[s]he further understood that, because her practice was to e-mail State Department staff on their state.gov accounts, her e-mail was being captured in the State Department's record-keeping systems." Ex. A at 8.

- She also directly addressed whether she intended to "evade" FOIA. Judicial Watch asked her "What factors other than convenience did you consider in deciding to use a personal email account to conduct official State Department business?" Ex. A. at 7. Judicial Watch specifically asked her if she "considered federal records management and preservation requirements." *Id.* Secretary Clinton responded that "she does not recall considering factors other than convenience in deciding to use a personal email account to conduct official State Department business." *Id.* at 8.

These verified responses, along with the others in her interrogatory responses, answer any question that Judicial Watch could possibly have regarding whether Secretary Clinton intended to "evade" FOIA. Her responses are, moreover, consistent with her other public statements about this subject, all of which are available to Judicial Watch.

For instance, in her interview with the FBI, subject to 18 U.S.C. § 1001, Secretary Clinton addressed the same subjects, as is clear from the FBI's Form 302 from the interview:

> CLINTON used a private email address with AT&T during her time in the Senate for official and personal use. CLINTON recalled knowing her husband, WILLIAM J CLINTON, had private email addresses for his aides. CLINTON did not recall her specific conversations regarding the creation of the clintonemail.com domain, but around January 2009, directed aides to create the email account. It was a matter of convenience to move onto a system maintained by her husband's staff . . . . CLINTON did not recall receiving guidance from State regarding email policies outlined in the Foreign Affairs Manual. CLINTON advised [that] everyone at State knew she had a private email address because it was displayed to anyone with whom she exchanged emails; however, she did not explicitly request permission to use a private server or email address. During her tenure, no one at State raised concerns regarding Clinton's use of a private server or email address . . . .

9

> CLINTON never deleted, nor did she instruct anyone to delete, her email to avoid complying with the Federal Records Act, FOIA, or State or FBI requests for information. Concerning the Congressional preservation request on March 3, 2015 for email and other records, CLINTON trusted her legal team would comply with the request.

Ex. C at 4, 10. Similarly, the FBI's "Letterhead Memorandum" regarding the "CLINTON E-MAIL INVESTIGATION" provided:

> According to [Justin] Cooper [an aide to former President William Jefferson Clinton], in January 2009, Clinton decided to stop using her hr15@att.blackberry.net e-mail address and instead began using a new private domain, clintonemail.com, to host e-mail service on the Apple Server. Clinton stated to the FBI that she directed aides, in or around January 2009, to create the clintonemail.com account, and as a matter of convenience her clintonemail.com account was moved to an e-mail system maintained by President Clinton's aides.

Ex. D at 3 (footnote omitted).[4]

During her earlier testimony under oath before the House Select Committee on Benghazi, Secretary Clinton stated:

> Well, Congressman, I have said repeatedly that I take responsibility for my use of personal email. I've said it was a mistake. I've said that it was allowed, but it was not a good choice. When I got to the Department, we were faced with a global financial crisis, major troop decisions on Afghanistan, the imperative to rebuild our alliances in Europe and Asia, an ongoing war in Iraq, and so much else.

> Email was not my primary means of communication, as I have said earlier. I did not have a computer on my desk. I've described how I did work, in meetings, secure and unsecure phone calls, reviewing many, many pages of materials every day, attending . . . . a great deal of meetings. And I provided the department, which has been providing you, with all of my work-related emails, all that I had, approximately 55,000 pages, and they are being publicly released.

Ex. E at 401.

---

[4] Former FBI Director James Comey testified consistently with this memorandum. When asked, "was the reason she set up her own private server in your judgment because she wanted to shield communications from Congress and the public?", he answered: "I can't say that. Our best information is that she set it up as a matter of convenience." *See Oversight of the State Department: Hearing Before the H. Comm. on Oversight & Gov't Reform*, 114th Cong. 20 (2016).

In recent years, Secretary Clinton has been frequently asked about her decision to use personal email for State Department business, and she has provided the same information she gave in her testimony under oath. In her 2017 book, *What Happened*, Secretary Clinton wrote:

> Yes, it was supposed to be convenient. Some doubted that explanation. But that's what the FBI concluded after months of investigation. And it's the truth . . . .
>
> I knew that former Secretary of State Colin Powell had used personal email exclusively. I also knew that email wasn't where the bulk of a Secretary's work was done. All this added up to me not giving this much thought when I took office—there was a lot else going on—although, of course, I now wish I had . . . .
>
> As for record keeping, because the overwhelming number of people with whom I was exchanging work-related emails were government personnel on their ".gov" email addresses, I had every reason to think the messages I sent should have been captured by the government's servers, archived, and made available for Freedom of Information Act (FOIA) requests."

Ex. F at 292–96.

During a 2016 interview on 60 Minutes, she was also asked about her private email use.

> Scott Pelley: Why did you do that? Have the private email servers?
>
> Hillary Clinton: You know, Scott, other people did have—other secretaries of state, other high-ranking members, plural—and it was recommended that it would be convenient, and I thought it would be. It's turned out to be anything but.

Ex. G at 8.

Similarly, at a 2015 press conference, she stated:

> [W]hen I got to work as secretary of state, I opted for convenience to use my personal email account, which was allowed by the State Department, because I thought it would be easier to carry just one device for my work and for my personal emails instead of two.
>
> Looking back, it would've been better if I'd simply used a second email account and carried a second phone, but at the time, this didn't seem like an issue.
>
> [T]he vast majority of my work emails went to government employees at their governmental addresses, which meant they were captured and preserved immediately on the system at the State Department.

11

Ex. H at 3–4.

In sum, the existing public record on the Secretary Clinton's purpose for using private email while Secretary of State is extensive. Judicial Watch has already agreed that it is entitled to discovery only if it can show "extraordinary circumstances." *See Judicial Watch*, 2016 WL 10770466, at *6. It cannot meet that standard because "the necessary information can[] be obtained through other, less burdensome or intrusive means." *Id.* Here, the "necessary information" can be found in the existing record, which includes verified answers to 25 interrogatories propounded by Judicial Watch, statements made in an FBI interview, and sworn testimony to Congress.

### III. If the Court Grants Any Discovery, It Should Be in the Form of Targeted Interrogatories.

If, however, the Court concludes that Judicial Watch somehow is entitled additional discovery on Secretary Clinton's state of mind, Judicial Watch should obtain that discovery by propounding a limited set of additional interrogatories, rather than through a deposition. In fact, in the previous FOIA case, when the Court asked whether the motivation question could be answered fully under oath in an interrogatory, counsel for Judicial Watch recognized, "It could be, Your Honor. I don't want to say that it can't be." *See* Ex. I at 49. Because Secretary Clinton only has discoverable information relating to one narrow issue—her intent in using private email—Judicial Watch would be able to obtain any information it purportedly needs through targeted interrogatories.[5] Because Secretary Clinton is a former Cabinet Member, discovery is inappropriate if the

---

[5] In the event any discovery were permitted (and it should not be), interrogatories, rather than depositions, are also more appropriate because they will more readily allow the Court to police the boundaries of appropriate discovery. For example, Judicial Watch has already made clear that it wants to ask Secretary Clinton about the American response to the terrorist attacks in Benghazi. That request is inappropriate for the reasons already discussed. But the request also highlights the

information can "be obtained through other, less burdensome or intrusive means." *See Judicial Watch*, 2016 WL 10770466, at *6; *see also* Fed. R. Civ. P. 26(b)(2)(C)(i). Here, the less burdensome or intrusive means are interrogatories.

In fact, Judicial Watch has not yet offered much argument about why a deposition, rather than interrogatories, is necessary.[6] It will likely try to argue, as it did before Judge Sullivan, that it needs the opportunity to ask "follow-up questions." But given the state of the public record, which includes extensive discovery that Judicial Watch has already conducted, Judicial Watch should have all it needs to propound targeted interrogatories on the single relevant issue and to anticipate any follow-up questions. Moreover, the previous FOIA case shows that Judicial Watch has no legitimate need to ask "follow-up questions." Judicial Watch propounded 25 interrogatories, and Secretary Clinton ultimately answered 24 of them. Judicial Watch did not allege that any of those responses were incomplete. Nor did Judicial Watch seek leave to propound additional follow-up interrogatories—even though the Court invited it to do so. *Supra* p. 3. That history shows that Judicial Watch does not now need to conduct a deposition of the former Secretary.

For these reasons, we respectfully submit that any discovery method other than targeted interrogatories would be unnecessary, cumulative, and unduly burdensome.

---

potential for abuse that could arise during a deposition, as Judicial Watch may be tempted to ask questions that are outside the scope of permissible discovery.

[6] In its Status Report, Judicial Watch claimed that the recent "discover[y]" of emails between Secretary Clinton and General Petraeus were "new facts that necessitate" a deposition. Dkt. 131 at 14. But as shown above, those "new facts" were known to Judicial Watch in October 2016. *Supra* pp. 4-5. In any event, any question that Judicial Watch has about the exchange could have been asked in an interrogatory. After the emails were produced, Judicial Watch never sought leave to pose such an interrogatory in the prior FOIA case, undermining any assertion of a need to do so now.

**IV.     Other arguments**

Because Secretary Clinton is a recent intervenor, she has not previously had a chance to address this Court.  For the record, she therefore takes this opportunity to incorporate by reference the arguments raised by the State Department in its recent status report, as well as the arguments that she raised in the previous Judicial Watch FOIA case, as to why Judicial Watch is not entitled to any discovery in this FOIA case.  *See* Dkt. 133; *see also* Case No. 13-1363, Dkt. 102, 109 (attached hereto as Exs. J-K).  For the reasons set forth more fully in those filings, counsel to Secretary Clinton respectfully submits that discovery is unwarranted in this case as a general matter because this Court lacks jurisdiction to compel relief related to Secretary Clinton's e-mails under *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), and because any dispute relating to Secretary Clinton's intent in using private email is moot.

## CONCLUSION

Secretary Clinton respectfully requests that this Court deny Judicial Watch's request for a deposition.  If the Court orders any discovery from Secretary Clinton, Secretary Clinton respectfully submits that it be in the form of interrogatories only.

Respectfully submitted,

/s/ David E. Kendall

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Stephen L. Wohlgemuth (D.C. Bar. No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

                      Telephone: (202) 434-5000
                      Facsimile: (202) 434-5029
                      dkendall@wc.com
                      kturner@wc.com
                      asaharia@wc.com
                      swohlgemuth@wc.com

                      *Counsel for Intervenor Hillary Rodham Clinton*

September 23, 2019

**CERTIFICATE OF SERVICE**

I, David E. Kendall, counsel for Intervenor Hillary Rodham Clinton, certify that, on September 23, 2019, a copy of this Opposition was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ David E. Kendall
David E. Kendall
