# EXHIBIT B

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF COLUMBIA

3    - - - - - - - - - - - - x

4    JUDICIAL WATCH, INC.,      :

5            Plaintiff,         :

6      v.                       :    Case No.

7    U.S. DEPARTMENT OF STATE, : 14-cv-1242 (RCL)

8            Defendant.         :

9    - - - - - - - - - - - - X

10

11      Videotaped Deposition of TASHA MARIE THIAN

12                 Washington, DC

13            Thursday, September 19, 2019

14                  10:17 a.m.

15

16

17

18

19

20   Job No.:  262167

21   Pages 1 - 216

22   Reported by:  Debra A. Whitehead

1        Videotaped Deposition of TASHA MARIE THIAN,

2    held at the offices of:

3

4            PLANET DEPOS - DC

5            1100 Connecticut Avenue, NW

6            Suite 950

7            Washington, DC 20036

8            (888) 433-3767

9

10

11

12

13        Pursuant to notice, before Debra A. Whitehead,

14    an Approved Reporter of the United States District

15    Court and Notary Public of the District of Columbia.

16

17

18

19

20

21

22

1                A P P E A R A N C E S

2     ON BEHALF OF PLAINTIFF:

3         RAMONA COTCA, ESQUIRE

4         LAUREN M. BURKE, ESQUIRE

5         PAUL J. ORFANEDES, ESQUIRE

6         JUDICIAL WATCH, INC.

7         425 Third Street, SW

8         Suite 800

9         Washington, DC 20024

10        (202) 646-5172

11

12    ON BEHALF OF DEFENDANT AND THE WITNESS:

13        JOSHUA E. GARDNER, ESQUIRE

14        STEPHEN M. PEZZI, ESQUIRE

15        U.S. DEPARTMENT OF JUSTICE

16        FEDERAL PROGRAMS BRANCH

17        1100 L Street, NW

18        Washington, DC 20005

19        (202) 305-7583

20

21

22

1     A P P E A R A N C E S   C O N T I N U E D

2   ON BEHALF OF DEFENDANT:

3       MICHAEL LIEBERMAN, ESQUIRE

4       UNITED STATES DEPARTMENT OF STATE

5       2201 C Street, NW

6       Washington, DC 20520

7       (202) 647-6371

8

9

10  ALSO PRESENT:

11      JEREMY DINEEN, Video Specialist

12

13

14

15

16

17

18

19

20

21

22

| | | |
|---|---|---|
| 1 | A    At the San Francisco passport agency. | 10:22:12 |
| 2 | Q    Okay. | 10:22:14 |
| 3 | A    Transferred to Washington in 1986.  I | 10:22:15 |
| 4 | left and worked with the Department of Justice as | 10:22:20 |
| 5 | a paralegal specialist for two years, in 1988 to | 10:22:23 |
| 6 | '90.  I then returned to the State Department in | 10:22:28 |
| 7 | 1990.  And I was there at the State Department | 10:22:32 |
| 8 | until June of 2014.  I left and went to the | 10:22:36 |
| 9 | National Archives, where -- where I retired in | 10:22:43 |
| 10 | June of 2016. | 10:22:50 |
| 11 | Q    Okay. | 10:22:52 |
| 12 | A    I had a variety of positions that I held, | 10:22:52 |
| 13 | but most notably I was the records officer of the | 10:22:56 |
| 14 | Department of State from 20 -- or 2007 until 2014. | 10:23:00 |
| 15 | Q    Okay. | 10:23:05 |
| 16 | A    June of 2014. | 10:23:10 |
| 17 | Q    Okay.  I want to get to that.  Just very | 10:23:11 |
| 18 | briefly, when you went over to National Archives, | 10:23:14 |
| 19 | what was your position there? | 10:23:16 |
| 20 | A    It was a similar position that I had at | 10:23:17 |
| 21 | the State Department.  It was titled the Director | 10:23:18 |
| 22 | of Corporate Records Management.  And it was the | 10:23:21 |

| | | |
|---|---|---|
| 1 | e-mail use? | 10:49:15 |
| 2 | A     Not with Ms. Grafeld's question. | 10:49:16 |
| 3 | Q     What did you do it with? | 10:49:20 |
| 4 | A     It was -- we believed that she did not | 10:49:24 |
| 5 | use e-mail.  So when we would have conversations | 10:49:26 |
| 6 | with the I -- the IT group, the IRM group, we had | 10:49:29 |
| 7 | a different process going on for department -- | 10:49:34 |
| 8 | senior officials.  I called it the Kennedy memo | 10:49:39 |
| 9 | procedures. | 10:49:43 |
| 10 | And, you know, in those discussions we -- | 10:49:44 |
| 11 | I would have expressed that, you know, about the | 10:49:47 |
| 12 | e-mail, whether she had e-mail, and how we were | 10:49:50 |
| 13 | managing the senior accounts. | 10:49:54 |
| 14 | So it was my assumption that -- that | 10:49:59 |
| 15 | the -- that she had a gatekeeper, or gatekeepers, | 10:50:02 |
| 16 | that would get information to her.  So we had | 10:50:07 |
| 17 | these conversations. | 10:50:11 |
| 18 | Q     Okay. | 10:50:11 |
| 19 | A     Yes. | 10:50:12 |
| 20 | Q     And I just want to parse this out a | 10:50:12 |
| 21 | little bit. | 10:50:15 |
| 22 | What are the -- okay.  So first of all, | 10:50:15 |

| | | |
|---|---|---|
| 1 | to Secretary Clinton and her staff -- | 10:53:32 |
| 2 | MR. GARDNER:  Objection.  Form. | 10:53:36 |
| 3 | Q   -- when they came on board? | 10:53:40 |
| 4 | MR. GARDNER:  Same objection. | 10:53:42 |
| 5 | A   I don't -- I don't know. | 10:53:42 |
| 6 | Q   Okay.  When Secretary -- in 2009, during | 10:53:45 |
| 7 | Secretary Clinton's transition to the State | 10:53:51 |
| 8 | Department, are you -- do you have any knowledge | 10:53:56 |
| 9 | or did you partake in any discussions with | 10:53:58 |
| 10 | Secretary Clinton or any representatives of | 10:54:01 |
| 11 | Secretary Clinton with respect to any record | 10:54:04 |
| 12 | management? | 10:54:07 |
| 13 | A   Yes.  And prior to her tenure? | 10:54:09 |
| 14 | Q   Yes. | 10:54:11 |
| 15 | A   Yes. | 10:54:11 |
| 16 | Q   Okay.  When was that? | 10:54:12 |
| 17 | A   It would have had to have been either | 10:54:15 |
| 18 | late December 2008 or early January 2009. | 10:54:17 |
| 19 | Q   Okay.  And who did you -- who was -- who | 10:54:21 |
| 20 | partook in the conversation you had? | 10:54:25 |
| 21 | A   Okay.  She sent a representative, it | 10:54:26 |
| 22 | was -- it was a young man.  I don't remember his | 10:54:30 |

| | | |
|---|---|---|
| 1 | name.  We did have a -- an attorney from the legal | 10:54:32 |
| 2 | office.  I believe it was Jeremy Freeman, but I'm | 10:54:38 |
| 3 | not absolutely certain; they rotated frequently. | 10:54:44 |
| 4 | And Clarence Finney. | 10:54:48 |
| 5 | Q    Okay.  The representative for Secretary | 10:54:53 |
| 6 | Clinton, the young man, did he come -- become -- | 10:55:02 |
| 7 | was he hired on at the State Department? | 10:55:05 |
| 8 | A    I don't know. | 10:55:08 |
| 9 | Q    Did you ever see him at the State | 10:55:09 |
| 10 | Department after this meeting? | 10:55:11 |
| 11 | A    I don't remember seeing him again. | 10:55:13 |
| 12 | Q    Okay.  You don't recall his name? | 10:55:14 |
| 13 | A    No. | 10:55:19 |
| 14 | Q    Do you remember if he was an attorney for | 10:55:19 |
| 15 | Secretary Clinton? | 10:55:21 |
| 16 | A    I don't know. | 10:55:24 |
| 17 | Q    Okay.  And what were the -- what were the | 10:55:25 |
| 18 | discussions during that meeting with respect to | 10:55:33 |
| 19 | records management? | 10:55:36 |
| 20 | A    That the Secretary wanted -- or the | 10:55:38 |
| 21 | incoming Secretary wanted to bring with her | 10:55:40 |
| 22 | materials, personal papers, which were copies of | 10:55:44 |

| | | |
|---|---|---|
| 1 | material from her time as the First Lady, as well | 10:55:48 |
| 2 | as her time as a Senator, and -- and some other -- | 10:55:52 |
| 3 | you know, some other material, like contacts. | 10:55:56 |
| 4 | So she wanted to bring those with her, | 10:55:59 |
| 5 | and that she was -- she knew that we had a | 10:56:01 |
| 6 | process, and she wanted to make sure that she | 10:56:07 |
| 7 | could take them with her when she left the | 10:56:10 |
| 8 | department. | 10:56:13 |
| 9 | Q   And what was -- and what part of the | 10:56:14 |
| 10 | process was discussed at that point? | 10:56:20 |
| 11 | MR. GARDNER:  Objection.  Form. | 10:56:23 |
| 12 | A   We did inform the young man what the | 10:56:26 |
| 13 | process was, the departing officials procedures. | 10:56:30 |
| 14 | I believe we gave him the departing officials | 10:56:35 |
| 15 | notice, the department notice.  And I believe we | 10:56:39 |
| 16 | gave him the government briefing booklet. | 10:56:41 |
| 17 | We either did that or we mailed it to | 10:56:45 |
| 18 | him. | 10:56:47 |
| 19 | Q   Okay.  The first one you said, I think | 10:56:48 |
| 20 | you said the departing officials procedures? | 10:56:53 |
| 21 | A   Yes. | 10:56:56 |
| 22 | Q   Did you discuss -- or did the departing | 10:56:56 |

| | | |
|---|---|---|
| 1 | officials procedures or the government briefing | 10:57:07 |
| 2 | booklet, did they cover e-mail use? | 10:57:10 |
| 3 | MR. GARDNER:  Objection.  Form. | 10:57:13 |
| 4 | A    Yes, it does. | 10:57:14 |
| 5 | Q    And was -- was whether Secretary Clinton | 10:57:14 |
| 6 | would use e-mail covered at the meeting? | 10:57:20 |
| 7 | A    No. | 10:57:22 |
| 8 | Q    Was there any discussion about the State | 10:57:22 |
| 9 | Department's policy with respect to e-mails -- | 10:57:28 |
| 10 | A    No. | 10:57:31 |
| 11 | Q    -- at that meeting? | 10:57:31 |
| 12 | A    Not at that meeting, no. | 10:57:32 |
| 13 | Q    Okay.  So what was covered at the meeting | 10:57:34 |
| 14 | with respect to the records that Secretary Clinton | 10:57:40 |
| 15 | wanted to bring at the State Department? | 10:57:44 |
| 16 | A    It was very specific to what she wanted | 10:57:45 |
| 17 | to bring with her.  We went over the process, what | 10:57:47 |
| 18 | the requirements were.  And then we informed them. | 10:57:52 |
| 19 | I don't know if we waited to inform them, I can't | 10:57:58 |
| 20 | remember that.  But we informed them that we | 10:58:01 |
| 21 | wanted a -- a letter or a memo describing what the | 10:58:03 |
| 22 | material was, and that the material was to be kept | 10:58:07 |

| | | |
|---|---|---|
| 1 | separate from State Department records. | 10:58:10 |
| 2 | Q    Why was the material to be kept separate | 10:58:17 |
| 3 | from State Department records? | 10:58:19 |
| 4 | A    So that it did -- so that it didn't get | 10:58:21 |
| 5 | intermixed with State Department records. | 10:58:24 |
| 6 | Q    And that was explained to Secretary | 10:58:26 |
| 7 | Clinton's representative at that meeting? | 10:58:30 |
| 8 | A    Yes. | 10:58:31 |
| 9 | Q    Is that the only meeting that you had | 10:58:31 |
| 10 | with respect to records management during the | 10:58:47 |
| 11 | transition period for Secretary Clinton? | 10:58:49 |
| 12 | A    Yes. | 10:58:52 |
| 13 | Q    Okay.  And were there any other times | 10:58:52 |
| 14 | that you inquired or had discussions with respect | 10:59:00 |
| 15 | to Secretary Clinton's e-mails? | 10:59:02 |
| 16 | Do you understand my question? | 10:59:10 |
| 17 | A    No, I -- I don't really. | 10:59:11 |
| 18 | MR. GARDNER:  I don't, either. | 10:59:13 |
| 19 | A    It's really broad. | 10:59:14 |
| 20 | Q    Again going back to your earlier | 10:59:15 |
| 21 | testimony that you were repeatedly told that | 10:59:19 |
| 22 | Secretary Clinton didn't use e-mail -- | 10:59:21 |

1    legal department, that he was also provided a                11:17:20

2    client support manual?                                       11:17:25

3        A    Oh.                                                 11:17:28

4        Q    What is a client support manual?                    11:17:28

5        A    Oh, okay.  That was maybe not at that               11:17:30

6    meeting.  But the -- the Secretary's office, I got           11:17:32

7    this through a FOIA.  So I -- I did not have that            11:17:38

8    knowledge beforehand.  And --                                11:17:42

9            MR. GARDNER:  So objection.  Lack of                 11:17:45

10   foundation.                                                  11:17:46

11       A    Yeah.                                               11:17:48

12       Q    Okay.  What is the client support manual?           11:17:48

13       A    It was a manual, I believe from S-IRM, of           11:17:52

14   how things are operating within the Secretary's             11:17:59

15   office.                                                      11:18:02

16       Q    And when was that manual provided to the            11:18:06

17   Secretary's office?                                          11:18:08

18       A    I don't know.                                       11:18:09

19           MR. GARDNER:  Objection.  Lack of                    11:18:10

20   foundation.                                                  11:18:11

21       A    I don't know.  Like I said, I received it           11:18:12

22   from a -- the only FOIA response I received.                 11:18:14

| | | |
|---|---|---|
| 1 | Q    So you submitted a FOIA request to the | 11:18:18 |
| 2 | State Department? | 11:18:22 |
| 3 | A    Yes.  I wanted to know what the Secretary | 11:18:23 |
| 4 | was briefed on before she came to the department. | 11:18:25 |
| 5 | Q    And other than the client support manual, | 11:18:31 |
| 6 | what response, what else was she briefed on, | 11:18:34 |
| 7 | according to the response you got from the State | 11:18:38 |
| 8 | Department -- | 11:18:41 |
| 9 | MR. GARDNER:  Objection. | 11:18:41 |
| 10 | Q    -- through the FOIA request? | 11:18:41 |
| 11 | MR. GARDNER:  Objection.  Lack of | 11:18:43 |
| 12 | foundation. | 11:18:44 |
| 13 | A    It was those two documents that I cited. | 11:18:44 |
| 14 | Q    Okay.  The government briefing book and | 11:18:47 |
| 15 | the client support manual? | 11:18:51 |
| 16 | MR. GARDNER:  Same objections. | 11:18:52 |
| 17 | A    Well, there would be three -- | 11:18:54 |
| 18 | Q    Okay. | 11:18:56 |
| 19 | A    -- essentially. | 11:18:57 |
| 20 | The -- it's the client -- I guess the | 11:18:58 |
| 21 | client support manual, and there was another | 11:19:00 |
| 22 | document.  It was kind of a brief -- I believe it | 11:19:03 |

| | | |
|---|---|---|
| 1 | A     Exceptions, sorry. | 11:51:06 |
| 2 | Q     And to make sure I understand what you're | 11:51:07 |
| 3 | saying, the systems, though, that fell under the | 11:51:09 |
| 4 | exceptions, though, they were State Department | 11:51:12 |
| 5 | approved or National Archives approved systems. | 11:51:14 |
| 6 |         Is that right? | 11:51:17 |
| 7 | A     Right. | 11:51:17 |
| 8 | Q     Okay. | 11:51:18 |
| 9 | A     Right. | 11:51:19 |
| 10 | Q     I'm sorry? | 11:51:20 |
| 11 | A     That's right.  And as would eventually be | 11:51:21 |
| 12 | the Electronic Records Center, the ERSC. | 11:51:23 |
| 13 | Q     Okay.  And did a representative from | 11:51:28 |
| 14 | Secretary Clinton's office attend these meetings | 11:51:48 |
| 15 | from 2008 to 2012? | 11:51:51 |
| 16 | A     I always believed there was somebody from | 11:51:55 |
| 17 | her office. | 11:51:57 |
| 18 | Q     Do you know who was the representative | 11:51:58 |
| 19 | from her office? | 11:52:00 |
| 20 | A     I don't know. | 11:52:02 |
| 21 | Q     Okay.  Do you know, did you ever see or | 11:52:02 |
| 22 | do you know of any of her senior staff who | 11:52:06 |

| | | |
|---|---|---|
| 1 | attended any of these meetings? | 11:52:09 |
| 2 | A  I was told one time that Huma Abedin was | 11:52:11 |
| 3 | to attend.  This is from Clarence Finney. | 11:52:16 |
| 4 | In that session, a person that looked | 11:52:22 |
| 5 | like her was there.  I can't swear it was her. | 11:52:24 |
| 6 | Q  Did you ever see Cheryl Mills attend any | 11:52:29 |
| 7 | of these meetings? | 11:52:35 |
| 8 | MR. GARDNER:  Objection.  Lack of | 11:52:36 |
| 9 | foundation. | 11:52:37 |
| 10 | MS. COTCA:  I mean, she was at the | 11:52:42 |
| 11 | meeting.  So I'm asking -- | 11:52:43 |
| 12 | MR. GARDNER:  You assume she knows what | 11:52:44 |
| 13 | Cheryl Mills looks like. | 11:52:47 |
| 14 | A  I don't -- | 11:52:49 |
| 15 | Q  Do you know who Cheryl Mills is? | 11:52:49 |
| 16 | A  I do now. | 11:52:51 |
| 17 | Q  Okay.  Do you know what she looks like? | 11:52:51 |
| 18 | A  I don't think I knew what she looked like | 11:52:51 |
| 19 | then. | 11:52:51 |
| 20 | Q  Okay.  But do you know now what she looks | 11:52:52 |
| 21 | like? | 11:52:53 |
| 22 | A  I know now what she looks like. | 11:52:54 |

| | | |
|---|---|---|
| 1 | Q    Okay.  So as sitting here today, do you | 11:52:56 |
| 2 | know if -- did you ever see Ms. Mills attend any | 11:52:58 |
| 3 | of those meetings? | 11:53:00 |
| 4 | A    I -- I can't remember, though. | 11:53:03 |
| 5 | Q    Okay.  And how many people -- how well | 11:53:04 |
| 6 | were these meetings attended? | 11:53:11 |
| 7 | A    They -- | 11:53:14 |
| 8 | MR. GARDNER:  Objection to form. | 11:53:15 |
| 9 | A    They seemed to be well attended.  I mean, | 11:53:16 |
| 10 | maybe up to 40 people. | 11:53:19 |
| 11 | Q    And how long was the workshop? | 11:53:20 |
| 12 | A    It was an hour. | 11:53:21 |
| 13 | Q    Okay.  And were there any materials that | 11:53:22 |
| 14 | were provided? | 11:53:27 |
| 15 | A    Yes. | 11:53:27 |
| 16 | Q    Okay.  What were they? | 11:53:27 |
| 17 | A    The government briefing booklet was | 11:53:29 |
| 18 | usually part of the -- the package.  The -- the | 11:53:31 |
| 19 | slide deck that I presented was in there, as well | 11:53:38 |
| 20 | as the relevant record schedules per whichever | 11:53:44 |
| 21 | unit their area. | 11:53:49 |
| 22 | So Clarence would put together the | 11:53:51 |

| | | |
|---|---|---|
| 1 | A    Yes. | 12:05:22 |
| 2 | Q    Okay.  Cheryl Mills has previously | 12:05:22 |
| 3 | testified in a different case that she never | 12:05:39 |
| 4 | received training regarding FOIA at the State | 12:05:41 |
| 5 | Department. | 12:05:44 |
| 6 | Is that true, as far as you know? | 12:05:45 |
| 7 | A    I wasn't in charge of the FOIA program. | 12:05:48 |
| 8 | I'm not aware. | 12:05:50 |
| 9 | Q    Okay.  Do you know if anybody on behalf | 12:05:52 |
| 10 | of Ms. Mills attended these workshops? | 12:05:56 |
| 11 | A    I don't know. | 12:06:00 |
| 12 | Q    Okay.  Do you expect that somebody would | 12:06:00 |
| 13 | have attended the workshop on behalf of Ms. Mills | 12:06:03 |
| 14 | as the counselor and the chief of staff to | 12:06:06 |
| 15 | Secretary Clinton? | 12:06:08 |
| 16 | A    Yes. | 12:06:10 |
| 17 | Q    Okay.  During the workshop, was there a | 12:06:10 |
| 18 | discussion with respect to the need to retain | 12:06:25 |
| 19 | records, including e-mails, for purposes of the | 12:06:28 |
| 20 | State Department's obligations under FOIA? | 12:06:32 |
| 21 | A    I believe that one of my slides had a -- | 12:06:36 |
| 22 | had a notation about FOIA. | 12:06:38 |

1      Q    That's the executive order from 2009?        14:15:00

2      A    The first day that -- the first full day     14:15:04

3  of President Obama's administration.  Various        14:15:07

4  other information.  And -- and of course I -- you    14:15:13

5  know, I've read, you know, the OIG investigations    14:15:20

6  and the FBI investigations.                          14:15:24

7      Q    Okay.                                        14:15:26

8      A    Yes.                                         14:15:27

9      Q    And I -- I have some questions for you       14:15:28

10 about that.                                          14:15:30

11          With respect to the OIG's investigation,    14:15:30

12 did the OIG -- and just for clarity, for the         14:15:32

13 record, what's the OIG?                              14:15:36

14     A    Office of the Inspector General, from the   14:15:39

15 State Department.                                     14:15:41

16     Q    Okay.  And when you talking about the --    14:15:42

17 which investigation by the State Inspector General   14:15:47

18 are you referring to that you reviewed?              14:15:51

19     A    They have an interesting title for it,      14:15:58

20 but it was really looking at the handling by         14:15:59

21 Secretary Clinton of e-mails.  I think they          14:16:02

22 included other Secretaries of State.  I'm not sure   14:16:06

Transcript of Tasha Marie Thian
Conducted on September 19, 2019                    165

| | | |
|---|---|---|
| 1 | Q    Okay.  Why do you -- why do you think you | 15:09:10 |
| 2 | were lied to about Secretary Clinton's e-mail use? | 15:09:16 |
| 3 | A    I think it would be because we wouldn't | 15:09:23 |
| 4 | let her have the system at all.  She wouldn't be | 15:09:25 |
| 5 | able to use e-mail in such a -- in such a way as a | 15:09:29 |
| 6 | personal server and that type of thing. | 15:09:34 |
| 7 | Q    Her e-mail server would not have been | 15:09:37 |
| 8 | approved.  Is that -- is that what you're saying? | 15:09:39 |
| 9 | A    Correct.  And we would have to have the | 15:09:41 |
| 10 | records.  Yes. | 15:09:43 |
| 11 | Q    Do you -- do you believe that Secretary | 15:09:46 |
| 12 | Clinton intentionally withheld and her staff | 15:10:00 |
| 13 | intentionally withheld the information so you | 15:10:05 |
| 14 | wouldn't have access to her e-mails? | 15:10:07 |
| 15 | A    It appears that way to me. | 15:10:10 |
| 16 | Q    That would be in violation of federal | 15:10:11 |
| 17 | records -- federal regulations and State | 15:10:27 |
| 18 | Department policies.  Correct? | 15:10:30 |
| 19 | MR. GARDNER:  Objection.  Form. | 15:10:31 |
| 20 | A    Yes. | 15:10:32 |
| 21 | Q    Okay.  And in violation of FOIA? | 15:10:32 |
| 22 | MR. GARDNER:  Objection, form. | 15:10:35 |

| | | |
|---|---|---|
| 1 | Objection, foundation. | 15:10:36 |
| 2 | A    Yes. | 15:10:41 |
| 3 | Q    One last exhibit. | 15:10:41 |
| 4 | (Thian Deposition Exhibit 8 marked for | 15:10:53 |
| 5 | identification and is attached to the transcript.) | 15:11:33 |
| 6 | Q    Ms. Thian, I believe it's been marked as | 15:11:33 |
| 7 | Exhibit 8.  Which is an e-mail chain that was | 15:11:36 |
| 8 | produced to us yesterday by the attorneys | 15:11:41 |
| 9 | representing the State Department in this case. | 15:11:47 |
| 10 | Have you seen this document before? | 15:11:51 |
| 11 | A    No. | 15:11:54 |
| 12 | Q    Okay.  In the e-mail chain, it's from | 15:11:55 |
| 13 | December 24, 2010, amongst State Department | 15:12:04 |
| 14 | officials, which include Secretary Clinton's | 15:12:10 |
| 15 | e-mail address. | 15:12:18 |
| 16 | Do you see that? | 15:12:18 |
| 17 | A    Yes. | 15:12:19 |
| 18 | Q    Okay.  And it appears that somebody | 15:12:19 |
| 19 | had -- Michael Posner had forwarded that e-mail | 15:12:23 |
| 20 | that included Secretary Clinton's e-mail address | 15:12:29 |
| 21 | to other State Department officials.  Right? | 15:12:31 |
| 22 | MR. GARDNER:  Objection.  Lack of | 15:12:35 |

| | | |
|---|---|---|
| 1 | A    Yes. | 15:15:59 |
| 2 | Q    Does it surprise you that you were not | 15:15:59 |
| 3 | informed of this? | 15:16:03 |
| 4 | A    Yes. | 15:16:04 |
| 5 | MR. GARDNER:  Same objections. | 15:16:05 |
| 6 | Q    Do you know who Daniel Baer is, who is | 15:16:10 |
| 7 | listed in this e-mail? | 15:16:13 |
| 8 | A    No. | 15:16:15 |
| 9 | Q    Okay.  How about Michael Posner? | 15:16:15 |
| 10 | A    No. | 15:16:17 |
| 11 | Q    Do you recognize Sarah Labowitz -- | 15:16:19 |
| 12 | Labowitz? | 15:16:34 |
| 13 | A    No. | 15:16:35 |
| 14 | Q    How about Jason -- I can't pronounce the | 15:16:35 |
| 15 | last name. | 15:16:38 |
| 16 | A    No. | 15:16:40 |
| 17 | Q    And then how about Courtney Austrian? | 15:16:41 |
| 18 | A    No. | 15:16:44 |
| 19 | Q    Okay.  Does seeing this e-mail chain now | 15:16:45 |
| 20 | further make you believe that you were | 15:17:04 |
| 21 | intentionally lied to by Secretary Clinton and her | 15:17:12 |
| 22 | staff with respect to Secretary Clinton's e-mail | 15:17:15 |

1    provided the criteria they used to review the          15:33:57

2    e-mails prior to returning her e-mails to the          15:34:00

3    State Department?                                      15:34:03

4           MR. GARDNER:  Objection.  Form.  Lack of        15:34:04

5    foundation.                                            15:34:05

6        A    Absolutely.                                   15:34:06

7        Q    Why?                                          15:34:07

8        A    Because what was the judgment of whether      15:34:11

9    it was a -- a record or not?  And now -- and I         15:34:14

10   understand from the FBI, they didn't even read the     15:34:18

11   e-mails.  So what -- what was -- what was the          15:34:22

12   criteria?  How would they know whether it was a        15:34:26

13   personal e-mail or if it was a real State              15:34:30

14   Department permanent record.                           15:34:35

15       Q    Are you aware that Mr. Hackett was            15:34:36

16   emphatic, actually, according to his testimony in      15:34:38

17   this case, in his discussion with Patrick Kennedy,     15:34:43

18   that the State Department must request the             15:34:49

19   criteria used from Secretary Clinton?                  15:34:51

20       A    I -- I believe I did read his deposition.     15:34:54

21   So, yes, I am aware of that now.  I didn't know it     15:34:59

22   then.                                                  15:35:02

```
1              ACKNOWLEDGMENT OF DEPONENT

2         I, TASHA MARIE THIAN, do hereby

3    acknowledge that I have read and examined the

4    foregoing testimony, and the same is a true,

5    correct and complete transcription of the

6    testimony given by me, and any corrections appear

7    on the attached Errata sheet signed by me.

8

9    _____    _____

10        (DATE)                      (SIGNATURE)

11

12

13

14

15

16

17

18

19

20

21

22
```

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2        I, Debra Ann Whitehead, the officer before whom

3    the foregoing deposition was taken, do hereby

4    certify that the foregoing transcript is a true and

5    correct record of the testimony given; that said

6    testimony was taken by me stenographically and

7    thereafter reduced to typewriting under my

8    direction; that reading and signing was requested;

9    and that I am neither counsel for, related to, nor

10   employed by any of the parties to this case and have

11   no interest, financial or otherwise, in its outcome.

12    IN WITNESS WHEREOF, I have hereunto set my hand and

13   affixed my notarial seal this 19th day of September,

14   2019.

15

16   My commission expires:

17   September 14, 2023

18

19   ------------------------------

20   NOTARY PUBLIC IN AND FOR THE

21   DISTRICT OF COLUMBIA

22