**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,

   Plaintiff,

     v.

U.S. DEPARTMENT OF STATE,

   Defendant.

No. 14-cv-1242 (RCL)

**INTERVENOR HILLARY RODHAM CLINTON'S CORRECTED REPLY IN SUPPORT
OF HER OPPOSITION TO PLAINTIFF'S REQUEST FOR A DEPOSITION**

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Stephen L. Wohlgemuth (D.C. Bar. No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Intervenor Hillary Rodham Clinton*

**INTRODUCTION**

Discovery in FOIA cases is the exception, not the rule. And, as Judicial Watch has conceded, a deposition of a former Cabinet Secretary is even rarer, requiring a showing of "extraordinary circumstances." *See Judicial Watch v. U.S. Dep't of State*, Case No. 13-1363, 2016 WL 10770466, at *6 (D.D.C. Aug. 19, 2016). Judicial Watch has not made that showing. In fact, Judicial Watch's response confirms the several shortcomings in its request to depose Secretary Hillary Rodham Clinton.

**ARGUMENT**

**I.   Secretary Clinton Does Not Have Discoverable Information Regarding the State Department's Attempt to Settle This Case or Its FOIA Search.**

Secretary Clinton's opening brief showed that she had no discoverable information with respect to two of the three issues upon which this Court permitted discovery. Opp. (Dkt. 143) at 5–6. Secretary Clinton had absolutely no involvement in the State Department's effort to settle this case or its search for documents in response to Judicial Watch's FOIA request—both of which occurred after her tenure as Secretary. Judicial Watch has no basis for seeking discovery from Secretary Clinton on these subjects. In fact, in a meet-and-confer email sent on August 13, 2019, Judicial Watch essentially conceded as much by stating that it was only seeking to depose Secretary Clinton about her intent in using private email and FOIA processing while she was Secretary of State. Judicial Watch never mentioned any other topics in that email.

Judicial Watch has now taken a very different position in its Response. Despite what it said in its August 13 email, Judicial Watch now claims that "Secretary Clinton has discoverable information relating to all three topics of discovery." Response (Dkt. 144) at 9. But Judicial Watch does not, and cannot, back up that claim. Although it declares that Secretary Clinton was involved in State's "attempt[] to settle this case with Judicial Watch," *id.* at 10, that assertion is uncited,

1

unsupported, and has no basis in fact. Judicial Watch has conducted broad discovery into State's settlement efforts, and it offers no evidence to suggest that Secretary Clinton had any involvement of any kind as State was trying to settle with Judicial Watch. Judicial Watch's bald assertion to the contrary does not constitute "extraordinary circumstances" justifying discovery from a former Cabinet Secretary. *See Judicial Watch*, 2016 WL 10770466 at *6.

## II.     Judicial Watch Is Not Entitled to Discovery about the Terrorist Attack in Benghazi.

Secretary Clinton's opening brief also established that Judicial Watch was improperly trying to expand the scope of discovery to include the events underlying the substance of its FOIA request. In other words, Judicial Watch is trying to use discovery in this FOIA litigation to conduct its own investigation into the American response to the terrorist attacks in Benghazi. Judicial Watch's response is remarkably candid about that: Judicial Watch wants to probe "what [Secretary Clinton] and State were trying to hide from public release prior to Ambassador Susan Rice's television appearances on September 16, 2012." Response at 10. This topic has nothing to do with any of the three permitted topics of discovery, and it is nothing more than an attempt to obtain discovery about the substance of the matter which generated FOIA-able documents—something that no court has ever permitted.[1] Indeed, Judicial Watch does not cite a single legal authority in support of this argument. And for good reason: the scope of discovery only extends to information that is "relevant to [a] party's claim or defense." Fed. R. Civ. P. 26(b)(1). In FOIA cases, the parties' claims and defenses all relate to whether "the defendant . . . has fully discharged its obligations under [FOIA]." *Reliant Energy Power Generation, Inc. v. F.E.R.C.*, 520 F. Supp. 2d 194,

---

[1] Judicial Watch also claims that it needs to depose Secretary Clinton about "who she communicated with . . . about the Benghazi attacks." Response at 10. Again, it cites no authority permitting such discovery in a FOIA case. In any event, Judicial Watch already has Secretary Clinton's emails from this time period. There is nothing more to learn about "who she communicated with."

200 (D.D.C. 2007). Judicial Watch's desire to learn what the government was supposedly "trying to hide" in Benghazi's aftermath has nothing to do with State's compliance with FOIA.

**III. Secretary Clinton Has Already Addressed the Issue of Whether She "Intentionally Attempted to Evade FOIA" in Sworn Discovery Provided to Judicial Watch and in Other Public Statements.**

As set forth in Secretary Clinton's opening brief, Judicial Watch, in a related FOIA case (*Judicial Watch v. Department of State*, 13-1363 (D.D.C.)), already took the very discovery from Secretary Clinton that it again seeks in this case. It also has access to an extensive public record on the issue of Secretary Clinton's intent in using private email. Judicial Watch cannot show "extraordinary circumstances" justifying any further discovery from a former Cabinet Secretary in light of the previously obtained discovery and the public record, let alone a need for a deposition. *See* Opp. at 12.

Judicial Watch offers essentially three arguments in response. First, it argues that interrogatories are "inefficient and inadequate" because the "scope of discovery permitted in this case covers broader subject matters than the preceding litigation before Judge Sullivan." Response at 2. Second, it claims that it needs the "ability to ask follow-up questions" in a deposition. *Id.* at 2. Third, it argues that the deposition of Tasha Thian constitutes new information justifying a deposition. *Id.* at 2–7. These arguments all fail.

The scope of discovery: Judicial Watch is just wrong as to the scope of discovery. As it pertains to Secretary Clinton, the scope of discovery in this case and the case before Judge Sullivan is identical. In both cases, the sole issue relevant to Secretary Clinton is her intent in using private email. Opp. at 2–3. Although this Court permitted discovery on two other issues, Secretary Clinton has no knowledge about those issues, as they relate to events that took place after she left the State Department. *See supra* pp. 1–2.

The need for "follow-up" questions: Judicial Watch argues that interrogatories are an inadequate discovery device because it needs to ask follow-up questions regarding Secretary Clinton's intent in using private email. This is not a credible argument. Judicial Watch has already "acknowledge[d] that questions regarding Secretary Clinton's motivation for using the system throughout her tenure as Secretary of State could be responded to through interrogatories." *Judicial Watch*, 2016 WL 10770466 at *6. And Judicial Watch's conduct in the prior FOIA case shows that it has no legitimate need to ask "follow-up" questions: Judge Sullivan expressly invited Judicial Watch to seek leave to serve additional interrogatories if it needed to ask any follow-up questions—but Judicial Watch never did so. *Id.* Nor did Judicial Watch ever complain to Judge Sullivan that Secretary Clinton's answers were in need of clarification.[2] Even if Judicial Watch could show that it needed more discovery—and it cannot—Judicial Watch's prior concessions and the history before Judge Sullivan confirm that interrogatories are an appropriate discovery device.

Throughout its brief, Judicial Watch attempts to walk back this history by giving examples of the types of "follow-up" questions that it would ask at a deposition—an exercise that itself shows that Judicial Watch is capable of propounding its questions in writing. Beyond that, looking at the purported "follow-up" questions themselves, it is clear that Judicial Watch already has the answers it supposedly needs. For example, Judicial Watch claims to be confused by what Secre-

---

[2] Judicial Watch claims that Secretary Clinton's argument on this issue is "misleading" because she "answered certain questions only after Plaintiff was forced to move to compel." Response at 2. The only "misleading" argument is that of Judicial Watch. As Secretary Clinton explained in her opposition, she initially objected to three interrogatories based on relevance and privilege grounds, and refused to answer those questions in their entirety. Opp. at 3. Judge Sullivan overruled her objections on two of the three interrogatories, and Secretary Clinton provided answers to those two interrogatories. Opp., Ex. B. Secretary Clinton provided answers to 24 of Judicial Watch's interrogatories, and Judicial Watch *never* sought leave to ask any clarifying follow-up questions and *never* challenged the adequacy or completeness of any of her responses.

tary Clinton means when she says that she used private email for the sake of convenience. Response at 3. But Secretary Clinton has repeatedly explained that she "believed that it would be more convenient to use one electronic device (rather than two)."[3] Opp. at 1. Many of Judicial Watch's other "follow-up" questions have similarly been answered. For example, Judicial Watch claims that "Secretary Clinton's actual understanding of her obligations with respect to official State Department records is completely absent from the record." Response at 5. But Judicial Watch specifically asked Secretary Clinton about "federal recordkeeping laws" in its interrogatories. Opp., Ex. A at 6–8 (interrogatories 6–10). Secretary Clinton answered those questions to the best of her knowledge—including by confirming that she "understood that e-mail she sent or received in the course of conducting official State Department business was subject to FOIA." Opp., Ex. A at 8. Judicial Watch never sought leave to ask any follow-up questions and never raised any issues with Judge Sullivan about the adequacy of those answers.

In any event, the outcome here does not depend on whether Judicial Watch can come up with new questions that it would like to ask at a deposition. Instead, the issue is whether Judicial Watch can show "extraordinary circumstances" justifying a deposition of a former Cabinet Secre-

---

[3] Opp., Ex. C at 4 ("CLINTON was not issued a mobile device by State, but continued to use the password protected BlackBerry she used during her time in the Senate. This device was connected to her AT&T BlackBerry address which was used for both personal communications and official business. CLINTON made this decision out of convenience . . . ."); Opp., Ex. F at 292–93 ("It was not until about 2006 that I began sending and receiving emails on a BlackBerry phone. I had a plain old AT&T account like millions of other people, and used it both for work and personal email. That was my system, and it worked for me. Adding another email account when I became Secretary of State would have meant juggling a second phone, since both accounts could not be on the same State Department device."); Opp., Ex. H at 3–4 ("First, when I got to work as secretary of state, I opted for convenience to use my personal email account, which was allowed by the State Department, because I thought it would be easier to carry just one device for my work and for my personal emails instead of two.").

tary. *Judicial Watch*, 2016 WL 10770466 at *6. Judicial Watch cannot make that showing: Secretary Clinton has already answered its "follow-up" questions in the previously answered interrogatories and elsewhere, and the remaining questions address technical details about which Secretary Clinton is unlikely to have any knowledge (like the State Department's email retention process). *See, e.g.*, Response at 6. But even if Judicial Watch's newfound "follow-up" questions could somehow warrant more discovery, it should be in the form of targeted interrogatories, for the reasons discussed above and in Secretary Clinton's opening brief.

The deposition of Tasha Thian: Finally, the selected excerpts of the deposition of Tasha Thian, a former State Department records officer, afford no justification for a deposition of the former Secretary. A review of Ms. Thian's entire deposition reveals that she left the State Department in June 2014 (Ex. A at 13), a month after the FOIA request at issue was submitted, and that she has no firsthand information about the search conducted pursuant to that request[4] or to efforts to settle the ensuing litigation. Moreover, as to the one remaining topic of discovery, the transcript reveals that she never met nor spoke to Secretary Clinton about her emails or anything else. She was unaware of the former Secretary's use of her personal email and never saw any of her emails (*id.* at 38.) While she briefed certain State Department employees about recordkeeping, she could not recall which staffers from the Secretary's office attended those briefings (*id.* at 42–46, 70–72).

The speculative opinions Ms. Thian offered in her deposition are not based on firsthand knowledge. In point of fact, she submitted her own FOIA request "to know what the Secretary was briefed on before she came to the department" (*id.* at 61–62). In addition to her FOIA request, she had read about "you know, the OIG investigations and the FBI investigations" (*id.* at 129).

---

[4] Ms. Thian was asked about Ms. Cheryl Mills' testimony that she had never received FOIA training while at the State Department, and she replied: "I wasn't in charge of the FOIA program. I'm not aware." Ex. A at 83.

6

When asked whether Secretary Clinton and her staff intentionally withheld from her information "in violation of FOIA," she replied, apparently based on her outside research, "[i]t appears that way to me" (*id.* at 165). While Judicial Watch attempts to make much of a December 24, 2010 email among State Department personnel, in which one says that the Secretary "guards [her personal e-mail address] pretty closely," Response at 8, Ms. Thian admitted that she had never previously seen that email (Ex. A at 166), and she could not identify a single one of the six officials who received this email (*id.* at 170).[5] Her speculations about the former Secretary's email practices thus come not from her personal knowledge but primarily from the news media, her FOIA request response, and reading depositions in this case (*id.* at 185).

## CONCLUSION

Secretary Clinton respectfully requests that this Court deny Judicial Watch's request for a deposition or any further discovery. If the Court orders any discovery from Secretary Clinton, Secretary Clinton respectfully submits that it be in the form of interrogatories only.

---

[5] Judicial Watch claims that this email undermines Secretary Clinton's assertion that "everyone at State knew she had a private email address because it was displayed to anyone with whom she exchanged emails." Response at 7. The email actually corroborates, rather than undermines, that assertion. In the email, the Assistant Secretary of State for Public Affairs, Philip Crowley, emails Secretary Clinton and copies a number of high-level State Department officials, all of whom could see Secretary Clinton's email address. Response, Ex. D. These officials include the State Department's Legal Advisor (Harold Koh), the Undersecretary for Management (Patrick Kennedy), the Undersecretary for Political Affairs (William Burns), the Undersecretary for Public Diplomacy (Judith McHale), and the Deputy Secretary of State (James Steinberg), among others.

Respectfully submitted,

/s/David E. Kendall

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Stephen L. Wohlgemuth (D.C. Bar. No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
dkendall@wc.com
kturner@wc.com
asaharia@wc.com
swohlgemuth@wc.com

*Counsel for Intervenor Hillary Rodham Clinton*

October 10, 2019

## CERTIFICATE OF SERVICE

I, David E. Kendall, counsel for Intervenor Hillary Rodham Clinton, certify that, on October 10, 2019, a copy of this Reply was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ David E. Kendall
David E. Kendall