IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) | Civil Action No. 14-cv-1242 (RCL) |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| *Defendant*. | ) ) ) | |

## **PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), pursuant to Federal Rule of Civil Procedure 37, hereby files this Motion to Compel and the randum of Points and Authorities in support thereof. Fed. R. Civ. P. 37.

Pursuant to the Court's August 22, 2019 order, Plaintiff served a specific request for production of documents on former Secretary of State Hillary Rodham Clinton – appearing in this case as an intervenor.[1] Order, August 22, 2019, ECF 135; Pl. Status Rpt., Aug. 21, 2019, ECF 131, pp. 6, 17.[2] Plaintiff requested the after action memo created by Secretary Clinton's personal attorney, Heather Samuelson, that memorialized the search for and processing of the Clinton emails in 2014. *Id.* Clinton objected to producing the memorandum, claiming that the entire document is protected by the attorney work product doctrine and that no portion of the

---

[1] This Freedom of Information Act ("FOIA") case was filed against Defendant Department of State ("State Department") for certain records from the Office of the Secretary during Hillary Rodham Clinton's tenure as secretary of state. On August 20, 2019, Secretary Clinton filed a motion to intervene in this case. Unopposed Mot. to Intervene, August 20, 2019, ECF 128. The court granted the motion on August 21, 2019. Order, August 21, 2019, ECF 129.

[2] All page number references correspond to the page numbers reflected by ECF on the particular court filing.

subject memorandum may be segregated and released. The after action memo is relevant to the pending discovery in this case.

After repeated attempts to resolve this dispute have proven unsuccessful, Plaintiff respectfully requests an order from the Court to compel Secretary Clinton to produce the document to Plaintiff within short order.

Pursuant to LCvR 7(m), Plaintiff has in good faith conferred with counsel for Defendant Department of State ("State Department" or "State") and Intervenor Clinton. Counsel for Secretary Clinton informed Plaintiff that she opposes the motion. Counsel for the State Department represented that Defendant does not take a position on Plaintiff's motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS

1. This is a rare Freedom of Information Act ("FOIA") case in which the Court determined that civil discovery is appropriate. On March 29, 2016, the Court granted Plaintiff's motion for discovery, holding that "[w]here there is evidence of government wrong-doing and bad faith, as here, limited discovery is appropriate, even though it is exceedingly rare in FOIA cases." Mem. & Order, March 29, 2016, ECF 39, p. 1.

2. In its orders and opinions entered on December 6, 2018 (ECF 54) and January 15, 2019 (ECF 65), the Court carefully outlined the parameters of the discovery permitted in this case. It limited discovery to three issues: (1) whether Clinton intentionally attempted to evade FOIA by using a private email server while secretary of state; (2) whether State's efforts to settle this case in late 2014 and early 2015 amounted to bad faith; and (3) whether State adequately searched for records responsive to Judicial Watch's FOIA request. *Id*. Finding that this case "hinge[s] on what specific State employees knew and when they knew it," the Court permitted

the depositions of certain employees, current and former, including attorneys – because the factual questions raised in this discovery can only be answered through the officials' contemporaneous thoughts, beliefs and conclusions. Mem. & Order, Jan. 15, 2019, ECF 65, pp. 5, 6. On January 15, 2019, the Court ruled that Plaintiff may depose Heather Samuelson – former While House Liaison for the State Department during Secretary Clinton's tenure, who also became Clinton's personal attorney in 2014 – about the three topics permitted for discovery. *Id*. at 6, 8, 12.

3. Plaintiff learned from Samuelson's deposition testimony that in or around December 2014, Samuelson created an after action memo to memorialize the search for and processing of the Clinton emails that were returned to the State Department on December 5, 2014. ECF 131, pp. 6, 17. Plaintiff subsequently sought leave from the Court to request the document from Secretary Clinton and her attorneys. *Id*.

4. During the hearing held before this Court on August 22, 2019, the Court agreed with Plaintiff that it was justified in seeking "more information about how Secretary Clinton ultimately determined which emails were public records and which were private." Tr. Status Conference Aug. 22, 2019, ECF 137, p 50:22-25. The Court followed with a written order permitting Plaintiff's document request for the after action memo. Order, August 22, 2019, ECF. 135.

5. According to the Court's order, Plaintiff served its request for production of this document:

> A copy of the "after action memo" created by Heather Samuelson in or around December 2014, to memorialize the Clinton team's search for and processing of the Clinton emails. See Ex. 7 (Samuelson Tr. at pp. 184, 188-89) attached to Plaintiff's Status Report filed August 21, 2019 (ECF No. 131-7). Plaintiff only seeks factual portions that describe the review of Clinton's emails. Plaintiff does not seek legal opinions or conclusions by counsel.

3

See Pl. RFPD to Clinton, Doc. Request 1 (attached hereto as Ex. 1).

6.     Secretary Clinton withheld the document in full in her response on September 23, 2019, claiming that the contents of the memorandum are protected by the attorney work product doctrine. Clinton Objections and Responses to Pl. RFPD, Res. to Doc. Request 1 (attached hereto as Ex. 2). Secretary Clinton included a privilege log describing the document as a six-page memorandum "regarding a response to the State Department's request for documents."[3] *Id.* It was prepared by attorney Heather Samuelson "in anticipation of potential investigations and litigation regarding Secretary Clinton's electronic mail" and received by attorney David Kendall. *Id.*

### ARGUMENT

This Court was previously presented with a similar dispute in this litigation over documents withheld under the attorney work product doctrine by the State Department. Mem. Opinion, June 12, 2019, ECF 119, 1-6. The documents that were at issue previously pertained to the State Department's processing of Plaintiff's FOIA request. The dispute before the Court now is very much the same – disclosure of a document relevant to the adequacy of the State Department's search.

The work product doctrine is not a privilege, but a qualified immunity under Federal Rule of Civil Procedure 26. *Jones v. Carson*, 2018 U.S. Dist. LEXIS 67400 at * 6-8 (D.D.C. March 30, 2018). Rule 26 provides that "ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" but such information may be

---

[3] Secretary Clinton withheld the document solely based on the attorney work product doctrine. Ex. 2 at p. 3. The privilege log does not assert attorney-client privilege or any other basis for the withholding.

4

obtained if a requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Hickman v. Taylor*, 329 U.S. 495, 509 (1947) (work product concerning an attorney's interview of a fact witness is not discoverable without a showing by the requesting party that a "denial of such production would unduly prejudice the preparation of petitioner's case").

The party asserting the work product protection must first show that the document in question was prepared in anticipation of litigation. The D.C. Circuit applies the "because of" test which asks "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Jones*, 2018 U.S. Dist. LEXIS 67400 at *7-8, *quoting F.T.C. v. Boehringer Ingelheim Pharmaceuticals, Inc.* 778 F.3d 142, 149 (D.C. Cir. 2015), *quoting U.S. v. Deloitte LLP*, 610 F3d 129, 137 (D.C. Cir. 2010). "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." *Id*., quoting *Deloitte*, 610 F.3d at 138.

If a particular document is determined to be protected by the work product doctrine, the party seeking the document must make a showing of both unavailability and need proportionate to the nature of the work product. *Boehringer,* 778 F.3d at 153. For opinion work product, the party must "make an 'extraordinary showing of necessity.'" *Id*. For fact work product, the party seeking to discover it must merely provide "adequate reasons" that it should be permitted to discover those facts consistent with the "substantial need" standard of Rule 26(b)(3)(A)(ii). *Id*.

However, as the Court previously recognized in this case, drawing the line between fact and opinion work product is slightly more complicated here due to the subject matters permitted

in this discovery. ECF 119 at 4-5. This case "hinge[s] on what specific [officials] knew and when they knew it." *Id*. at 5. Therefore, the Court appropriately held that "any contemporaneous documents shedding light on the three narrow discovery topics – even documents evincing attorney impressions, conclusions, opinions, and theories – constitute fact work-product" and may be admissible with a showing of substantial need and lack of prejudice. *Id*. at 6.

      As an initial matter, Secretary Clinton claims that the after action memo is subject to the attorney work product privilege and exempt from disclosure, but she fails to explain that the memorandum was created in reasonable anticipation of litigation. Conclusory assertions are insufficient. She does not assert that it was created due to the litigation here. Neither does she claim that it was created in anticipation of any other specific litigation. Simply put, she does not demonstrate that the after action memo was not created in the normal course of the search and review process and not in "substantially similar form" – regardless of any FOIA or other litigation. Ex. 2.

      Second, as the Court held in the previous but similar discovery dispute, the after action memo falls within the category of "contemporaneous documents shedding light on the three narrow discovery topics." ECF 119, 6. According to Samuelson's testimony, the after action memo plainly contains factual information memorializing searches and techniques for retrieving Secretary Clinton's governmental records. Tr. Samuelson, ECF. 131-7, pp 7-9. Information containing keyword searches is necessary and vital to determining whether the government has met its burden for an adequate search. *See generally Hall v. C.I.A.*, 881 F. Supp. 2d 38, 51 (D.D.C. 2012) (reciting the standard for federal agencies to meet their burden under FOIA by "rely[ing] on reasonably detailed and non-conclusory declarations" for adequate searches)

(citation omitted).  Further, even if the memorandum may contain an opinion about the adequacy of the search and review process of Secretary Clinton's emails, such an opinion or conclusion is itself a material fact when discovery was specifically permitted into the adequacy of the search and questions of bad faith.  ECF 199 at 5.  Where governmental misconduct has occurred and the adequacy of the search is at issue in discovery, the work product doctrine cannot act as a shield.  *See Judicial Watch, Inc. v. Dep't of Commerce*, 201 F.R.D. 265, 268-69 (D.D.C. 2001) (denying the government's contention that declarations drafted by Commerce officials were privileged under the work product doctrine because "[t]heir recounting of what happened in th[e] search…is the very matter which Judicial Watch is entitled to explore").

Third, Plaintiff has substantial need and adequate reasons for obtaining this document.  This after action memo is directly relevant to the adequacy of the search issue – which is one of the inquiries ordered for discovery.  Based on the available record, the after action memo is the only document that was prepared contemporaneously in late 2014 with the searching and retrieval of the Clinton emails.  Like Plaintiff, the State Department's former director of the Office of Information and Program Services ("IPS"), John Hackett, held the opinion that the State Department needed to have this information.  According to his deposition testimony, the State Department needed to obtain whatever criteria Secretary Clinton's attorneys used to separate the personal emails from Clinton's State Department emails.  Tr. Hackett, ECF 131-1, pp. 19-20; ECF 131 at 5.  Hackett expressed his concerns to Under Secretary Patrick Kennedy in or around December 2014 and described his tone as "emphatic."  Although Kennedy informed Hackett that he would ask Clinton's team for the search parameters, the criteria had not been provided to the State Department by the time Hackett left the agency in March 2016.  *Id*.

More importantly, the Court also agreed with Plaintiff's claim that it has substantial need for the information when it ordered the document request. ECF 137 at 50:22-25. Indeed, this is the precise reason "the Court already took the 'exceptional step' of permitting … Judicial Watch to request '*all* records–including internal communications–concerning this FOIA request.'" ECF 119 at 5. The memorandum was prepared contemporaneously by Secretary Clinton's attorney regarding searches for Clinton's emails. Plaintiff has a substantial need and the document is unobtainable from any other source.

Finally, there can be no prejudice as a result of releasing this document to Plaintiff. Attorney work product protects an attorney's impressions "creat[ing] a real, nonspeculative danger of [prejudicially] revealing the lawyer's thoughts." ECF 119 at 6, *citing Boehringer*, 778 F.3d at 151-52. But those prejudicial concerns are not present for disclosure of this memorandum because the fact attorney work product doctrine protects "the integrity of the trial adversarial processes [that] are simply not present" in FOIA cases. *Judicial Watch, Inc.,* 201 F.R.D. at 268. Discovery here is based on Plaintiff's interest in uncovering the bad faith alleged in this case and whether State conducted an adequate search. It is not for the purpose of preparing for trial. Since "there will be no trial in this case," disclosing fact work product "will not affect [Secretary Clinton's] position in this litigation." ECF 119 at 6. Accordingly, the interest in uncovering the relevant facts under the three narrow discovery topics "outweighs any need to protect an attorney's private thoughts," such as those of Clinton's attorneys in preparing this document.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and order Intervenor Hillary Rodham Clinton to produce to Plaintiff the after action memo in

unredacted form within seven days of the Court's order. At a minimum, Plaintiff respectfully requests that the Court review the unredacted memorandum *in camera* to determine the legitimacy of the attorney work product privilege asserted. *See Alexander v. FBI*, 186 F.R.D. 102, 112 (D.D.C. 1998) (finding *in camera* review appropriate where privilege logs have been inadequate).

Dated: April 15, 2020                                     Respectfully submitted,

                                                                     **JUDICIAL WATCH, INC.**

                                                                     /s/ *Ramona R. Cotca*
Ramona R. Cotca (D.C. Bar 501159)
Lauren M. Burke (D.C. Bar No. 1028811)
Eric Lee (D. C. Bar No. 1049158)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC  20024
Tel.:   (202) 646-5172
Email:  rcotca@judicialwatch.org
            lburke@judicialwatch.org
            elee@judicialwatch.org

*Attorneys for Plaintiff*

9