# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE, <br><br> Defendant. | No. 14-cv-1242 (RCL) |

## INTERVENOR HILLARY RODHAM CLINTON'S OPPOSITION
## TO PLAINTIFF'S MOTION TO COMPEL

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Stephen L. Wohlgemuth (D.C. Bar. No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Intervenor Hillary Rodham Clinton*

# INTRODUCTION

Judicial Watch moves to compel the production of a December 5, 2014 memorandum written by Heather Samuelson, an attorney for Intervenor Secretary Clinton. The memorandum is classic opinion work product and is not discoverable: it reflects the judgment of Secretary Clinton's attorneys about certain search techniques and methods used in responding to the State Department's request for Secretary Clinton's emails, as well as an analysis of the emails identified for production. Secretary Clinton's attorneys exercised this judgment and performed this analysis at a time when litigation and investigations concerning her email practices were foreseeable. But even if the memorandum were treated as fact work product, it would still be entitled to protection. This Court ruled that the memorandum is relevant to discovery in this FOIA case to the extent it sheds light on the responsiveness standard Secretary Clinton's attorneys used to decide which of her emails were work-related and which were personal. That standard, however, is already well known and indeed has been the subject of discovery in this case. Notably, Ms. Samuelson has already testified that if an email was arguably work-related, it was produced; if it was purely personal, it was not. The goal was, as Ms. Samuelson has testified, to be over-inclusive with respect work-related emails. Judicial Watch does not have substantial need for the memorandum to discover that standard. In fact, the memorandum memorializes certain techniques and methods that Ms. Samuelson used when searching Secretary Clinton's emails but it does not memorialize the responsiveness standard that was applied in the review. As a result, Judicial Watch cannot overcome fact work-product protection.

# BACKGROUND

On June 13, 2019, as part of the "exceedingly rare" and unusually extensive discovery taken in this FOIA case, Dkt. 39, Judicial Watch deposed Heather Samuelson, who was one of

Secretary Clinton's personal attorneys after Secretary Clinton left office. Ms. Samuelson reviewed Secretary Clinton's emails in response to the State Department's request for those emails. At her deposition, Ms. Samuelson referred to an "after-action memo" she created regarding her review of those emails. Ex. A (Samuelson Dep. Tr. 183:17-184:16). Her counsel objected on work-product grounds to questions seeking the content of the memorandum. *Id.* at 191:14–21, 192:10–20.

This Court later ruled that Judicial Watch could serve a document request seeking the "after-action memo" because it was entitled to "more information about how Secretary Clinton ultimately determined which emails were public records and which were private." Dkt. 137 at 50:22–25. After Judicial Watch served its request, Secretary Clinton objected "on the grounds that it calls for information covered by the work-product doctrine." Dkt. 162-2 at 3. Her response provided further information supporting the invocation of work-product protection, including that the document in question is a "[s]ix page, single-spaced memorandum" written by Ms. Samuelson and directed to Secretary Clinton's personal attorney David Kendall "regarding a response to the State Department's request for documents" and that it was "prepared by counsel in anticipation of potential investigations and litigation regarding Secretary Clinton's electronic mail." *Id.*

The memorandum itself explains some (but not all) of the techniques and methods that Ms. Samuelson used to search Secretary Clinton's emails in response to the State Department's request—*i.e.*, it discloses particular search and review techniques employed by Ms. Samuelson. The memorandum also includes analysis of the emails that were ultimately produced. Secretary Clinton's lawyers produced Secretary Clinton's emails to the State Department on December 5, 2014— the same date as Ms. Samuelson's memorandum. The memorandum does not articulate the responsiveness standard that Ms. Samuelson used to determine whether an email was within the scope of State's request. Ms. Samuelson has already explained what that responsiveness standard

was:  if an email was arguably work-related, it was produced, and if it was purely personal, it was withheld.

## ARGUMENT

### I. Legal Standard

"The work-product privilege protects written materials lawyers prepare 'in anticipation of litigation.'"  *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3)).  The doctrine "protects the adversary process" by "ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials."  *Id.*  Importantly, a document may be prepared "in anticipation of litigation" without reference to "specific claims and litigation," particularly where "the attorney who prepared the documents acted as a 'legal advisor' protecting his or her clients 'from the possibility of future litigation.'"  *Stein v. U.S. Dep't of Justice*, 134 F. Supp.3d 457, 478 (D.D.C. 2015) (quoting *In re Sealed Case*, 146 F.3d at 885)).

The work-product doctrine protects not only "the mental processes and opinions of the drafter of the document in question," but also the "factual material that is bound up with the drafter's opinions and recommendations."  *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 169 F. Supp.3d 54, 57 (D.D.C. 2015).  "Opinion work product . . . is virtually undiscoverable."  *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).  A party seeking fact work product must "show[] a substantial need for the materials and an undue hardship in acquiring the information any other way."  *Id.*

### II. The Requested Document Is Protected Opinion Work Product.

The memorandum is protected opinion work product.  First, it was prepared in anticipation of foreseeable litigation or investigations concerning Secretary Clinton's emails.  Second, the

3

memorandum reflects the judgments of Secretary Clinton's legal team about what search techniques and methods should be used when responding to State's request.

Litigation and investigations were reasonably foreseeable as of December 2014, when Ms. Samuelson wrote the memorandum. At that time—just months before Secretary Clinton publicly announced her candidacy for president—it was clear that Secretary Clinton's use of private email could be the subject of investigations and litigation.[1] Indeed, the State Department's records request referenced the potential for litigation by the Attorney General under the Federal Records Act. Ex. E at 8. And the mere existence of this FOIA case confirms the point. Perhaps recognizing that some investigation or litigation over Secretary Clinton's use of private email was foreseeable in December 2014, Judicial Watch contends that the memorandum is not work product because there was no "specific litigation" contemplated at that time. Dkt. 162 at 6. But "a 'specific claim' of litigation need not precipitate the document." Dkt. 119 at 2. Instead, an attorney "need only 'belie[ve] that litigation [i]s a real possibility, and that belief must [be] objectively reasonable.'" *Id.* at 3 (quoting *In re Sealed Case*, 146 F.3d at 884); *Stein*, 134 F. Supp.3d at 478. There is good reason for this rule: "It is often prior to the emergence of specific claims that lawyers are best equipped either to help clients avoid litigation or to strengthen available defenses should litigation occur." *In re Sealed Case*, 146 F.3d at 886. Withholding work-product protection from lawyers in that position would discourage them from "engaging in the writing, note-taking, and

---

[1] *See, e.g., In re Sealed Case*, 146 F.3d at 885–86 (materials prepared in anticipation of litigation where attorney was "aware that the [FEC] had the authority to conduct investigations" and that entity "had been criticized in the press," "even though at the time, neither FEC nor the DNC had made any specific claim"); *E.E.O.C. v. Lutheran Social Servs.*, 186 F.3d 959, 969 (D.C. Cir. 1999) (materials prepared in anticipation of litigation where "evidence suggest[ed] that litigation lay just over the horizon" and "fear of litigation was eventually confirmed," even though "charges [were] nonspecific").

communications [that are] so critical to effective legal thinking." *Id.* Because litigation and investigations regarding Secretary Clinton's use of private email were a real possibility as of December 2014, and because the memorandum was prepared with that outcome in mind, it is proper to classify the memorandum as having been "prepared in anticipation of litigation" within the meaning of the work-product doctrine.

The memorandum—written from one lawyer to another—embodies opinions and judgments about the search techniques and methods that the attorneys determined to employ in responding to the State Department's document request. That is classic opinion work product. *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) (opinion work product "reveals the opinions, judgments, and thought processes of counsel"). Judicial Watch tries to cast the memorandum as "factual work product" because it contains "factual information memorializing searches and techniques for retrieving Secretary Clinton's governmental records." Dkt. 162 at 6. This argument misunderstands the distinction between fact work product and opinion work product. A document is fact work product if it contains factual material that *does not reveal* "the attorney's thought processes and theories." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 151 (D.C. Cir. 2015). Here, the "searches and techniques" memorialized in the memorandum reflect the thought processes and judgments of Secretary Clinton's counsel. Like any document reflecting a lawyer's judgment about how best to protect a client in the event of foreseeable litigation or investigation, it is opinion work product. *See United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998) (noting that the work-product doctrine's "primary concern" is "analysis that candidly discusses the attorney's litigation strategies").

Judicial Watch also claims that the memorandum is fact work product by relying on this Court's prior ruling that "any contemporaneous documents shedding light on the three narrow

discovery topics—even documents evincing attorney impressions, conclusions, opinions, and theories—constitute fact work-product." Dkt. 119 at 6. But the Court reached that conclusion in the context of a discovery dispute over State Department documents. The Court reasoned that the three discovery topics—which included an inquiry into State's potential bad faith—are "answerable only through State officials' (including attorneys) contemporaneous thoughts, beliefs, and conclusions." *Id.* at 5. Because the thought process of State's lawyers *are material facts*, the Court held that documents evidencing their mental impressions were fact work product. *Id.* That is not the case with respect to the memorandum: the thoughts, beliefs, and conclusions of Secretary Clinton's counsel are not at issue here. Indeed, the only topic of discovery relevant to Secretary Clinton is her intent in using private email when she was serving as Secretary. The memorandum—which was created years after she left the State Department—has nothing to do with that subject.

Because Judicial Watch has not even attempted to make the "extraordinary showing of necessity" required "to obtain opinion work product," *Boehringer Ingelheim Pharm.*, 778 F.3d at 153, the motion should be denied.

### III. Judicial Watch Has Failed To Demonstrate Substantial Need or Undue Hardship.

Even if the memorandum were considered fact work product, Judicial Watch cannot show the requisite "substantial need" and "undue hardship" to justify its production. "[O]nly under unique circumstances, including where a witness refuses to speak with the movant and where the information at issue [is] otherwise unavailable, [can] a moving party demonstrate 'substantial need' and 'undue hardship.'" *FTC v. Staples, Inc.*, No. 15-cv-2115, 2016 WL 259642, at *4 (D.D.C. Jan. 21, 2016).

Judicial Watch asserts that it has substantial need for the memorandum because the document "is directly relevant to the adequacy of the search," citing testimony by former State Department official John Hackett about the responsiveness standard that "Secretary Clinton's attorneys used to separate the personal emails from Clinton's State Department emails." Dkt. 162 at 7.  But Judicial Watch already knows the responsiveness standard that Secretary Clinton's attorneys used, and had a full opportunity to depose Ms. Samuelson and Cheryl Mills concerning that topic.  That standard has been widely described in public statements and deposition testimony, including by Ms. Samuelson herself.  For example:

- Ms. Samuelson testified at her deposition that once she received "all of the e-mails that [Platte River Networks] had in [its] possession," Ex. A at 159:1-2, Secretary Clinton's attorneys "reviewed those [emails] for what was work related and what was personal," and "[t]here was a decision to be over inclusive in terms of what was work related," *id.* at 153:8-15; *see also id.* at 161:10-11 ("I'm just saying we were over inclusive.").

- Judicial Watch deposed Cheryl Mills in a separate FOIA case on May 27, 2016.  At that deposition, Ms. Mills explained, "We reviewed [Secretary Clinton's] records to determine what were federal records that should be returned or what potentially were federal records." Dkt. 142-1 (Mills Dep. Tr. 247:20–248:7).

- In her October 22, 2015 testimony before the House Select Committee on Benghazi, Secretary Clinton testified that her attorneys "conducted a rigorous review" of her emails and "were asked to provide anything that could be possibly construed as work-related." Ex. B (Tr. 401–02).

- According to an FBI 302 form summarizing her July 2, 2016 interview with the FBI, Secretary Clinton "directed her legal team to assist" the State Department with its records request "in any way they could," and that she "expected her team to provide any work-related or arguably work-related emails to State." Ex. C at 10.
- The National Archives and Records Administration determined that 1,246 documents produced by Secretary Clinton were not work-related, showing that the standard employed by Secretary Clinton's attorneys was in fact over-inclusive. Ex. D.

The responsiveness standard employed during the review of Secretary Clinton's emails is thus widely known. In that context, the incremental value (if any) of a memorandum memorializing the search techniques and methods used by an attorney to implement that standard is not outweighed by the important interests served by the work-product doctrine. *See Dir., Office of Thrift Supervision*, 124 F.3d at 1308 (no substantial need where "two of the three government lawyers present at the FDIC interview have already given their notes to OTS" and government "has not identified any new information that it hopes to find" in requested document).

Finally, any asserted "need" for the memorandum in this FOIA case is illusory because it will not help Judicial Watch locate additional documents, and therefore is outside the bounds of permissible discovery in a FOIA case. *See Asarco, Inc. v. EPA*, No. 08-cv-1332, 2009 WL 1138830, at *2 (D.D.C. Apr. 28, 2009) (denying discovery and noting that the "remedy" for a "deficient agency performance" is "a remand to the agency to complete an adequate search, not discovery"). The D.C. Circuit has held that "the Government has already taken every reasonable action to retrieve any remaining emails" and "there are no remaining emails for State to recover." *Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3, 4 (D.C. Cir. Dec. 4, 2018). Secretary Clinton's pending mandamus petition concerning Judicial Watch's deposition request raises the issue of

whether the case is moot as to Secretary Clinton and Ms. Mills in light of the D.C. Circuit's prior ruling.  We respectfully reserve the right to supplement our opposition to the present motion depending on the D.C. Circuit's disposition of that petition.

## CONCLUSION

Secretary Clinton respectfully requests that this Court deny Judicial Watch's motion to compel.

Respectfully submitted,

/s/ David E. Kendall

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Stephen L. Wohlgemuth (D.C. Bar. No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
dkendall@wc.com
kturner@wc.com
swohlgemuth@wc.com

*Counsel for Intervenor Hillary Rodham Clinton*

April 29, 2020

## CERTIFICATE OF SERVICE

I, David E. Kendall, counsel for Intervenor Hillary Rodham Clinton, certify that, on April 29, 2020, a copy of this Opposition was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ David E. Kendall
David E. Kendall
