**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-cv-1242 (RCL) |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| *Defendant*. | ) ) ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL

Intervenor Hillary Rodham Clinton ("Secretary Clinton") fails to demonstrate that the after action memo does not contain factual information for which Plaintiff has shown a substantial need. She also fails to demonstrate that the facts are not reasonably segregable from any legal opinions. Plaintiff has requested in the alternative an *in camera* inspection of the memorandum. Secretary Clinton does not oppose the request in her opposition.

Plaintiff, Judicial Watch, Inc., respectfully submits this reply in further support of its motion to compel to address several arguments raised by Secretary Clinton.

1. The after action memo contains the search techniques employed by Heather Samuelson during the review process and search for Secretary Clinton's State Department emails. Secretary Clinton admits as much in her opposition. Opposition to Motion to Compel ("Opp."), ECF 165, 2. "The memorandum itself explains some (but not all) of the techniques and methods that Ms. Samuelson used to search Secretary Clinton's emails in response to the State Department's request – *i.e.*, it discloses particular search and review techniques employed by Ms. Samuelson." *Id*. Search terms and techniques are quintessential facts that are not shielded in Freedom of Information Act ("FOIA") cases because the adequacy of the search is at

the heart of FOIA. They are facts that must be sufficiently disclosed in any FOIA case for the court to determine the adequacy of the agency's search. *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 19, 23-24 (D.D.C. 2018) (*quoting Evans v. Fed. Bureau of Prisons*, No. CV 16-2274 (BAH), 2018 U.S. Dist. LEXIS 17975 * (D.D.C. 2018)); *Sandoval v. Dep't of Justice, et al.*, 2019 U.S. Dist. LEXIS 11447, at *11, *16-17 (D.D.C. 2019); *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (rejecting affidavit that does not identify the search terms or fails to explain how the search was conducted in each component). While Secretary Clinton excluded State Department FOIA officials from the search process of her State Department emails, she must not be allowed to shield the search techniques, methods, and terms from Plaintiff or the Court when the adequacy of the search is a live issue in the litigation. Memo. Opinion, Dec. 6, 2018, ECF 54; Memo. & Order, Jan. 15, 2019, ECF 65.

2.  This Court already addressed the application of the work product doctrine in a previous discovery dispute with Defendant. Mem. Opinion, June 12, 2019, ECF 119, 1-6. There, the Court carefully analyzed the fine line between fact and opinion work product, where, as here, the actions of attorneys are relevant to the issue in controversy. *Id*. Secretary Clinton is wrong that the Court's analysis of the work product doctrine in the discovery dispute with the State Department does not apply to her because the scope of discovery is different. Opp. at 5-6. To the contrary, the scope of discovery remains unchanged. The Court was quite clear that Plaintiff may request the after action memo because it related to the adequacy of the search – a subject area that was permitted for discovery and is ongoing. ECF 54; ECF 65. While Secretary Clinton claims that the "thoughts, beliefs, and conclusions of Secretary Clinton's counsel are not at issue," their actions with respect to how they undertook the search of Secretary Clinton's emails is very much at issue in the authorized discovery. Opp. at 6.

3. Plaintiff's request for the after action memo is not remotely analogous to the dispute in *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). The memorandum and discovery at issue here are not about litigation strategy. *Adlman* concerned a memorandum to evaluate tax implications of a contemplated merger and anticipated IRS litigation. *Id*. Contrary to Secretary Clinton's contention, the memorandum here is not a "document reflecting a lawyer's judgment about how best to protect a client in the event of foreseeable litigation or investigation." Opp. at 5. Rather, it is a document that contains factual details about the search employed of Secretary Clinton's emails that were memorialized close in time to the actual search – not attorney litigation strategies. *Id*. Secretary Clinton's attempt to pass off these factual details as opinion work product is disingenuous. Further telling is the fact that nowhere in her opposition does Secretary Clinton claim that the search and review techniques memorialized by Samuelson are not segregable from any legal opinions that may also be contained in the memorandum.

4. While trying to distinguish this Court's application of the work product doctrine in the previous dispute with Defendant, Secretary Clinton also appears to confuse the scope of discovery here, claiming that the only topic of discovery relevant to Secretary Clinton is her intent in using private email while she was at the State Department. Opp. at 5-6. This is simply not correct. The after action memo clearly relates to the authorized discovery – specifically the adequacy of the search. Order, Aug. 22, 2019, ECF 135; Pl. Status Rpt., Aug. 21, 2019, ECF 131, pp. 6,17.

5. Secretary Clinton further points to the fact that Samuelson created the after action memo after Secretary Clinton had left the State Department to argue that it is outside the scope of discovery. In doing so, she ignores this Court's holding that "any contemporaneous

3

documents shedding light on the three narrow discovery topics – even documents evincing attorney impressions, conclusions, opinions and theories – constitute fact work-product and may be admissible with a showing of substantial need and lack of prejudice." ECF 119 at 6.  While the after action memo was created almost two years after Secretary Clinton left the State Department, Samuelson documented the search techniques and methods contemporaneous with the actual searches and production of Secretary Clinton's emails.  This is precisely the type of contemporaneous document the Court described as containing fact work product that would shed light on the topics permitted for discovery *i.e.*, the adequacy of the search.  *Id.*; Opp. at 6.

6.  Secretary Clinton also appears to make much about a so-called "responsiveness standard" she alleges John Hackett described in his deposition testimony to argue that Plaintiff does not have substantial need for the specific search techniques and methods because Secretary Clinton or her attorneys have already publicly stated that she returned all of her work related emails. Opp. at 7-8.  Contrary to Secretary Clinton's argument, the testimony referred to from Hackett's deposition further highlights why the State Department, Plaintiff, and this Court need to know the search terms and techniques employed.  In other words, she puts the cart before the horse.  In any FOIA case, before a responsiveness review may be undertaken to identify the records responsive to the particular request, a search for all potentially responsive records must be undertaken – at which time the specific search terms, techniques and processes are identified to locate all potentially responsive records.  Although Secretary Clinton prevented State Department's FOIA officials' oversight over this process, she cannot hide behind the work product doctrine to conceal this information.  Further, the statements she relies on are conclusory and do not diminish Plaintiff's substantial need for the specifics facts sought here, *e.g.*, search techniques, methods, processes, and search terms, that Samuelson documented shortly after

performing the actual search. Opp. at 7-8. Secretary Clinton is also incorrect to assert that Plaintiff could have obtained the information in previous discovery. *Id.* at 7. Samuelson repeatedly testified at her deposition that she could not recall specific details about the search or was instructed not to answer specific questions on the basis that the information was protected by the work product doctrine.[1] ECF 131 at 6; ECF 131-7, 7-9; *see also* Tr. Samuelson, pp. 189-199 available at https://www.judicialwatch.org/wp-content/uploads/2019/07/JW-v-State-Heather-Samuelson-deposition-01242-1.pdf (last accessed May 6, 2020). Additionally, Secretary Clinton's reliance on *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 134 F.3d 1304, 1308 (D.C. Cir. 1997) is misplaced. Opp. at 8. The details about the search and review of Secretary Clinton's emails are only contained in the after action memo that Plaintiff cannot obtain elsewhere.

      7.     Secretary Clinton also raises the Circuit Court's ruling in *Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3 (D.C. Cir. 2018), and, once again, misapplies the standard and holding there. *Pompeo* was a Federal Records Act ("FRA") case that involved an enforcement action for the removal of federal records. 744 F. App'x 3; *Judicial Watch, Inc. v. Kerry*, 844 F3d 952 (D.C. Cir. 2016); 44 U.S.C.§ 3106(a). Claims under FOIA and the FRA are very different, as are the available remedies. Under the FRA, an agency head who learns of an actual, impending, or threatened unlawful removal or destruction of agency records has "at least a duty to 'ask the Attorney General to initiate legal action.'" *Kerry, 844* F.3d at 953-954 (*quoting Bush v. Armstrong*, 924 F.2d 282, 295 (D.C. Cir. 1991). The enforcement actions in *Pompeo* and *Kerry* did not address the reasonableness or adequacy of the search under FOIA.

---

[1] In fact, Samuelson was instructed by her attorneys not to answer whether she even reviewed the after action memo prior to her deposition. Tr. Samuelson at 189-90.

8. Finally, Secretary Clinton reserves the right to supplement her opposition depending on the D.C. Circuit Court's disposition of her pending petition for mandamus to prevent her deposition in this case. Opp. at 9. Secretary Clinton's deposition and the pending petition are entirely irrelevant to Plaintiff's request for the after action memo. Plaintiff's document request is not raised in the petition and the Circuit Court's ruling should have no bearing here.

WHEREFORE, for all of the foregoing reasons herein and the motion to compel, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Compel and order Intervenor Hillary Rodham Clinton to produce to Plaintiff the after action memo in unredacted form within seven days of the Court's order.

Dated: May 6, 2020

Respectfully submitted,

**JUDICIAL WATCH, INC.**

/s/ *Ramona R. Cotca*
Ramona R. Cotca (D.C. Bar 501159)
Lauren M. Burke (D.C. Bar No. 1028811)
Eric Lee (D. C. Bar No. 1049158)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC  20024
Tel.:   (202) 646-5172
Email: rcotca@judicialwatch.org
          lburke@judicialwatch.org
          elee@judicialwatch.org

*Attorneys for Plaintiff*